IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AID FOR WOMEN, on its own behalf; and TERI AUGUSTUS, L.M.S.W.; MARGOT BRECKBILL, R.N.; TRACY COWLES, M.D.; WILLOW EBY, R.N.; VICKI EPP, L.B.S.W.; MARGARET ESTRIN, M.D.; HERBERT HODES, M.D.; TRACI NAUSER, M.D.; COLLEEN O'DONNELL, R.N.-C; STACEY MORGAN, D.O.; BETH MCGILLEY, PH.D.; TRINA WHEELER, L.M.S.W.; and SHERMAN ZAREMSKI, M.D., on behalf of themselves and their adolescent patients and clients under the age of sixteen, and as representatives of a class of similarly situated individuals, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| NOLA FOULSTON, in her official capacity as District Attorney, 18th Judicial District of Kansas, as representative of a class of all county and district attorneys in the state of Kansas, | ) ) ) ) ) |
| Defendants. | ) ) |

CIVIL ACTION
CASE NO. _____ 03-1353 _____

## EXHIBITS TO THE COMPLAINT

Laura B. Shaneyfelt, Associate
Bar No. 12327
Leslie F. Hulnick, P.A.
Suite 111, 310 West Central at Waco
Wichita, Kansas 67202
Telephone: (316) 263-7596
Facsimile: (316) 263-8084
E-mail: LShaneyfelt@HulnickLaw.com

Bonnie Scott Jones*
Mass. Bar No. 564499
Simon Heller*
D.C. Bar No. 417727
Center for Reproductive Rights
120 Wall Street, 14th Fl.
New York, NY 10005
Telephone: (917) 637-3600
Facsimile: (917) 637-3666
E-mail: bjones@reprorights.org
         sheller@reprorights.org
* Application for admission
  *pro hac vice* pending

ATTORNEYS FOR PLAINTIFFS

Exhibit A

of the child, if, living, or the child's siblings, parents or guardians.

(i)   Information authorized to be disclosed in subsections (d) through (g) shall not contain information which identifies a reporter of a child in need of care.

(j)   Records or reports authorized to be disclosed in this section shall not be further disclosed, except that the provisions of this subsection shall not prevent disclosure of information to an educational institution or to individual educators about a pupil specified in subsection (a) of K.S.A. 72-89b03 and amendments thereto.

(k)   Anyone who participates in providing or receiving information without malice under the provisions of this section shall have immunity from any civil liability that might otherwise be incurred or imposed. Any such participant shall have the same immunity with respect to participation in any judicial proceedings resulting from providing or receiving information.

(l)   No individual, association, partnership, corporation or other entity shall willfully or knowingly disclose, permit or encourage disclosure of the contents of records or reports concerning a child in need of care received by the department of social and rehabilitation services, a law enforcement agency or a juvenile intake and assessment worker except as provided by this code. Violation of this subsection is a class B misdemeanor.

**History:**   L. 1982, ch. 182, § 7; L. 1983, ch. 140, § 14; L. 1985, ch. 145, § 1; L. 1988, ch. 138, § 2; L. 1990, ch. 147, § 1; L. 1992, ch. 318, § 2; L. 1996, ch. 229, § 33; L. 1997, ch. 156, § 41; L. 1998, ch. 171, § 7; L. 1999, ch. 116, § 43; L. 2000, ch. 150, § 5; L. 2002, ch. 135, § 1; July 1.

**Attorney General's Opinions:**
Juvenile intake process, use of POSIT questionnaire. 2001-53

### 38-1508.

**Attorney General's Opinions:**
Juvenile intake process, use of POSIT questionnaire. 2001-53.

### 38-1512.

#### CASE ANNOTATIONS
2   If trial court orders specific counseling, SRS is responsible for expense regardless of source of funds used to pay. In re T.D., 27 K.A.2d 331, 3 P.3d 590 (2000).

### 38-1521.

**Attorney General's Opinions:**
Conflicting duties of attorney and social worker regarding confidentiality and reporting suspected child abuse. 2001-28.

**38-1522.   Reporting of certain abuse or neglect of children; persons reporting; reports, made to whom; penalties for failure to report or interference with making of a report.** (a) When any of the following persons has reason to suspect that a child has been injured as a result of physical, mental or emotional abuse or neglect or sexual abuse, the person shall report the matter promptly as provided in subsection (c) or (e): Persons licensed to practice the healing arts or dentistry; persons licensed to practice optometry; persons engaged in postgraduate training programs approved by the state board of healing arts; licensed psychologists; licensed masters level psychologists; licensed clinical psychotherapists; licensed professional or practical nurses examining, attending or treating a child under the age of 18; teachers, school administrators or other employees of a school which the child is attending; chief administrative officers of medical care facilities; licensed marriage and family therapists; licensed clinical marriage and family therapists; licensed professional counselors; licensed clinical professional counselors; registered alcohol and drug abuse counselors; persons licensed by the secretary of health and environment to provide child care services or the employees of persons so licensed at the place where the child care services are being provided to the child; licensed social workers; firefighters; emergency medical services personnel; mediators appointed under K.S.A. 23-602 and amendments thereto; juvenile intake and assessment workers; and law enforcement officers. The report may be made orally and shall be followed by a written report if requested. When the suspicion is the result of medical examination or treatment of a child by a member of the staff of a medical care facility or similar institution, that staff member shall immediately notify the superintendent, manager or other person in charge of the institution who shall make a written report forthwith. Every written report shall contain, if known, the names and addresses of the child and the child's parents or other persons responsible for the child's care, the child's age, the nature and extent of the child's injury (including any evidence of previous injuries) and any other information that the maker of the report believes might be helpful in establishing the cause of the injuries and the identity of the persons responsible for the injuries.

(b)   Any other person who has reason to suspect that a child has been injured as a result of

physical, mental or emotional abuse or neglect or sexual abuse may report the matter as provided in subsection (c) or (e).

(c) Except as provided by subsection (e), reports made pursuant to this section shall be made to the state department of social and rehabilitation services. When the department is not open for business, the reports shall be made to the appropriate law enforcement agency. On the next day that the state department of social and rehabilitation services is open for business, the law enforcement agency shall report to the department any report received and any investigation initiated pursuant to subsection (a) of K.S.A. 38-1524 and amendments thereto. The reports may be made orally or, on request of the department, in writing.

(d) Any person who is required by this section to report an injury to a child and who knows of the death of a child shall notify immediately the coroner as provided by K.S.A. 22a-242, and amendments thereto.

(e) Reports of child abuse or neglect occurring in an institution operated by the secretary of social and rehabilitation services or the commissioner of juvenile justice shall be made to the attorney general. All other reports of child abuse or neglect by persons employed by or of children of persons employed by the state department of social and rehabilitation services or the juvenile justice authority shall be made to the appropriate law enforcement agency.

(f) Willful and knowing failure to make a report required by this section is a class B misdemeanor.

(g) Preventing or interfering with, with the intent to prevent, the making of a report required by this section is a class B misdemeanor.

**History:** L. 1982, ch. 182, § 19; L. 1983, ch. 140, § 19; L. 1985, ch. 147, § 8; L. 1986, ch. 299, § 4; L. 1987, ch. 152, § 1; L. 1988, ch. 140, § 2; L. 1991, ch. 114, § 13; L. 1992, ch. 312, § 38; L. 1996, ch. 229, § 36; L. 1997, ch. 156, § 43; L. 2001, ch. 154, § 2; July 1.

**Law Review and Bar Journal References:**
"2001 Legislative Wrap-Up," Paul T. Davis, 70 J.K.B.A. No. 7, 14 (2001).

**Attorney General's Opinions:**
Conflicting duties of attorney and social worker regarding confidentiality and reporting suspected child abuse. 2001-28

### 38-1526.

**Law Review and Bar Journal References:**
"Survey of Kansas Tort Law: Part II," William E. Westerbeke, 50 K.L.R. 225 (2002).

### 38-1563.

**CASE ANNOTATIONS**
7. Trial court may order child to be counseled by a specific counselor. In re T.D., 27 K.A.2d 331, 3 P.3d 590 (2000)

### 38-1583. Considerations in termination of parental rights; permanent guardianship.

(a) When the child has been adjudicated to be a child in need of care, the court may terminate parental rights when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future.

(b) In making a determination hereunder the court shall consider, but is not limited to, the following, if applicable:

(1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental and emotional needs of the child;

(2) conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;

(3) excessive use of intoxicating liquors or narcotic or dangerous drugs;

(4) physical, mental or emotional neglect of the child;

(5) conviction of a felony and imprisonment;

(6) unexplained injury or death of another child or stepchild of the parent;

(7) reasonable efforts by appropriate public or private child caring agencies have been unable to rehabilitate the family; and

(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child.

(c) In addition to the foregoing, when a child is not in the physical custody of a parent, the court, in proceedings concerning the termination of parental rights, shall also consider, but is not limited to the following:

(1) Failure to assure care of the child in the parental home when able to do so;

(2) failure to maintain regular visitation, contact or communication with the child or with the custodian of the child;

(3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home; and

Exhibit B

# CHILDREN & FAMILY POLICY POLICY & PROCEDURE MANUAL

## Revised July 2003

# SECTION 2000 INVESTIGATION AND ASSESSMENT OF REPORTS

**2000  INVESTIGATION AND ASSESSMENT OF REPORTS**

2010  Investigation

2020  Assessment

**2100  Initiation of Investigative Interviews of Child Abuse/Neglect**

2110  Requirement to Interview Relevant Persons

2120  Documenting Agency Response

2130  Parental Permission to Interview a Child

2140  Interviewing Children
2141  Interviewing Children at School
2142  Interviewing Children in a Child Care Setting

2150  Interviews with Children Who Are the Subject of Reports of Abuse or Neglect in Licensed Facilities
2151  Relevant Parties
2152  Documenting Agency Response
2153  Permission for KDHE to Interview a Child in SRS Custody
2154  Notice to Facility When On Premises

2160  Interviewing Children Who Are the Subject of a Report of Abuse or Neglect by a Non-Family/Unregulated Care Giver ("Third Party")
2161  Relevant Parties
2162  Documentation of Agency Response

- Considering alternative protection actions if necessary and selecting one.
- Assessing long term risk of reoccurrence.
- Considering available services and making an initial plan for selected services.

All assessment information mentioned in this section shall be documented on each report using the Kansas Initiative for Decision Support (KIDS) computer application.

## 2100  Initiation of Investigative Interviews of Child Abuse/Neglect

The Department has the duty to receive and investigate reports of child abuse and neglect for the purpose of determining whether the report is valid and whether action is required to protect the child from further abuse or neglect. (K.S.A. 38-1523(a))

"Investigation" is the initial phase of the Family Based Assessment for reports alleging child abuse or neglect. In an investigation facts are obtained and evidence is gathered and secured in order to reach a conclusion on the validity of the report and what actions, if any, are needed to protect the child. The purpose of the intervention is to assist families (where needed) to live together safely and within the requirements of law.

SRS staff conducting the investigative interview shall inform the family that the Kansas Code for Care of Children requires SRS to make inquiry when a child is alleged to be in need of care. The pamphlet entitled "What You Need to Know About Investigations of Child Abuse or Neglect" CFS-2010 shall be used for this purpose. SRS staff shall advise the family that they are not required to cooperate with the agency and the possible consequences of such refusal.

2110  Requirement to Interview Relevant Persons

In order to reach a case finding, interviews must be conducted with all persons known or believed to possess relevant information. The investigative interview may be conducted by a social worker, Children & Family Services special investigator or law enforcement officers.

A.    The following persons shall be interviewed unless allowable reasons not to interview the person exist and are documented:
- The alleged victim.
- Primary care giver of alleged victim (a residential parent, or other adult with whom the child resides and has authority to make significant decisions concerning the child's care.
- Siblings residing in the home of the victim, if the victim is pre-verbal or otherwise unable to be interviewed.
- The alleged or suspected perpetrator.

B.    Allowable reasons for not interviewing include, but are not limited to:
- Refused to talk with worker
- County or District Attorney or law enforcement officer requested that SRS not interview
- Unable to locate or otherwise unavailable
- Mental or physical condition prevents interview
- A child is pre-verbal or non-verbal (Child should be observed)
- Alleged perpetrator not identified
- Deceased

Practice Note:  An attempt shall be made to interview alleged victims two years old or older.

C.    Other persons may be determined by the social worker to have relevant information and if so determined the person(s) shall be interviewed unless allowable reasons not to interview the person exist and are documented. A  "relevant person" is one who has been identified during the course of the investigation as having information that is KEY to the investigation or is ESSENTIAL to protecting the child or making a finding. Relevant persons might include:
•       Non-residential parent
•       Siblings;
•       Any adult who provides care or supervision of the victim or who lives in the home, whether related or not;
•       Other witnesses, regardless of their relationship to the victim or living arrangement;
•       Relatives and friends; or
•       Neighbors.

A person need not be determined to have relevant information and be interviewed if there is reason to believe additional interviews would not add to the information already available and sufficient information is otherwise available to protect the child and to establish a finding. If a person who would otherwise be a relevant person is excluded for these reasons, the reason for the decision shall be documented on form CFS 2030A, "Agency Response."

2120  Documenting Agency Response

The form CFS 2030A, Agency Response, documents who was interviewed and, when applicable, reasons interview did not occur.

When some but not all members of the family are unable to be located once the assessment has begun, document "unable to locate" on the individuals who were not located. Agency Response information shall be completed on individuals who were located.

For reports involving a non-family/unregulated care giver as the perpetrator or incident of abuse or neglect occurring in a facility regulated by KDHE, agency response is documented on the CFS 1004. Agency response documents may be completed by either an SRS social worker or SRS child protection special investigator. A printed form is the official copy and shall be in the case record.

2130  Parental Permission to Interview a Child

Parental permission is not required to interview a child who is the subject of a report that the child may be in need of care. However, as parental cooperation may be essential to an adequate investigation of a complaint, parental permission to interview a child shall be sought whenever practicable. Circumstances in which a child may be interviewed without parental consent include:

•       The parent is alleged or suspected to be involved in the maltreatment.
•       The safety of the subject child or any other child in the same care might be jeopardized by delay or notice.
•       There is reason to believe that essential evidence would not be available if there is delay or notice.

Exhibit C

Kan. Atty. Gen. Op. No.                                                              Page 1
Kan. Atty. Gen. Op. No. 03-17
**(Cite as: 2003 WL 21492493 (Kan.A.G.))**

Office of the Attorney General
State of Kansas

*1 Opinion No. 2003-17
June 18, 2003

Re: Minors--Kansas Code for Care of Children--Reporting of Certain Abuse or Neglect of Children; Persons Reporting; Injury as a Result of Sexual Abuse

Synopsis: The act of committing a rape of a child injures that child as a matter of law. The long held policy of the State of Kansas is that sexual intercourse, consensual or non-consensual, with a child of a specific age or younger is harmful to the child and that such conduct should be prohibited. This policy is of such weight that the State prescribes strong penalties for violators of this prohibition. This action reflects the State's interest in justice, protecting children, deterring future wrongful conduct and the belief that sexual intercourse, in any fashion, with children is inherently harmful to the child. The State's position is supported by extensive empirical data and the long-term nature of the policy.

These state interests are furthered by the mandatory reporting requirement found in K.S.A. 38-1522. Pursuant to this statute, certain persons are required to report to appropriate authorities of the State if they have "reason to suspect that a child has been injured as a result of sexual abuse." The legislative intent behind such a requirement is to extend services to the victim and implement necessary legal steps to protect the victim from further harm, including the possibility of legal prosecution against the perpetrator.

A child under the age of 16 who is seeking an abortion is a child who has had sexual relations (leaving aside the remote possibility of artificial insemination). Under Kansas law, such relations are unlawful and constitute either rape, aggravated indecent liberties with a child or unlawful voluntary sexual relations. Kansas law clearly provides that those who fall under the scope of the reporting requirement must report any reasonable suspicion that a child has been injured as a result of sexual abuse, which would be any time a child under the age of 16 has become pregnant. As a matter of law such child has been the victim of rape or one of the other sexual abuse crimes and such crimes are inherently injurious.

Accordingly, K.S.A. 38-1522 requires that abortion providers have a mandatory duty to report to appropriate authorities as evidence of sexual abuse circumstances of a minor child under the age of 16 seeking abortion services to terminate a pregnancy. Cited herein: K.S.A. 21-3502; 21-3520; 21-3522; 21- 3603; 38-1501; K.S.A. 2002 Supp. 38-1502; K.S.A. 38-1522.

The Honorable Mark S. Gilstrap
State Senator
5th District
1813 North 79th Terrace
Kansas City, Kansas 66112

Dear Senator Gilstrap:

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

As Senator for the 5th District you ask under what circumstances a doctor who provides abortion procedures is required to report rape and/or sexual abuse of a minor.

The Kansas Code for Care of Children [FN1] contains a "mandatory reporting" law that requires a wide variety of specified professionals to report to the Kansas Department of Social and Rehabilitation Services (SRS) [FN2] when such person "has reason to suspect that a child has been injured as a result of physical, mental or emotional abuse or neglect or sexual abuse. " [FN3] The list of mandatory reporters includes persons licensed to practice the healing arts. [FN4] By definition, this would include doctors who perform abortions. The statute requires the report to "contain, if known, the names and addresses of the child and the child's parents or other persons responsible for the child's care, the child's age, the nature and extent of the child's injury (including any evidence of previous injuries) and any other information that the maker of the report believes might be helpful in establishing the cause of the injuries and the identity of the persons responsible for the injuries." [FN5] For purposes of the Kansas Code for Care of Children, "sexual abuse" means any act committed with a child that is described as a sex offense within the Kansas criminal code [FN6] as well as incest and aggravated incest. [FN7]

*2 The issue of whether a mandatory reporter's duty to report is triggered by knowledge of the pregnancy of an unmarried girl under 16 years of age was previously posed to Attorney General Stephan as follows: "Since child abuse includes by definition the felony crime of indecent liberties, does this mean that all cases of pregnancy of unmarried children under sixteen years of age involve suspected injury or abuse as used in the [mandatory reporting] statute and therefore must be reported?" In response, Attorney General Opinion No. 92- 48 focused on whether the condition of pregnancy itself should be considered to be an injury. The office concluded that pregnancy is not necessarily evidence of injury and therefore, reporting is not required without further evidence.

However, by focusing on the pregnancy of an unmarried girl under 16 years of age, the office failed to look at the State's clearly articulated position that the act of rape, whether forcible or "statutory," is an act that is inherently injurious and harmful.

Through the enactment of "statutory rape" laws, Kansas has long provided protection to unmarried underage girls from sexual intercourse. [FN8]
"From the earliest times in this state the age limit stated in the statute defining statutory rape has been spoken of as the 'age of consent.' Actually, however, the word 'consent' does not appear in the statute. The real meaning of the statute is that whereas under some other statutes the state must prove the use of force or promise of marriage, the use of a drug or some other element, in a prosecution for a violation of G.S. 2935 21-424, all the state has to prove is fornication and that the female was under eighteen. That construction gave us the term 'statutory rape.'" [FN9]

Currently, the following types of sexual intercourse with unmarried persons under the age of 16 years of age are sex offenses within the Kansas criminal code:
Rape (forcible), defined generally as nonconsensual sexual intercourse. [FN10] This crime is classified as a severity level 2, person felony.
Rape (commonly known as statutory rape), defined as sexual intercourse with a child who is under 14 years of age. [FN11] This crime is classified as a severity level 1, person felony. [FN12]
Aggravated indecent liberties with a child (also known as statutory rape), defined in part as sexual intercourse with a child who is 14 or more years of age

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

but less than 16 years of age. This crime is classified as a severity level 3, person felony. [FN13]

Unlawful voluntary sexual relations (commonly known as the Romeo and Juliet law), defined as engaging in voluntary sexual intercourse with a child who is 14 years of age but less than 16 years of age and the offender is less than 19 years of age and less than four years of age older than the child and the child and the offender are the only parties involved and are members of the opposite sex. This crime is classified as a severity level 8, person felony. [FN14]

*3 The outcome of any one of these kinds of unlawful sexual intercourse with a minor female, [FN15] whether voluntary or involuntary, could be an unwanted pregnancy for which an abortion is sought from a physician. Because sexual intercourse with any girl under the age of 16 is statutorily defined as "sexual abuse," as a matter of law sexual abuse has occurred. We also reach the conclusion that sexual abuse of a child is inherently injurious, thereby triggering the mandatory reporting requirement.

In a 1998 Kansas Court of Appeals case, [FN16] an insurer brought suit seeking declaratory judgment that its homeowners' and personal liability umbrella policies provided no coverage for claims arising from its insured's sexual molestation of a minor victim. The facts giving rise to this suit involved an adult male who molested a minor boy. The insurance policy covered damages for bodily injury caused by accident. The Court, in holding this was not an accident, followed the test set out in Bell v. Tilton: [FN17] an intent to injure can be inferred from the nature of the act and the foreseeability of harm flowing naturally from that act. "Knowingly molesting a child certainly meets this test." [FN18] In reaching this determination, the Kansas Court of Appeals relied heavily on Troy v. Allstate Insurance Company, [FN19] a case decided by the United States District Court for the District of Kansas.

Troy was also an insurance case in which suit was filed against an insured for damages allegedly resulting from the insured's sexual molestation of a child from age 7 to 14. The Court said:

"This act, perpetrated by an adult upon a child, has been found by a majority of federal jurisdictions that have considered the issue to constitute intentional harm by its very nature. (Citations omitted.)

"Common sense and legislative history lead this court to adopt the argument espoused by Allstate; that in the exceptional case of an act of child molestation, cause and effect cannot be separated, so that to do the act is necessarily to do the harm which is the consequence of the intended act. It is now a generally accepted conception that harm is inherent in the act of sexually abusing a child. (Citations omitted.) In fact, it is apparent that the Kansas Legislature has determined that harm from sexual offenses against children is inseparable from the performance of the act. That governing body has determined that indecent liberties with a child, K.S.A. 21-3503, aggravated criminal sodomy, K.S.A. 21-3506, and sexual exploitation of a child, K.S.A. 21-3516, constitute serious felonies merely upon proof that the acts occurred, irrespective of whether force was used, the child consented, or the resultant injuries were intended.

. . . .

"The Kansas Supreme Court has not yet interpreted an intentional act exclusion and its application to child molestation. Nevertheless, this court concludes that the Kansas court would infer an intent to harm children when an adult intentionally commits an act of sexual abuse or molestation.... The very nature of the act compels the court to infer, as a matter of law, that Neal also intended to cause the inevitable harm which plaintiff now suffers...." [FN20]

*4 Cases from at least 42 states have unanimously held that sexual abuse of a child is so inherently injurious to the victim that harm, or intent to harm, is

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

inferred as a matter of law. [FN21] Declarations from a sampling of these cases
demonstrate the rationale of these courts' positions:

"It is implicit in the logic of our criminal statutes that harm inheres in and
flows from the proscribed behavior [i.e., sexual intercourse with minors]. [FN22]

"The courts following the majority approach have inferred the intent to cause
injury as a matter of law in liability insurance cases involving alleged sexual
misconduct against minors. These courts have found that the alleged sexual contact
is so substantially certain to result in some injury, or so inherently injurious
that the act is considered a criminal offense for which public policy precludes a
claim of unintended consequences, that is, a claim that no harm was intended to
result from the act. [FN23]

"These courts reason that some harm is inherent in and inevitably results from
such acts. [FN24]

"In our view, these cases properly recognize the inevitability of emotional
harm to minors from sexual abuse in all forms even if the abuse was not
accomplished through violence or threats of violence. [FN25]

"Further, the majority of courts have supported their adoption of the inferred
intent rule by noting that the state's proscription of sexual contact between an
adult and a minor is a clear indication that such contact is inherently injurious
to the victim; that criminalization of such conduct additionally serves to place
the insured on notice of the societal understanding that the harm from such conduct
is inseparable from its performance; that the harm to the victimized child is no
less serious when the abusive adult's subjective intentions are purportedly
'benign';... [FN26]

"Sexual abuse of a minor is considered inherently harmful because the minor
victim cannot fully appreciate the consequences of the activity and therefore lacks
the ability to consent to it." [FN27]

Although these are insurance cases, we find the rationale to be persuasive and
conclude that injury as a result of sexual abuse should be inferred as a matter of
law whenever sexual intercourse, whether voluntary or involuntary, has occurred
with a child under the age of 16. Because pregnancy clearly implies a prior act of
sexual intercourse, a doctor who performs abortions would have a reason to suspect
that any pregnant female under the age of 16 has been injured as a result of sexual
abuse as a matter of law. In such circumstances the doctor has a mandatory duty to
report this suspicion to the Department of Social and Rehabilitation Services.
[FN28]

We note that the cases relied on each involved an adult perpetrator of sexual
abuse against a minor victim. In this context, courts unanimously concluded that
injury, or intent to injure, should be inferred as a matter of law. However, case
authority is nearly evenly split when it comes to whether injury or intent to
injure may be inferred when the perpetrator is also a minor. [FN29] Courts applying
the inference of intent to minor insureds accused of sexually abusing other minors
do so based on the rationale that the act of sexual abuse is inherently harmful. By
contrast, other courts have found that, based on minors' relative lack of
experience in sexual matters, it is improper to infer an intent to injure in cases
where a minor sexually abuses another minor. The intent of the perpetrator,
however, is irrelevant to the finding of an injury to the victim and therefore, the
split of these authorities do not compel a different answer to your questions.
Furthermore, proof of injury is not required under the mandatory reporting
requirement. Only evidence of injury is required under the reporting requirement.
The longstanding public policy of Kansas to protect children from such sexual
exploitation is sufficient to infer evidence of injury when compelling evidence of
sexual interaction is present.

*5 In addition to the insurance cases that have determined sexual abuse to be
injury, or intent to injure, as a matter of law, numerous cases have upheld

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

statutory rape laws against an equal protection challenge. While this issue has never been presented to a Kansas appellate court, other state courts have found a basis for disparate gender-based treatment by examining the rationale for statutory rape laws. In doing so, courts have essentially equated sexual intercourse with a minor female to injury as a matter of law. [FN30] As expressed by the New York Supreme Court:

"While we recognize that there are those in the protected class, particularly the older and more mature, who may be capable of engaging in sexual intercourse without suffering any adverse consequences, especially those resulting from pregnancy and physical injury, we are not convinced that any significant portion of the class as a whole is so emotionally and psychologically prepared that the protection should be lifted. Nor should the maturity of some deprive all of the others in the class of the protection of the law to which they are entitled. 'The disabilities of infants are really privileges, for the object is to secure infants from damaging themselves by their own improvident acts.'

. . . .

"Likewise, the statute here challenged serves a significant state interest, although many people, particularly those within the reach of its protection, may view it as an unwarranted infringement upon private life-styles. Social legislation hardly ever pleases everyone. We merely state that the justification of the statutory rape law rests not on a morality to which not all of our citizens may subscribe, but rather on the premise that physical and psychic injury can be the result when the members of the class sought to be protected engage in acts, the consequences of which they may neither perceive nor appreciate." [FN31]

The United States Supreme Court in Michael M. v. Superior Court of Sonoma County [FN32] has also acknowledged the perils inherent in acts of sexual intercourse with girls under the age of 16. Commenting on California's "statutory rape" law, the Court stated that "the fact that the California Legislature criminalized the act of illicit sexual intercourse with a minor female is a sure indication of its intent or purpose to discourage that conduct" [FN33] due to its detrimental impact. [FN34]

The Kansas Supreme Court has also recognized the purpose of "statutory rape" laws to be "protecting juveniles from improvident acts." [FN35] The Kansas Legislature has determined that such improvident acts include sexual intercourse by minors under the age of 16, whether voluntary or involuntary. Such acts may thus reasonably be considered injurious as a matter of law. Consequently, a doctor called upon to perform an abortion for a girl under the age of 16 years is put on notice that, as a matter of law, an injury as a result of sexual abuse has occurred. Such doctor is obligated to report this injury to the proper authorities.

**\*6** We are aware that although this opinion is limited to the question posed, the consequences of the conclusion reach further. Other situations that might trigger a mandated reporter's obligation, because sexual activity of a minor becomes known, include a teenage girl or boy who seeks medical attention for a sexually transmitted disease, a teenage girl who seeks medical attention for a pregnancy, or a teenage girl seeking birth control who discloses she has already been sexually active. Nevertheless, in reaching this conclusion we are mindful of and have followed a well-known and accepted tenet of law:

"Courts do not write legislation. That is the function of the legislature. Our duty is to declare and apply legislative acts and to construe statutes and constitutions in accordance with the will of the law-making power where its construction becomes necessary. When such construction has been given to a law and finally established as a part thereof, it is as much a part of it as if embodied therein in plain and unmistakable language. When that situation exists, it is the province of the legislature alone to change the law if it deems advisable." [FN36]

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Sincerely,


Phill Kline

Attorney General of Kansas


Camille Nohe

Assistant Attorney General


[FN1]. K.S.A. 38-1501 et seq.


[FN2]. Reports of child abuse or neglect occurring in an institution operated by SRS or Juvenile Justice Authority are made to the Attorney General. Reports of child abuse or neglect committed by persons employed by or against children of persons employed by SRS or the Juvenile Justice Authority are made to a law enforcement agency. K.S.A. 38-1522(e).


[FN3]. K.S.A. 2002 Supp. 38-1522 (emphasis added).


[FN4]. Id.


[FN5]. Id. (emphasis added).


[FN6]. Article 35 of chapter 21 of the Kansas Statutes Annotated.


[FN7]. K.S.A. 2002 Supp. 38-1502(c).


[FN8]. See, i.e., State v. White, 44 Kan. 514, 25 P. 33.


[FN9]. Wiebe v. Hudspeth, 163 Kan. 30, 34 (1947).


[FN10]. K.S.A. 21-3502.


[FN11]. Although willing participation by sexually sophisticated 14 year old is not a defense to statutory rape charge, it may be properly considered in imposing punishment. State v. Rush, 24 Kan.App.2d 113 (1997).


[FN12]. K.S.A. 21-3502.


[FN13]. It is a defense to rape, as well as aggravated indecent liberties with a child, if the child was married to the accused at the time of the offense.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

[FN14]. K.S.A. 21-3522.


[FN15]. We note that the additional crimes of (1) unlawful sexual relations, K.S.A. 21-3520 (defined in part as engaging in consensual sexual intercourse with a person who is not married to the offender if the offender is a teacher or a person in a position of authority and the person with whom the offender is engaging in consensual sexual intercourse is 16 or 17 years of age and a student enrolled at the school where the offender is employed, unless the offender is the parent of the student in which case provisions of the aggravated incest statute apply) and (2) aggravated incest, K.S.A. 32-3603 (defined in part as engaging in sexual intercourse with a person who is 16 or more years of age but under 18 years of age and who is known to the offender to be related to the offender by specified biological degrees). However, this opinion is limited to the specified offenses involving sexual intercourse with a female under the age of 16.


[FN16]. State Farm Ins. Companies v. Gerrity, 25 Kan.App.2d 643 (1998).


[FN17]. 234 Kan. 461 (1983).


[FN18]. Gerrity, supra at 647.


[FN19]. 789 F.Supp. 1134 (D. Kan. 1992).


[FN20]. Emphasis added.


[FN21]. See Manufacturers and Merchants Mutual Ins. Co. v. Harvey, 498 S.E.2d 222 (S.C. 1998) and cases cited therein.


[FN22]. Allstate Insurance Co. v. Troelstrup, 789 P.2d 415, 419 (Colo. 1990).


[FN23]. Whitt v. DeLeu, 707 F.Supp. 1011, 1015-16 (W.D.Wis. 1989).


[FN24]. Altena v. United Fire and Casualty Co., 422 N.W.2d 485, 489 (Iowa 1988).


[FN25]. Scudder v. Hanover Ins. Co., 559 N.E.2d 559, 563 (Ill. 1990).


[FN26]. Wiley v. State Farm Fire & Casualty Co., 995 F.2d 457, 464 (3rd Cir.1993)


[FN27]. Allstate Ins. Co. v. Patterson, 904 F.Supp. 1270, 1282 (D.Utah 1995).


[FN28]. For some situations, the report is made to the Attorney General or a law

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Kan. Atty. Gen. Op. No.                                                                    Page 8
Kan. Atty. Gen. Op. No. 03-17
**(Cite as: 2003 WL 21492493 (Kan.A.G.))**

enforcement agency. See note 2, supra.


[FN29]. See County Mutual Ins. Co. v. Hagan, 698 N.E.2d 271 (Ill. 1998) and cases
cited therein.


[FN30]. See State v. Brothers, 384 A.2d 402 (Del. 1978) and cases cited therein,
and People v. Dozier, 72 A.2d 478 (N.Y. 1980) and cases cited therein.


[FN31]. People v. Dozier, 72 A.2d 478, 483-484 (N.Y. 1980) (citations omitted).


[FN32]. 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed2d 437 (1981).


[FN33]. Id., 450 U.S. at 469, 101 S.Ct. at 1204.


[FN34]. Id., 450 U.S. at 470-17, 101 S.Ct. at 1205. (See especially footnotes 3, 4
and 5 for empirical data supporting these statements of the Court).


[FN35]. State ex rel. Hermesmann v. Seyer, 252 Kan. 646, 654 (1993).


[FN36]. Appeal of Chief Industries, 255 Kan. 640, 648 (1994), citing  State v. One
Bally Coney Island No. 21001 Gaming Table, 174 Kan. 757, 761 (1953).

 Kan. Atty. Gen. Op. No. 03-17, 2003 WL 21492493 (Kan.A.G.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Exhibit D

XXVI Kan. Op. Atty. Gen. 17                                              Page 1
Kan. Atty. Gen. Op. No. 92-48
**(Cite as: 1992 WL 613410 (Kan.A.G.))**


                          Office of the Attorney General
                                State of Kansas

                            *1 Opinion No. 92-48
                                April 6, 1992


Re:  Minors--Kansas Code for Care of Children; Matters Prior to Filing Petition--
Reporting of Certain Abuse or Neglect of Child; Pregnancy


Synopsis:  Whether a particular minor in a particular case has been injured as a
result of sexual intercourse and a resulting pregnancy must be determined on a
case-by-case basis. While the pregnancy itself is not an injury, it certainly puts
one on notice that sexual abuse (as statutorily defined) probably has occurred, and
requires those persons listed in K.S.A.1991 Supp. 38-1522(a) to investigate further
whether the child has suffered injury, either physical or emotional. If there is
reason to suspect that the child has been injured, that person is then required to
report such suspicions and the reasons therefore. Cited herein: K.S.A.1991 Supp.
21-3503; K.S.A. 38-1501; K.S.A.1991 Supp. 38- 1502; K.S.A. 38-1521; K.S.A.1991
Supp. 38-1522; 38-1523; K.S.A. 38-1525; 38-1526; K.S.A.1991 Supp. 38-1583; 40-3103;
44-508; K.S.A.1980 Supp. 38-717; 38-718; 38-721; 38-721c; 38-721d; L. 1975, ch.
231, § 1.


Bill McCormick
Director of Federal and State Affairs
Governor's Office
2nd Floor
State Capitol
Topeka, Kansas 66612


Dear Mr. McCormick:

   As counsel for Governor Finney, you request our opinion regarding the child abuse
reporting requirement of K.S.A.1991 Supp. 38-1522(a). Specifically your question is
this:
     "Since child abuse includes by definition the felony crime of indecent
liberties, does this mean that all cases of pregnancy of unmarried children under
sixteen years of age involve suspected injury or abuse as used in the statute and
therefore must be reported?"

   K.S.A.1991 Supp. 38-1522 provides in part:
     "(a) When any of the following persons has reason to suspect that a child has
been injured as a result of physical, mental or emotional abuse or neglect or
sexual abuse, the person shall report the matter promptly as provided in subsection
(c) or (e): ... Every written report shall contain, if known, ... the nature and
extent of the child's injury (including any evidence of previous injuries) and any
other information that the maker of the report believes might be helpful in
establishing the cause of the injuries and the identity of the persons responsible
for the injuries.
     ...
     "(d) Any person required by this section to report an injury to a child and who
has reasonable cause to suspect that a child died from injuries resulting from
physical, mental or emotional abuse or neglect or sexual abuse shall notify the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

coroner or appropriate law enforcement agency of that suspicion.
...
     "(f) Willful and knowing failure to make a report required by this section is a
class B misdemeanor...." (Emphasis added).

   The term "sexual abuse" is defined in K.S.A.1991 Supp. 38-1502(c) as "any act
committed with a child which is described in article 35, chapter 21 of the Kansas
Statutes Annotated...." Article 35, chapter 21 of the Kansas Statutes Annotated
defines "indecent liberties with a child" to include sexual intercourse with a
child who is under 16 years of age when that child is not married to the accused.
K.S.A.1991 Supp. 21-3503(1)(a). Clearly, when an unmarried child under 16 years of
age is pregnant, sexual abuse (as statutorily defined) has occurred, absent
artificial insemination. However, K.S.A.1991 Supp. 38-1522(a), a penal statute
which must be strictly construed against the state, does not require reporting of
all suspected child abuse; it requires reporting in situations where there is
"reason to suspect the child has been injured" as a result of abuse. (Emphasis
added). The question, therefore, is whether the mere fact of pregnancy of an
unmarried minor is sufficient reason to suspect that the child has been injured.

   *2 The term "injured" is not defined in the code for care of children, K.S.A.
38-1501 et seq., although it is used in several sections of the code. K.S.A.1991
Supp. 38-1502(b) defines "physical, mental or emotional abuse or neglect" as "the
infliction of physical, mental or emotional injury or the causing of a
deterioration of a child and may include, but shall not be limited to, failure to
maintain reasonable care and treatment, negligent treatment or maltreatment or
exploiting a child to the extent that the child's health or emotional well-being is
endangered...." This definition recognizes that not all injuries are physical
wounds. K.S.A. 38-1521 establishes the policy of the state to provide for the
protection of children by encouraging the reporting of suspected child abuse. That
statute requires the secretary of the department of social and rehabilitation
services (SRS), when funds are available for such purpose, to conduct educational
programs for persons required to report, which programs "shall include courses
which encourage the reporting of cases of children suspected of having been injured
as a result of physical, mental or emotional abuse or neglect or sexual abuse [and]
an analysis of ... the methods of diagnosing injuries inflicted as a result of
abuse...." We are informed that past programs have covered the gamut of potential
injuries, but have not established pregnancy as a per se injury. K.S.A.1991 Supp.
38-1523(b) requires joint investigations by SRS and law enforcement "[w]hen a
report of child abuse or neglect indicates (1) that there is serious physical
injury to or serious deterioration or sexual abuse of the child and (2) that action
may be required to protect the child...." This statute infers a distinction between
physical injury and sexual abuse; sexual abuse can occur without physical "injury."
K.S.A. 38-1525 provides protection for employees who report "injury inflicted upon
a child which was suspected by the employee of having resulted from the physical,
mental or emotional abuse or neglect or sexual abuse of the child." Substantially
the same language is used in K.S.A. 38-1526 providing certain immunity to persons
making reports. Again, it is the injury which must be reported, not merely
suspicions of abuse. Finally, among the items listed for courts to consider when
determining whether to terminate parental rights is any "unexplained injury or
death of a sibling...." K.S.A.1991 Supp. 38- 1583(b)(6). None of these statutes are
determinative of whether pregnancy of an unmarried minor necessarily constitutes an
injury.

   The legislative history of the code for care of children in general, and
K.S.A.1991 Supp. 38-1522(a) in particular, does not offer much assistance in
determining the legislature's intended meaning for the term "injured," or whether
pregnancy of an unmarried minor would be considered an "injury." The pertinent
provisions of K.S.A.1991 Supp. 38-1522, quoted above, have not been amended since

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

enactment of the code in 1982. The code for care of children is essentially part of
a recodification of the juvenile code, separating the sections dealing with
criminal offenses from those dealing with status offenses. See Kansas Report on
Legislative Interim Studies, Proposal No. 17, December, 1981. The recodification
was accomplished through the efforts of the juvenile code advisory committee of the
Kansas judicial council. See Minutes, Senate Committee on Judiciary, Jan. 25, 1982;
Minutes, House Committee on Judiciary, March 16, 1982. Originally, the
recommendation of the judicial council advisory committee omitted the term "sexual
abuse," and its definition, from what is now K.S.A.1991 Supp. 38-1502 and 38-1522.
Judicial Council Bulletin, June 1981. The comment to section 1502 read, "it is the
opinion of the Committee that sexual abuse is included in 'physical, mental or
emotional abuse.' " Id. These items were amended into the proposed legislation
during a subsequent meeting of the committee without comment. Minutes, Judicial
Council Juvenile Code Advisory Committee, p. 4, July 14, 15, 16, 1981. At that same
meeting, the committee altered section 1522 [now 38-1522(d) ] to the current
language "injuries resulting from." Previously the language used was "injuries
inflicted as a result." Id. at 6. The comments to sections 1522, 1521, 1523, 1524
(now K.S.A. 38-1525) and 1525 (now K.S.A. 38-1526) indicate that the language for
these sections was derived from K.S.A.1980 Supp. 38-717, 38-721c, 38-721, 38-721d
and 38-718 respectively. See also, Minutes, House Committee on Judiciary,
attachment B, pp. 5, 6 (March 16, 1982). The only significant amendment to these
statutes occurred in 1975 when K.S.A. 38-717 was amended to delete the adjective
"serious" from the description of injuries required to be reported. L. 1975, ch.
231, § 1. The reason given for the 1975 amendments was that they were "needed to
meet federal regulations for Title IV-A and IV-B monies." Minutes, Senate Committee
on Public Health and Welfare, March 18, 1975. This is believed to have been part of
the movement toward recognizing that minor injuries can be indications of abuse
situations, and that the state should not wait until the injuries become serious
before determining the necessity for intervention.

   *3 While the code and its history do not shed much light on whether the term
"injured" encompasses the condition of being pregnant, it does require liberal
construction "to the end that each child within its provisions shall receive the
care, custody, guidance, control and discipline, ... as will best serve the child's
welfare and the best interests of the state." K.S.A. 38- 1501. Other Kansas
statutes define "injury" narrowly to include only physical ailments. K.S.A.1991
Supp. 40-3103(i); 44-508(e). The rule of construction cited above and the usage of
the term throughout the code, however, dictate a broader reading in this case.
"Injure" is commonly defined as "[t]o cause harm or damage to; hurt." The American
Heritage Dictionary 676 (College Ed.1975). See also In re Norwood, 234 N.W.2d 601,
603 (Neb.1975) (neglect held to constitute an injury to child's welfare and
rights); St. Clair v. Douvas, 158 N.E.2d 642, 646 (Ill.1959) (term "injury" as used
in workers' compensation act broader than objective physical break or wound to the
body; includes also the consequences therefrom such as mental ailments or nervous
conditions). Thus, in our opinion, reportable injuries include emotional as well as
physical harm. A pregnant, unmarried minor may very likely display signs of
emotional, physical or mental injuries which should be reported. However, we do not
believe that pregnancy of an unmarried minor necessarily constitutes injury even
when that term is understood in its broadest sense. It has been held that pregnancy
is not itself an injury but a natural condition. Carter v. Howard, 86 P.2d 451, 455
(Or.1939). This is consistent with Kansas case law which refuses to recognize at
least a compensable injury for the birth of a normal, healthy child. Byrd v. Wesley
MedicalCenter, 237 Kan. 215 (1985); Johnson v. Elkins, 241 Kan. 407, 411 (1987).

   Whether a particular minor in a particular case has been injured as a result of
sexual intercourse and a resulting pregnancy must be determined on a case- by-case
basis. The fact of pregnancy certainly puts one on notice that sexual abuse (as
statutorily defined) has probably occurred, and requires persons listed in

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

XXVI Kan. Op. Atty. Gen. 17                                                        Page 4
Kan. Atty. Gen. Op. No. 92-48
**(Cite as: 1992 WL 613410 (Kan.A.G.))**

K.S.A. 1991 Supp. 38-1522(a) to investigate further whether the child has suffered
injury, physical or emotional, as a result of such activity. If there is reason to
suspect that the child has been injured, that person is then required to report
such suspicions and the reasons therefore.


Very truly yours,


Robert T. Stephan

Attorney General of Kansas



Julene L. Miller

Deputy Attorney General

XXVI Kan. Op. Atty. Gen. 17, Kan. Atty. Gen. Op. No. 92-48, 1992 WL 613410
(Kan.A.G.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works