IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AID FOR WOMEN, on its own behalf; et. al., | ) ) | |
| Plaintiffs, | ) | CASE NO. 03-1353-JTM |
| | ) | |
| v. | ) | |
| | ) | |
| NOLA FOULSTON, in her official capacity as District Attorney, 18th Judicial District of Kansas, as representative of a class of all county and district attorneys in the state of Kansas, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiffs' motion for a preliminary injunction (Dkt. No. 4), defendants' motion for judgment on the pleadings (Dkt. No. 45), motion to strike (Dkt. No. 47) and motion to certify a question to the Kansas Supreme Court (Dkt. No. 65). Plaintiffs bring this action seeking to enjoin defendants from enforcing K.S.A. § 38-1522 ("Reporting Statute") to incidents of sexual activity between adolescents under the age of sixteen and persons of similar age in which injury is not reasonably suspected. They request declaratory and injunctive relief under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. For the reasons stated below, the court grants plaintiffs' motion for a preliminary injunction (Dkt. No. 4) and denies defendants' motion for judgment on the pleadings (Dkt. No. 45), motion to strike (Dkt. No. 47) and motion to certify a question to the Kansas Supreme Court (Dkt. No. 65).

I.    **Motion for preliminary injunction**

### A.     Factual background

The court finds the following facts relevant for the purposes of considering plaintiff's motion for a preliminary injunction.

### 1.     The parties

Plaintiffs are licensed professionals required to report child abuse under the Reporting Statute.   They include physicians, nurses, social workers, a psychologist and a sexuality educator, who provide confidential health care and counseling services to adolescents in the state of Kansas.  In the course of his or her work, each of the individual plaintiffs sometimes becomes aware that an adolescent under the age of 16 is or has been sexually active.  Each individual plaintiff sues on his or her own behalf and on behalf of his or her patients under the age of 16 who seek confidential treatment, counseling, or health care.

Plaintiff Aid for Women is a medical practice in Kansas City that provides a range of gynecological services, including abortions. Aid for Women is criminally liable for the acts of its agents within the scope of their authority, K.S.A. § 21-3206, including failure to comply with the reporting statute. Aid for Women sues on its own behalf.  Plaintiff Teri Augustus, L.M.S.W., is a Licensed Masters Social Worker who is licensed to practice social work in the state of Kansas. She provides case management and adoption services to children and adolescents at a private child welfare agency in Wichita.  Plaintiff Margot Breckbill, R.N., is a registered nurse and childbirth educator. She teaches sexuality education at various agencies and at public and private schools in the Wichita area. She has also worked with pregnant and parenting teens in the Wichita area for the past eighteen years.  Plaintiff Tracy Cowles, M.D., is a perinatologist who is licensed to practice medicine in the state of Kansas. She is board certified

2

in obstetrics & gynecology, maternal-fetal medicine and medical genetics. Dr. Cowles provides perinatology services in a private medical practice in Overland Park.  Plaintiff Willow Eby, R.N., is a registered nurse who is licensed to practice nursing in the state of Kansas. Ms. Eby provides nursing services at a private medical practice in Wichita that provides abortions and other reproductive health services.  Plaintiff Vicki Epp, L.B.S.W., is a Licensed Bachelors Social Worker who is licensed to practice social work in the state of Kansas. She provides case management and other social services to children and adolescents at a private child welfare organization in Newton.  Plaintiff Margaret Estrin, M.D., is a board-certified obstetrician-gynecologist who is licensed to practice medicine in the state of Kansas. Dr. Estrin provides a range of obstetrical and gynecological services in a private medical practice in Overland Park. Plaintiff Herbert Hodes, M.D., is a board-certified obstetrician-gynecologist who is licensed to practice medicine in the state of Kansas.  His daughter, Plaintiff Traci Nauser, M.D., is also a board-certified obstetrician-gynecologist licensed to practice medicine in the state of Kansas. Dr. Hodes and Dr. Nauser provide a range of obstetrical and gynecological services, including abortions, contraceptives, and treatment of sexually transmitted diseases at their private medical practice in Overland Park.  Plaintiff Colleen O'Donnell, R.N.-C, is a registered nurse licensed by the state of Kansas to practice nursing. Ms. O'Donnell is employed by Dr. Hodes's and Dr. Nauser's medical practice, where she provides a range of nursing services within their obstetrical and gynecological practice.  Plaintiff Stacey Morgan, D.O., is a doctor of osteopathy who is licensed to practice medicine in the state of Kansas. Dr. Morgan is board certified in family practice. She provides a range of medical services in a private practice in Overland Park. Plaintiff Beth McGilley, Ph.D., is a clinical psychologist who is licensed to practice psychology

in the state of Kansas. Dr. McGilley provides individual and group counseling services in her private practice in Wichita.  Plaintiff Trina Wheeler, L.M.S.W., is a Licensed Masters Social Worker who is licensed to practice social work in the state of Kansas. Ms. Wheeler provides a variety of social work services to students of a public high school in Wichita.  Plaintiff Sherman Zaremski, M.D., is a physician licensed to practice medicine in the state of Kansas. He is board certified in internal medicine. Dr. Zaremksi provides abortions, family planning, and other health services at Aid for Women. He also provides abortions and other services at another private medical practice in Wichita.

Defendant Nola Foulston is the District Attorney for the 18th Judicial District of Kansas. She is charged with prosecuting violations of the reporting statute in her district. She is sued in her official capacity and as a representative of the class of all Kansas county and district attorneys.  On January 7, 2004, the court certified a defendant class consisting of all county and district attorneys in the state of Kansas.  (Dkt. No. 60).  The class members are responsible for prosecuting violations of the Reporting Statute.  Defendant Foulston is the named representative for the class.  All defendants are sued in their official capacity.

### 2.      The Reporting Statute

The Reporting Statute is entitled "Reporting of certain abuse or neglect of children; persons reporting; reports, made to whom; penalties for failure to report or interference with making of a report."  The Reporting Statute provides:

> (a) When any of the following persons has reason to suspect that a child has been injured as a result of physical, mental or emotional abuse or neglect or sexual abuse, the person shall report the matter promptly as provided in subsection (c) or (e): Persons licensed to practice the healing arts or dentistry; persons licensed to practice optometry; persons engaged in postgraduate training programs approved

by the state board of healing arts; licensed psychologists; licensed masters level psychologists; licensed clinical psychotherapists; licensed professional or practical nurses examining, attending or treating a child under the age of 18; teachers, school administrators or other employees of a school which the child is attending; chief administrative officers of medical care facilities; licensed marriage and family therapists; licensed clinical marriage and family therapists; licensed professional counselors; licensed clinical professional counselors; registered alcohol and drug abuse counselors; persons licensed by the secretary of health and environment to provide child care services or the employees of persons so licensed at the place where the child care services are being provided to the child; licensed social workers; firefighters; emergency medical services personnel; mediators appointed under K.S.A. 23-602 and amendments thereto; juvenile intake and assessment workers; and law enforcement officers. The report may be made orally and shall be followed by a written report if requested. When the suspicion is the result of medical examination or treatment of a child by a member of the staff of a medical care facility or similar institution, that staff member shall immediately notify the superintendent, manager or other person in charge of the institution who shall make a written report forthwith. Every written report shall contain, if known, the names and addresses of the child and the child's parents or other persons responsible for the child's care, the child's age, the nature and extent of the child's injury (including any evidence of previous injuries) and any other information that the maker of the report believes might be helpful in establishing the cause of the injuries and the identity of the persons responsible for the injuries.

(b) Any other person who has reason to suspect that a child has been injured as a result of physical, mental or emotional abuse or neglect or sexual abuse may report the matter as provided in subsection (c) or (e).

(c) Except as provided by subsection (e), reports made pursuant to this section shall be made to the state department of social and rehabilitation services. When the department is not open for business, the reports shall be made to the appropriate law enforcement agency. On the next day that the state department of social and rehabilitation services is open for business, the law enforcement agency shall report to the department any report received and any investigation initiated pursuant to subsection (a) of K.S.A. 38-1524 and amendments thereto. The reports may be made orally or, on request of the department, in writing.

(d) Any person who is required by this section to report an injury to a child and who knows of the death of a child shall notify immediately the coroner as provided by K.S.A. 22a-242,  and amendments thereto.

(e) Reports of child abuse or neglect occurring in an institution operated by the secretary of social and rehabilitation services or the commissioner of juvenile justice shall be made to the attorney general. All other reports of child abuse or neglect by persons employed by or of children of persons employed by the state

5

department of social and rehabilitation services or the juvenile justice authority shall be made to the appropriate law enforcement agency.

(f) Willful and knowing failure to make a report required by this section is a class B misdemeanor.

(g) Preventing or interfering with, with the intent to prevent, the making of a report required by this section is a class B misdemeanor.

### 3.   Advisory opinions considering the Reporting Statute

On April 6, 1992, Kansas Attorney General Robert Stephan issued an opinion regarding the Reporting Statute and cases of unmarried pregnant minors.  The opinion states:

> Whether a particular minor in a particular case has been injured as a result of sexual intercourse and a resulting pregnancy must be determined on a case-by-case basis.  The fact of pregnancy certainly puts one on notice that sexual abuse (as statutorily defined) has probably occurred, and requires persons listed in K.S.A. 1991 Supp. 38-1522(a) to investigate further whether the child has suffered injury, physical or emotional, as a result of such activity.  If there is reason to suspect that the child has been injured, that person is then required to report such suspicions and the reasons therefore.

Kansas Att'y Gen. Op. No. 92-48 (April 6, 1992) ("the 1992 advisory opinion").  The 1992 advisory opinion requires a report to be made only if there is reason to suspect that the minor has been injured by the illegal sexual activity.

On June 18, 2003, Kansas Attorney General Phill Kline issued an opinion regarding the Reporting Statute and the circumstances under which abortion providers are required to report rape and/or the sexual abuse of a minor.  The opinion states:

> Kansas law clearly provides that those who fall under the scope of the reporting requirement must report any reasonable suspicion that a child has been injured as a result of sexual abuse, which would be any time a child under the age of 16 has become pregnant.  As a matter of law such child has been the victim of rape or one of the other sexual abuse crimes and such crimes are inherently injurious.

Kansas Att'y Gen. Op. No. 2003-17 (June 18, 2003) ("the 2003 advisory opinion").  The 2003

advisory opinion, by its terms, construes the Reporting Statute to mean any sexual activity by an

unmarried person under the age of 16 must be reported to the State Department of Social and

Rehabilitation services ("the SRS") or other appropriate state officials.

### 4.      Investigation of reports

The SRS is charged with investigating the reports of possible child abuse "for the purpose

of determining whether the report is valid and whether action is required to protect the child from

further abuse or neglect." K.S.A. 38-1523.  Such investigations ordinarily involve an interview

with the minor's parents or primary care givers.  SRS Children & Family Policy Procedure

Manual, § 2110 (Dkt. No. 1, Exhibit B).   Parental permission to interview the minor is sought by

the SRS whenever practicable.  *Id*. at § 2130.  Pursuant to §§ 1360 and 1361 of the manual,

reports are screened out for the following reasons:

> A. Report does not indicate child has been harmed or is likely to be harmed.

> B. Report concerns "lifestyle" issues that do not directly harm a child or place a
> child in a likelihood of harm.

*Id*.  A practice note to this section indicates one reason for screening out is "mutual sexual

exploration of age-mates (no force, power differential, or incest issues)."

### 5.      Plaintiff's allegations

Plaintiffs fear defendants will enforce the Reporting Statute, to require them to report

their adolescent patients and clients to the state whenever plaintiffs suspect those patients and

clients have been sexually active, even if plaintiffs do not suspect that the sexual activity was

"abuse" or injurious.  Plaintiffs acknowledge it is appropriate to report cases when they suspect

that a child or adolescent has been injured by actual, sexual abuse.[1]  However, plaintiffs fear reporting all sexual activity between age-mates will not protect adolescents from actual abuse, but will instead threaten plaintiffs' professional relationships with their patients and clients and deter adolescents from obtaining needed health care at the expense of their health.  Plaintiffs fear they will be subject to possible prosecution if they do not automatically report all sexually active adolescents under the age of 16 to the SRS.

### 6.      Additional findings

On November 26, 2003, the court heard testimony and received evidence regarding the preliminary injunction.  Additional findings in the body of the opinion may refer to this evidence.

### B.      Standard

"The grant of a preliminary injunction is within the sound discretion of the district court." *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998) (citation omitted).  In order to obtain a preliminary injunction, plaintiffs must establish: 1) they will suffer irreparable harm unless the motion is granted; 2) there is a substantial likelihood they will eventually prevail on the merits; 3) the threatened injury to plaintiffs outweighs any harm the proposed injunction may cause defendants; 4) the injunction, if issued, would not be contrary to the public interest.  *Id.* (citation omitted).

Defendants argue the court should apply a heightened standard requiring plaintiffs to show the four requirements for a preliminary injunction weigh heavily and compellingly in their favor.  "The heightened burden applies to preliminary injunctions that 1) disturb the status quo,

---

[1]"Actual, sexual abuse" in this instance is the term used by plaintiffs.  The court notes defendants' view that all sexual activity by or with a minor is inherently injurious to the minor whatever the circumstances.

2) are mandatory as opposed to prohibitory, or 3) provide the movant substantially all the relief he may recover after a full trial on the merits." *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).

Upon review, the court finds defendants' argument for a heightened standard fails. Defendants argue a preliminary injunction would alter the status quo by striking down the Reporting Statute or preventing the state from fully enforcing the statute.  However, this contention overreaches; an injunction would prevent only one type of enforcement of the Reporting Statute.  Furthermore, status quo is defined as "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001) (citations omitted).  The 2003 advisory opinion generated the questions concerning the Reporting Statute's interpretation.  Accordingly, the last uncontested status between the parties stems from the 1992 advisory opinion stating reporters were not required to report adolescents engaged in alleged non-injurious consensual sex.  Plaintiffs seek a return to this status, which if effected would not alter the status quo, but maintain it.

Defendants also argue a preliminary injunction would provide plaintiffs with substantially all the relief they might recover at trial.  However, this argument also fails to provide a basis for applying a heightened standard.  "The only reason to disfavor a preliminary injunction that grants substantially all the relief sought is if it would 'render a trial on the merits largely or completely meaningless.'" *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1247 (10th Cir. 2001) (quoting *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 35 (2d Cir. 1995)). *Prairie Band* offers an example of a situation where this might occur such as "'a case involving

the live televising of an event scheduled for the day on which preliminary relief is granted.'"  *Id.* (quoting 60 F.3d at 35).  Plaintiffs' case is not analogous to this type of one time only event and there is no indication a trial on the merits would be meaningless.

With respect to the "substantial likelihood of prevailing on the merits" prong of the test, however, the court rejects plaintiffs' argument that the court should apply the Tenth Circuit's "liberal definition."  That "liberal definition" provides "[w]hen the other three requirements for a preliminary injunction are satisfied, it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."  *Autoskill, Inc., v. National Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir. 1993) (quoting *Otero Sav. and Loan Ass'n v. Federal Reserve Bank*, 655 F.2d 275, 278 (10th Cir. 1981)) (additional citations omitted). In *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003), the court acknowledges its adoption of the "liberal definition" of the substantial likelihood element in most instances.  However, the *Heideman* court also held:

> [T]he Second Circuit has held, and we agree, that '[w]here ... a preliminary injunction seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the less rigorous fair-ground-for-litigation standard should not be applied.'

*Id.* (quoting *Sweeney v. Bane*, 996 F.2d 1384, 1388 (2d Cir. 1993)) (additional citations omitted). Accordingly, the court declines to apply the less rigorous standard to plaintiffs' case.

**C.     Analysis**

Plaintiffs seek relief based on three grounds: 1) the Reporting Statute is unconstitutional because it fails to give plaintiffs fair notice of when reporting is required; 2) the Reporting

Statute inhibits minors' ability to obtain contraception and prevents them from confidentially

obtaining abortions; 3) the Reporting Statute is unconstitutional because it violates the

confidentiality rights of minor patients and or clients without serving a legitimate, important, or

compelling state interest.  Defendants also challenge plaintiffs' standing to pursue these claims.

## 1.      Status of plaintiffs

Initially, defendants argue plaintiffs lack standing to raise their patients' and clients'

alleged informational privacy rights.  Defendants rely primarily on *Tileston v. Ullman*, 318 U.S.

44, 46 (1943), which held a physician lacked standing to challenge a statute prohibiting

contraception on the basis that it would deprive the physician's patients of their constitutional

rights.  Defendants cite the discussion of *Tileston* in *Griswold v. Connecticut*, 381 U.S. 479

(1965).  In *Griswold*, the Court considered a constitutional challenge to convictions under a

Connecticut statute prohibiting the use of contraceptive devices.  *Id*.  The Court contrasted the

standing requirements between such a case and declaratory judgments stating:

> We think that appellants have standing to raise the constitutional rights of the
> married people with whom they had a professional relationship.  *Tileston v.*
> *Ullman* [citations omitted], is different for there the plaintiff seeking to represent
> others asked for a declaratory judgment.  In that situation we thought that the
> requirements of standing should be strict, lest the standards of 'case or
> controversy' in Article III of the Constitution become blurred.  Here those doubts
> are removed by reason of a criminal conviction for serving married couples in
> violation of an aiding-and-abetting statute.

*Id*. at 481.  Defendants contend none of the plaintiffs have been charged or convicted under the

Reporting Statute thus, they lack standing pursuant to *Tileston*.  Defendants also argue plaintiffs

fail to show an actual threat of imminent prosecution.

The court finds plaintiffs have standing to challenge the Reporting Statute.  In *Tileston*,

11

"the sole interest asserted was the patients' right to life under the Fourteenth Amendment."
*Tesmer v. Granholm*, 333 F.3d 683, 705 (6th Cir. 2003) (citations omitted).  In this matter, plaintiffs go beyond solely asserting their patients' rights; plaintiffs' second claim for relief challenges the Reporting Statute because it fails to give plaintiffs fair notice of when reporting is required.  In *Singleton v. Wulff*, 428 U.S. 106, 118 (1976), the Court held two physicians claiming a Missouri statute excluding non-medically indicated abortions from medicaid benefits impaired their own constitutional rights also possessed standing to assert their patients' rights. "It generally is appropriate to allow a physician to assert the rights of women patients as against governmental interference with the abortion."  *Id*.  The court further notes *State of N.Y. v. Schweiker*, 557 F.Supp. 354 (D.C.N.Y. 1983), where physicians challenged a regulation requiring Title X grantees to notify the parents of unempancipated minor patients upon the minors' receipt of contraception.  In *Schweiker*, the court found the physicians could assert their own constitutional rights and the rights of their unempancipated minor patients pursuant to *Singleton*.  *Id*. at 358-59. Plaintiffs here assert both their own constitutional rights and the rights of their patients and clients, accordingly, they have standing to bring this suit.

Concerning the threat of prosecution, the court finds plaintiffs have adequately met this standard as well.  In *Wilson v. Stocker*, 819 F.2d 943 (10th Cir. 1987), the court discussed a declaratory challenge to a statute prohibiting anonymous distribution of campaign literature.  The *Wilson* court stated:

> A plaintiff who shows that his 'fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative,' and who challenges 'those specific provisions of state law which have provided the basis for threats of criminal prosecution against him,' need not suffer actual arrest or prosecution to establish a case or controversy.

*Id*. at 946 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979);

*Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).

Before the 2003 advisory opinion, plaintiffs testified they only reported adolescents they suspected were being harmed by sexual abuse.  Plaintiffs allege they must change their conduct in order to comply with the 2003 advisory opinion and they desire to continue operating under the 1992 advisory opinion.  Plaintiffs allege mandatory reporting will harm their patients and their professional relationships with their patients.  Furthermore, defendants offer no assurances plaintiffs will not be prosecuted, if they continue not automatically reporting all sexually active patients or clients.  *See KVUE, Inc., v. Moore*, 709 F.2d 922, 930 (5th Cir. 1983) (concluding plaintiff possessed standing, as "it desires to violate the statute and has demonstrated that the county attorney ... despite her concerns about the statute's possible ambiguity, would not rule out prosecution.").  Plaintiffs have clearly established that their fear of criminal prosecution is "not imaginary or wholly speculative."

### 2.      Status of fair notice claim

Plaintiffs claim the Reporting Statute is unconstitutional because it fails to give plaintiffs fair notice of when reporting is required.  Plaintiffs argue the Constitution demands a higher level of clarity, when "the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights."  *Colautti v. Franklin*, 439 U.S. 379, 391 (1979).  Next, plaintiffs argue a pre-enforcement challenge to a subset of the Reporting Statute's applications requires only a showing the Reporting Statute is vague in all of the applications challenged.  Accordingly, plaintiffs argue they only need to show the Reporting Statute would inhibit the exercise of minors' privacy rights, i.e., they need not show the Reporting Statute actually violated

13

privacy rights.  They point to the two advisory opinions stating conflicting conclusions on

whether mandatory reporting is required as demonstrating the Reporting Statute's vagueness.

Plaintiffs also state various members of the defendant class have expressed uncertainty on the

Reporting Statute's requirements.

In response, defendants argue the constitutionality of the Reporting Statute should be

presumed.  *U.S. v. Pompey*, 264 F.3d 1176, 1179 (10th Cir. 2001) (citations omitted).  They claim

the Reporting Statute is not overly broad, because it fails to reach a substantial amount of

constitutionally protected First Amendment conduct.  Defendants argue, in this pre-enforcement

context, plaintiffs must prove the Reporting Statute is impermissibly vague in all its applications.

Furthermore, defendants contend while there may be some uncertainty if marginal offenses fall

under the Reporting Statute, it is not vague in all its applications.  Defendants also assert that

differences in opinion on how a Reporting Statute should be applied does not make it

impermissibly vague.

In *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972), the Court discusses the

vagueness doctrine, stating:

> It is a basic principle of due process that an enactment is void for vagueness if its
> prohibitions are not clearly defined. Vague laws offend several important values.
> First, because we assume that man is free to steer between lawful and unlawful
> conduct, we insist that laws give the person of ordinary intelligence a reasonable
> opportunity to know what is prohibited, so that he may act accordingly. Vague
> laws may trap the innocent by not providing fair warning. Second, if arbitrary and
> discriminatory enforcement is to be prevented, laws must provide explicit
> standards for those who apply them. A vague law impermissibly delegates basic
> policy matters to policemen, judges, and juries for resolution on an *ad hoc* and
> subjective basis, with the attendant dangers of arbitrary and discriminatory
> application.

(*quoted in U.S. v. Reed*, 114 F.3d 1067, 1069-70 (10th Cir. 1997)).  "A federal court evaluating a

vagueness challenge to a state law must read the statute as it is interpreted by the state's highest court."   *U.S. v. Gaudreau*, 860 F.2d 357, 361 (10th Cir. 1988) (citation omitted).

Before examining the Reporting Statute, the court considers whether plaintiffs must prove the statute impermissibly vague in all its applications or only in the challenged application.  "A statute may be challenged on its face when it threatens to chill constitutionally protected conduct." *Gaudreau*, 860 F.2d at 360 (citing *Colautti v. Franklin*, 439 U.S. 379, 390-91 (1979)) (additional citation omitted).  "In a facial challenge raising no First Amendment or other claim that the act reaches constitutionally protected conduct, the complainant 'must demonstrate that the law is impermissibly vague in all of its applications.'"   *U.S. v. Corrow*, 119 F.3d 796, 803 (10th Cir. 1997) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)).  In an upcoming part of the opinion, the court recognizes minors possess a right to informational privacy concerning personal sexual matters.[2]  Accordingly, plaintiffs may challenge the Reporting Statute on its face alleging it threatens to chill constitutionally protected conduct.  Plaintiffs are not required to show the Reporting Statute impermissibly vague in all its applications.

Still, plaintiffs face a very high burden in order to overcome the Reporting Statute's presumption of validity.  "A statute violates due process if it is so vague that a person of common intelligence cannot discern what conduct is prohibited, required, or tolerated."   *Mini Spas, Inc., v. South Salt Lake City Corp.*, 810 F.2d 939, 942 (10th Cir. 1987) (citation omitted).  Upon review, the court finds plaintiffs are not likely to succeed in making their vagueness claim.  Plaintiffs argue they are "uncertain whether they must report illegal adolescent sexual activity when they

_____

[2]  The informational privacy is discussed in greater detail in Section I, Part C, 4.

15

do not suspect that the adolescent has been injured by sexual abuse." (Dkt. No. 56). The Reporting Statute designates the persons required to report if they suspect injury to a child.[3] A reading of the Reporting Statute shows the terms "physical, mental or emotional abuse or neglect" and "sexual abuse" are precisely defined.[4] The definition of "sexual abuse" includes "any act committed with a child  which is described in article 35, chapter 21 of the Kansas Statutes Annotated." K.S.A. § 38-1522. Article 35, chapter 21 deals with sex offenses and includes precise definitions of "sexual intercourse" and "sodomy."[5] The Reporting Statute gives

---

[3]     Persons licensed to practice the healing arts or dentistry; persons licensed to practice optometry; persons engaged in postgraduate training programs approved by the state board of healing arts; licensed psychologists; licensed masters level psychologists; licensed clinical psychotherapists; licensed professional or practical nurses examining, attending or treating a child under the age of 18; teachers, school administrators or other employees of a school which the child is attending; chief administrative officers of medical care facilities; licensed marriage and family therapists; licensed clinical marriage and family therapists; licensed professional counselors; licensed clinical professional counselors; registered alcohol and drug abuse counselors; persons licensed by the secretary of health and environment to provide child care services or the employees of persons so licensed at the place where the child care services are being provided to the child; licensed social workers; firefighters; emergency medical services personnel; mediators appointed under K.S.A. 23-602 and amendments thereto; juvenile intake and assessment workers; and law enforcement officers.

K.S.A. § 38-1522.

[4] K.S.A. § 38-1502 provides:

b) 'Physical, mental or emotional abuse' means the infliction of physical, mental or emotional injury or the causing of a deterioration of a child and may include, but shall not be limited to, maltreatment or exploiting a child to the extent that the child's health or emotional well-being is endangered.

(c) 'Sexual abuse' means any act committed with a child which is described in article 35, chapter 21 of the Kansas Statutes Annotated and those acts described in K.S.A. 21-3602 or 21-3603 and amendments thereto.

The cross references in § 38-1502 define "incest" (K.S.A. 21-3602) and "aggravated incest" (K.S.A. 21-3603).

[5]K.S.A. §  21-350 provides:

16

no indication it would not include acts between adolescent age-mates constituting "sexual intercourse" or "sodomy" as defined in K.S.A. § 21-3501.  In other words, the Reporting Statute does not include any language exempting reports of illegal adolescent sexual activity even if the reporter deems the act to be non-injurious.  Accordingly, plaintiffs' uncertainty does not stem from the Reporting Statute itself.  The Reporting Statute provides explicit standards and a reasonable opportunity to know what one is required to report.

Plaintiffs argue the confusion arises from the two contrary interpretations of the Reporting Statute set out in the advisory opinions.  Plaintiffs also argue the SRS interprets the Reporting Statute to mean illegal adolescent sexual activity is not necessarily injurious.  However, "a statute is not unconstitutionally vague because there is more than one interpretation of it." *Boatright v. Kansas Racing Com'n*, 834 P.2d 368, 372-73 (Kan. 1992) (citation omitted).  Furthermore, as noted in *Gaudreau*, "a scienter requirement may mitigate a criminal law's vagueness by ensuring that it punishes only those who are aware their conduct is unlawful."  860 F.2d at 360.  The Reporting Statute penalizes a "willful and knowing failure to make a report."  § 38-1522.  Finally, the 2003 advisory opinion, in actuality, clarifies the Reporting Statute.  Plaintiffs propose the non-reporting of cases they deem to be non-injurious, which injects uncertainty into the Reporting Statute.  Under plaintiffs' proposal there would be less clarity

---

1) "Sexual intercourse" means any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse.

2) "Sodomy" means oral contact or oral penetration of the female genitalia or oral contact of the male genitalia; anal penetration, however slight, of a male or female by any body part or object; or oral or anal copulation or sexual intercourse between a person and an animal.

Both the definitions of "sexual intercourse" and "sodomy" exempt penetration in the course of the performance of generally recognized health care practices or a body cavity search.

concerning when the statute requires reporting.  The 2003 advisory opinion clarifies the standard and provides plaintiffs with fair notice of when reporting is required.

### 3.    Status of ability to obtain contraception and abortions claim/motion to strike (Dkt. No. 47)

On October 16, 2003, plaintiffs amended their complaint to add a third claim for relief. Plaintiffs argue the Reporting Statute inhibits minors' ability to obtain contraception and prevents them from confidentially obtaining abortions.  Defendants discussed this issue in their response filed November 3, 2003 (Dkt. No. 39) and plaintiffs responded to this discussion in their reply filed November 14, 2003 (Dkt. No. 42).  On November 19, 2003, defendants filed a motion to strike the portions of plaintiff's reply regarding this third claim.  (Dkt. No. 47).  The court denies Dkt. No. 47, because plaintiffs did not raise this argument for the first time in their reply.  Rather, plaintiffs included discussion of the third claim in response to defendants' arguments in Dkt. No. 39.  However, plaintiffs did not present evidence on their third claim at the injunction hearing nor did the parties include discussion of this issue in their post hearing briefing.  Accordingly, the court does not consider this issue for purposes of the preliminary injunction.

### 4.    Status of informational privacy/confidentiality rights claim

Plaintiffs argue the Reporting Statute is unconstitutional as applied to their case, because it violates the informational privacy and confidential rights of minor patients and clients without serving a significant state interest.  In response, defendants argue minors do not have an informational privacy right that would preclude mandatory reporting.  In the alternative, defendants contend the Reporting Statute advances a significant state interest.  In order to resolve

this matter, the court must examine whether minors possess a right to informational privacy, whether public disclosure occurs, and whether the Reporting Statute serves a significant state interest not present in the case of adults.

> **a.      Rights of minors**

Defendants contend states possess the right to criminalize sexual relations of minors. Accordingly, defendants argue minors do not have a legitimate expectation of privacy regarding unlawful voluntary sexual conduct.

In *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977), the Court addressed the right to informational privacy stating:

> The cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests.  One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.

The *Whalen* Court upheld a New York statute requiring the reporting of "the names and addresses of all persons who have obtained, pursuant to a doctor's prescription, certain drugs for which there is both a lawful and an unlawful market." *Id.* at 591.  Accordingly, the Supreme Court recognizes a right of privacy protecting "the individual's interest in avoiding disclosure of personal matters." *Eastwood v. Dept. of Corrections of State of Okla.*, 846 F.2d 627, 630 (10th Cir. 1988) (citation omitted).  The Tenth Circuit recognizes a right to informational privacy concerning personal sexual matters and confidential medical information.  *Id.*; *Livsey v. Salt Lake County*, 275 F.3d 952, 956 (10th Cir. 2001) (if information is "highly personal or intimate," an individual's expectation of privacy is legitimate); *ALA v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994) ("There is no dispute that confidential medical information is entitled to constitutional

privacy protection.") (citations omitted).

Upon review, the court finds plaintiffs' minor patients and clients possess a right to informational privacy concerning personal sexual matters that might be revealed through mandatory reporting.  Although the Tenth Circuit has not examined this right in the context of minors, other courts have recognized such a right.  *Planned Parenthood v. Lawall*, 307 F.3d 783, 789, 790 (9th Cir. 2002), recognizes minors have an interest in avoiding disclosure of sensitive information.  Furthermore, *Carey v. Population Servs. Int'l*, 431 U.S. 683, 693 (1977) held "the right to privacy in connection with decisions affecting procreation extends to minors as well as adults."

Defendants fail to present authority countering a finding that mandatory reporting would not concern the sort of highly personal or intimate information protected by the right to privacy.  Defendants cite several cases holding minors do not have a constitutionally protected privacy right to engage in consensual sexual activity.[6]  These cases would accurately refute a challenge to Kansas state laws criminalizing sexual behavior of minors, but they do not examine disclosure and confidentiality issues concerning such behavior.  Defendants contend if an expectation of privacy would not attach to minors' behavior then disclosure of such information would not be protected.  However, this argument is not persuasive.  Although in a different context, the Supreme Court has recognized a patient's reasonable expectation of privacy concerning medical tests even if the test reveals illegal conduct.  *Ferguson v. City of Charleston*, 532 U.S. 67, 68 (2001) (hospital's policy of reporting positive urine drug tests to police resulted in unreasonable

_____

[6] *In the Matter of Pima County Juvenile Appeal* No. 74802-2, 164 Ariz. 25  (1990); *J.A.S. v State*, 705 So.2d 1381 (Fl. 1998); *In re T.A.J.*, 62 Cal.App.4th 1350 (1998).

searches absent patients' consent).

### b.   Public disclosure

Secondly, defendants argue minors' privacy rights are not implicated by mandatory

reporting, because the disclosure to SRS is not public disclosure. Defendants contend SRS has

strict confidentiality requirements and there is no showing that such confidentiality has ever been

breached. This argument also fails.  K.S.A. § 38-1507(d) allows certain parties access to SRS

reports, so the disclosure is not confined solely to the SRS.[7]  Accordingly, the court finds

plaintiffs' minor patients' and clients' privacy rights are implicated by mandatory reporting.

### c.   The Reporting Statute's state interest

Plaintiffs argue intrusions on the right to informational privacy are subject to strict

scrutiny relying on *Sheets v. Salt County*, 45 F.3d 1383, 1387 and *Fraternal Order of Police,*

*Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987).  However, plaintiffs

ignore the fact that these cases involve the informational privacy rights of adults.  A different and

less rigorous test is applied when examining the rights of minors.  *Carey*, 431 U.S. at 693.  A

state regulation inhibiting the privacy rights of minors and not those of adults is valid only if it

serves a significant state interest that is not present in the case of adults.  *Id*.  *See also Schleifer*

*by Schleifer v. City of Charlottesville*, 159 F.3d 843, 847 (4th Cir. 1998).  Thus, defendants must

show mandatory reporting under the Reporting Statute serves a significant state interest not

present in the case of adults.

---

[7]These parties include a child named in the report or records, parents, guardians, court-appointed advocates, doctors, mental heal professionals, persons or entities licensed or registered to care for, treat or supervise a child in need of care, coroners, medical examiners, the state child death review board, prospective adoptive parents, the department of health and environment, the state and protection and advocacy agency, educational institutions, educators, the secretary of social and rehabilitation services, a law enforcement agency, a juvenile intake and assessment worker, the commissioner of juvenile justice.  K.S.A. § 38-1507

Cases examining the right to informational privacy provide some guidance for the court's evaluations of the Reporting Statute.  Generally, rulings in favor of informational privacy violations involve very extreme disclosures and breaches of confidentiality.[8]  In contrast, cases examining informational privacy challenges to statutes generally result in rulings upholding the necessity of the statute.[9]  However, the Tenth Circuit has yet to consider an informational privacy challenge to a statute of this nature.

In evaluating the Reporting Statute, the court notes the state's strong interest in preventing child abuse and "the strong public policy in favor encouraging reports of possible sexual abuse." *Clevenger v. Catholic Social Service*, 901 P.2d 529, 236 (Kan.App. 1995). Plaintiffs assert while defendants prove mandatory reporting of abuse generally serves this state interest, they fail to show how it applies to non-injurious sexual contact between adolescent age-mates. Plaintiffs make this argument based on the contention that the SRS "screens out" reports of such activity.  In other words, plaintiffs assert the SRS does not investigate mandatory reports of non-injurious sexual contact between adolescent age-mates.  However, the testimony of Cathy Hubbard, Senior Administrator for Protection and Prevention Services for SRS, shows the

---

[8]For example, in *Sheets*, the court found a county investigator's disclosure of excerpts from a murder victim's diary to an author violated informational privacy.  45 F.3d 1383.  The City of New York's Commission on human rights' press release identifying an individual's HIV status may have violated informational privacy in *In re Doe*, 15 F.3d 264 (2d Cir. 1994).  In *Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998), the court found "a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing intimate details of the rape where no penalogical purpose is being served."

[9]The *Whalen* court upheld a New York statute requiring the reporting of "the names and addresses of all persons who have obtained, pursuant to a doctor's prescription, certain drugs for which there is both a lawful and unlawful market." *Whalen*, 429 U.S. at 591.  In *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), the court found the California Assault Weapons Control Act establishing a public registry of those who possess assault weapons did not violate informational privacy rights of gun owners.  In *Greenville Women's Clinic v. Commissioner*, 317 F.3d 357 (4th Cir. 2002), the court found South Carolina's abortion clinic regulation allowing disclosure of patient identification to state officials administering clinic licensing program did not violate patients' informational privacy rights.

"screening out" decision involves some preliminary investigation and the use of the SRS database.  This allows the SRS to check for any prior abuse reports made about a minor and look for patterns necessitating more investigation and additional follow-up.  Accordingly, plaintiffs' argument that mandatory reporting *only* succeeds in breaching the minors' confidentiality is incorrect.  Nevertheless, it is clear public disclosure of the minors' information does occur resulting in a breach of minors' informational privacy rights.

Plaintiffs also argue mandatory reporting may discourage minors from seeking health care.  However, this argument is similar to one disregarded by the Supreme Court in *Whalen*.  In *Whalen*, the appellees argued the statute at issue might cause patients to decline medical treatment "because of their fear that the misuse of the computerized data will cause them to be stigmatized as 'drug addicts.'" 429 U.S. at 596.  Relying on *Lochner v. New York*, 198 U.S. 45 (1905), the district court found the statute to be unconstitutional as "unreasonable, unnecessary, and arbitrary interference with the right of the individual to his personal liberty."  *Id*. (citation omitted).  The *Whalen* court held:

> The holding in *Lochner* has been implicitly rejected many times. State legislation which has some effect on individual liberty or privacy may not be held unconstitutional simply because a court finds it unnecessary, in whole or in part. For we have frequently recognized that individual States have broad latitude in experimenting with possible solutions to problems of vital local concern.

*Id*. at 597.  The *Whalen* court upheld the statute at issue stating:

> Unquestionably, some individuals' concern for their own privacy may lead them to avoid or to postpone needed medical attention. Nevertheless, disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient.  Requiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically

23

amount to an impermissible invasion of privacy.

*Id*. at 602.

Accordingly, the court is left with the difficult task of balancing the state's interest in preventing child abuse against the breach of informational privacy resulting from reports made to SRS. The court reaches its decision, in part, by considering the nature of the information involved. The Reporting Statute requires disclosure of highly personal information from plaintiffs' minor patients and clients. The court is convinced even a limited breach of confidentiality concerning such unique and intimate information could have large implications for the well-being of minors. The court is also struck by the magnitude of the change in policies outlined in the 2003 advisory opinion. It is persuasive that the parties operated under the 1992 advisory opinion for a substantial period of time without discernible problems. This mitigates against allowing a breach of minors' informational privacy rights even if such a breach is made in an investigatory context. Further, the court is hesitant to sanction such a monumental change in policy considering the new policy's imposition on the informational privacy rights of minors. Based on the aforementioned, the court finds plaintiffs are likely to succeed on their informational privacy claim. Thus, the court grants plaintiffs' motion for a preliminary injunction on this basis.

**II.    Motion to certify a question to the Kansas Supreme Court (Dkt. No. 65)**

Defendants seek certification of the following question: For purposes of K.S.A. § 38-1522, the mandatory reporting statute, what does "reason to suspect that a child has been injured" mean?

"Certification is a useful procedure commended by the Supreme Court." *Roane v. Koch*

*Industries, Inc., et. al.*, 103 F.Supp.2d 1286, 1290 (D. Kan. 2000) (citations omitted).  "It is well-established law in this circuit that certification is particularly appropriate where the legal question at issue is novel and the applicable state law is unsettled."  *Id.* (citations omitted).  "On the other hand, certification is never compelled, and should not 'be routinely invoked whenever' a new or unsettled question of state law is raised."  *Id.* (quoting *Copier By and Through Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998)) (additional citation omitted).  "Certification is a matter committed to the federal court's sound discretion."  *Id.* (citations omitted).

Defendants argue certification of this question would simplify the issues either by mooting the entire case or eliminating the vagueness issue.  However, defendants maintain the meaning of the Reporting Statute is clear; the statute requires mandatory reporting of incidents of sexual activity between adolescents under the age of sixteen and persons of similar age.  Defendants point to plaintiffs' allegation that the Reporting Statute is unconstitutional because it fails to give plaintiffs fair notice of when reporting is required.

Upon review, the court denies defendants' motion for certification.  The court finds certification of this question would not simplify the case in a substantial manner.  In its examination of plaintiffs' motion for a preliminary injunction, the court evaluated the Reporting Statute in relation to plaintiffs' vagueness claim concluding the statute provides explicit standards and a reasonable opportunity to know what one is required to report.  The court found plaintiffs' vagueness claim was unlikely to succeed.[10]  Accordingly, a reexamination of the Reporting Statute by the state court is unnecessary.  In deciding whether to certify a question, the court must determine whether it "saves time, energy, and resources, and helps build a cooperative

---

[10] *See* Section I, Part C, 2 for greater detail.

judicial federalism." *Boyd Rosene and Associates, Inc. v. Kansas Mun. Gas*, 178 F.3d 1363,

1365 (10th Cir. 1999) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974)).  Here,

these values would not be served by certification of the question.

**III.    Motion for judgment on the pleadings (Dkt. No. 45)**

    **A.    Statement of facts**

The court adopts the statement of facts set out in its consideration of plaintiffs' motion for

a preliminary injunction.  The court also takes the following allegations from plaintiffs' amended

complaint:

    **1. Cross-references in Reporting Statute**

Article 35, chapter 21 includes the crimes of aggravated indecent liberties with a child

and unlawful voluntary sexual relations. "Aggravated indecent liberties with a child" is defined

to include "sexual intercourse with a child who is 14 or more years of age but less than 16 years

of age," K.S.A. § 21-3504(a)(1), regardless of the age of the sexual partner.  Sexual intercourse is

defined to mean "any penetration of the female sex organ by a finger, the male sex organ or any

object." K.S.A. § 21-3501(1).  "Aggravated indecent liberties with a child" also includes, with

respect to a child under the age of 14, "any lewd fondling or touching of the person of either the

child or the offender, done or submitted to with the intent to arouse or satisfy the sexual desires

of either the child or the offender, or both," regardless of the age of the "offender." K.S.A. § 21-

3504(a)(3)(A).  "Unlawful voluntary sexual relations is engaging in voluntary: (1) Sexual

intercourse; (2) sodomy; or (3) lewd fondling or touching with a child who is 14 years of age but

less than 16 years of age and the offender is less than 19 years of age and less than four years of

age older than the child and the child and the offender are the only parties involved and are

26

members of the opposite sex." K.S.A. § 21-3522(a).  Sodomy is defined to include "any oral

contact or oral penetration of the female genitalia or oral contact of the male genitalia." Article

35, chapter 21 also includes the crime of rape, which is defined to include "sexual intercourse

with a child who is under 14 years of age," Kan. Stat. § 21-3502(a)(2), regardless of the age of

the sexual partner.

**2. Enforcement of Reporting Statute**

Upon information and belief, some Kansas county and district attorneys, including

defendant Foulston, who have primary responsibility for enforcing the reporting requirement

have endorsed and adopted Kline's interpretation of the reporting requirement.  Upon

information and belief, other Kansas county and district attorneys have indicated disagreement

with the Kline opinion or have stated that they would like further clarification of the scope of the

reporting requirement.  Upon information and belief, in most counties the enforcement policy has

not been announced.

**3.        Plaintiffs' allegations**

Adolescents in the United States and Kansas become increasingly sexually active as

they get older.  By age 16, approximately 30% of adolescents in the United States have engaged

in sexual intercourse.  Most sexual activity by adolescents under the age of 16 consists of sexual

activity with peers.  Consensual sexual activity between an adolescent under 16 and a person of

similar age is not inherently injurious to the adolescent(s).  Access to confidential reproductive

health care, including complete sexuality counseling, contraceptive information and services,

pregnancy testing, and psychological counseling, is essential to protecting the health of

adolescents.  Because of their sexual activity, many adolescents need access to prenatal care,

contraception, pregnancy testing, treatment for sexually transmitted diseases and human immunodeficiency virus (HIV), abortion, and sexual and psychological counseling.  When adolescents are not assured of confidentiality in their pursuit of health services, they are less likely to seek and obtain necessary reproductive and mental health care and counseling, including, in particular, treatment of sexually transmitted diseases and HIV, pregnancy testing, contraceptive information and services, pre-natal care, mental health counseling regarding sexual and reproductive matters, and abortion.  If sexually active adolescents are unable to obtain medical and psychological care without their sexual conduct being reported to state officials for investigation, they will be deterred from seeking such care.  Deterring adolescents from obtaining needed health services will cause detriment to their health.  Requiring the automatic reporting of voluntary sexual conduct by adolescents under 16 will likely overburden the Kansas reporting system and divert resources from the investigation of reports of actual abuse.

Upon information and belief, district attorneys and county attorneys in the defendant class have made public statements expressing varying and different enforcement policies regarding whether incidents of consensual sex between adolescents under age 16 and persons of similar age must be reported automatically to SRS.  Plaintiffs do not have fair notice of what the reporting statute requires in cases of consensual sex between adolescents under age 16 and persons of similar age.  Confusion about the scope of the reporting statute in cases of consensual sex between adolescents under age 16 and persons of similar age invites arbitrary and discriminatory enforcement of the reporting statute by the defendant class.  Requiring the automatic reporting of all sexual activity by adolescents under the age of 16, regardless of whether the professional suspects injury, serves no legitimate, important, or compelling state

28

interest.  As a consequence of these conflicting views about the scope of the obligation to report instances of non-injurious sexual activity by adolescents, plaintiffs cannot guarantee their patients and clients under the age of sixteen confidential health and counseling services without risking criminal penalties.

**B.      Standard**

"In deciding the Rule 12(c) motion, the district court employs the same standards governing a Rule 12(b)(6) motion to dismiss."  *Gallardo v. Board of County Com'rs, Kearny County*, 857 F.Supp. 783, 785 (D. Kan. 1994) *overruled on other grounds* (citing *United States v. Wood*, 925 F.2d 1580 (7th Cir. 1991) and *St. Paul Ramsey County Medical Center*, 857 F.2d 1185, 1187 (8th Cir. 1985)).  The court will dismiss a cause of action for failure to state a claim only when 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.' *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "The court must accept all the well-pled allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Boyd v. Runyon*, 1996 WL 294330 at *1 (D.Kan. 1996) (citing *Williams v. Meese*, 926 F.2d 994 (10th Cir. 1991).  "The [c]ourt, however, need not accept as true those allegations that are conclusory in nature, i.e., which state legal conclusions rather than factual assertions."  *Fugate v. Unified Government of Wyandotte*, 161 F.Supp.2d 1261, 1263 (D.Kan. 2001) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

**C.      Analysis**

Defendants argue they are entitled to judgment on the pleadings, because: 1) plaintiffs lack standing; 2) plaintiffs fail to state an informational privacy claim; 3) the Reporting Statute is

neither vague nor overbroad; 4) plaintiffs fail to plead a cause of action concerning the right to contraception or abortion.  The court considers each argument in turn.

### 1.    Status of plaintiffs

Defendants argue plaintiffs lack standing to pursue their claims because no case or controversy exists.  Defendants contend plaintiffs seek to enjoin enforcement of the Reporting Statute merely based on the fear they will be prosecuted.  The court considered this issue in section I concerning plaintiffs' motion for an injunction.  The court found plaintiffs adequately met the threat of prosecution requirement; they clearly show their fear of criminal prosecution is "not imaginary or wholly speculative."  Defendants present no new authority or evidence countering this ruling.  Accordingly, defendants' argument fails.

Secondly, defendants argue plaintiffs lack standing to raise the informational privacy rights of their clients and patients.  Defendants make this argument based on their claim plaintiffs' lack standing on their own to sue.  As the court declined to adopt this premise, defendants' argument fails.  Plaintiffs possess standing to assert both their own constitutional rights and the rights of their patients and clients. *Singleton v. Wulff*, 428 U.S. 106, 118 (1976); *State of N.Y. v. Schweiker*, 557 F.Supp. 354, 358-59 (D.C.N.Y. 1983).

### 2.    Status of informational privacy claim

Defendants argue plaintiffs cannot sustain their informational privacy claim, because minors do not have an informational privacy right precluding mandatory reporting.  In the alternative, defendants contend plaintiffs are unable to establish any set of facts showing mandatory reporting does not serve a significant state interest not present in the case of adults.

The court previously evaluated defendants' first argument at length concluding plaintiffs'

minor patients and clients do possess a right to informational privacy concerning personal sexual matters that might be revealed through mandatory reporting.  This ruling is wholly supported and uncontroverted.  Thus, the court turns to defendants' second argument regarding the Reporting Statute and the state's interest.

Defendants correctly state the test under which the court evaluates the Reporting Statute; it must serve a significant state interest not present in the case of adults.  *Carey v. Population Servs. Int'l*, 431 U.S. 683, 693 (1977); *Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 847 (4th Cir. 1998).

Plaintiffs claim mandatory reporting of sexual activity between adolescents under the age of sixteen and persons of similar age in which injury is not reasonably suspected serves no significant state interest.  Indeed, they argue it only serves to breach the minors' confidentiality; harm the professional relationship between health and counseling professionals and their patients and clients; and hinder minors from obtaining health and counseling services.  Construing these allegations in the light most favorable to plaintiffs, the court concludes they are sufficient to defeat defendants' motion to dismiss.  The plaintiffs support their allegations, in part, with reference to the SRS Manual.  Plaintiffs argue the SRS does not investigate mandatory reports of non-injurious sexual contact between adolescent age-mates, based on portions of the SRS Manual providing reports are screened out for the following reasons:

A. Report does not indicate child has been harmed or is likely to be harmed.

B. Report concerns "lifestyle" issues that do not directly harm a child or place a child in a likelihood of harm.

SRS Children & Family Policy Procedure Manual, §§ 1360, 1361.  A practice note to this section

indicates one reason for screening out is "mutual sexual exploration of age-mates (no force, power differential, or incest issues)."  If plaintiffs can prove their allegations, they may entitled to relief on their informational privacy claim.

### 3.      Status of fair notice claim

Defendants argue plaintiffs are not entitled to relief on their fair notice challenge, because the Reporting Statute does not reach a substantial amount of constitutionally protected conduct. However, as the court noted minors do possess informational privacy rights concerning personal sexual matters.[11]  Plaintiffs allege the Reporting Statute infringes upon such rights, accordingly, defendants' argument fails.

Defendants argue the challenge to the Reporting Statute cannot succeed, because the statute is not vague in all its applications.  The court previously explored this issue concluding plaintiffs are only required to prove the statute impermissibly vague in regards to the challenged application.  Defendants offer no new authority altering this ruling.  Thus, the court considers whether plaintiffs provide sufficient allegations to challenge the Reporting Statute's application to incidents of sexual activity between adolescents under the age of sixteen and persons of similar age in which injury is not reasonably suspected.

Defendants argue the Reporting Statute is not vague merely because plaintiffs are uncertain whether marginal offenses fall within its language.  Upon review, the court finds plaintiffs' allegations are sufficient to defeat this argument.  Plaintiffs allege a great deal of confusion arose from the 2003 advisory opinion and the differing conclusions which appeared in

---

[11]  In Section III, Part C, 4, the court discusses adolescents' right to obtain abortions and contraception without parental involvement.  Plaintiffs allege the Reporting Statute infringes on this right, as well.

32

the 1992 advisory opinion.[12]  Plaintiffs also point to differing opinions by Kansas county and

district attorneys regarding the Reporting Statute.  Plaintiffs allege if they follow the 2003

advisory opinion, their compliance will threaten to violate the informational and decisional

privacy rights of their patients and clients.  In doing so, they may be "'steer[ing] far wider of the

unlawful zone' than if the boundaries of the forbidden areas were clearly marked.'" *Baggett v.*

*Bullitt*, 377 U.S. 360, 372 (1964) (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)).

Accordingly, the court finds plaintiffs' allegations are sufficient to preclude dismissal of their

notice challenge.

###        4.        Status of right to contraception and abortion claim

Defendants argue plaintiffs fail to allege a minor's abortion or use of/request for

contraception is, or ever has been reportable under the Reporting Statute.  Defendants contend

only "sexual abuse" is reportable rather than medical treatment.  Defendants also argue plaintiffs

do not allege any parent has learned of a minor child's abortion or use of contraception as the

result of a SRS report or investigation.  Defendants contend plaintiffs fail to allege any minor has

failed to obtain contraception or an abortion because of the Reporting Statute; they fail to explain

how the Reporting Statute places any procedural hurdles on obtaining contraception and

abortions.

Considering plaintiffs' allegations, the court finds they are sufficient to defeat defendants'

arguments.  Plaintiffs allege the 2003 advisory opinion requires mandatory reporting when

---

[12]  The court notes defendants' argument that the two Attorney Generals' opinions discussed differing subjects.  Namely, the 2003 advisory opinion considered whether the criminal act leading to an adolescent's pregnancy is injurious and its predecessor opinion considered whether pregnancy was itself an injury requiring a report.  However, the court sees no evidence that the 2003 advisory opinion does not also apply to adolescents seeking abortions or any health care related to sexual activity.

adolescents under the age of 16 seek abortions or any health care related to sexual activity.  The

SRS is charged with investigating such reports.  K.S.A. § 38-1523.  Plaintiffs contend an

investigation by the SRS generally gives notice to the minor's parents concerning the type of

health care sought by the minor.  This allegation is supported by the SRS Manual.  SRS Children

& Family Policy Procedure Manual, §§ 2110, 2130.  It is this allegation of parental notice, which

provides support for plaintiffs' claim concerning the right to decisional privacy regarding

contraception and abortion.  Adolescents possess the right to obtain abortions and contraception

without parental involvement.  *Bellotti v. Baird*, 443 U.S. 622, 643-44 (1979) (the right to obtain

an abortion without parental involvement is premised on the adolescent showing she is mature,

well informed, and within her best interests); *Carey v. Population Services, Intern.* 431 U.S. 693,

694 (1977) ("the right to privacy in connection with decisions affecting procreation extends to

minors as well as to adults.").  Plaintiffs allege an SRS investigation could hinder adolescents'

ability to make these decisions without parental involvement.  *See Hodgson v. Minnesota*, 497

U.S. 417, 460 (1990) (O'Connor, J., concurring in part and concurring in the judgment in part)

(Justice O'Connor noted an exception built into the Minnesota parental notice statute which

excepted victims of neglect or abuse was "in reality, a means of notifying the parents."  She

concluded an abuse investigation creates the possibility that parents will obtain knowledge of the

adolescent's abortion).  Plaintiffs also allege mandatory reporting will deter adolescents from

seeking reproductive health care; they argue this imposes substantial obstacles on adolescents

seeking abortions.  *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 874 (1992)

(a state's regulation cannot impose an undue burden on a woman's ability to decide whether to

terminate pregnancy).  If plaintiffs can prove these claims, they may be entitled to relief on their

decisional privacy claim.  Viewing these factual allegations in the light most favorable to plaintiffs, the court finds dismissal is precluded.

IT IS, THEREFORE, BY THE COURT, ORDERED this 26th day of July, 2004 that the court grants plaintiffs' motion for a preliminary injunction (Dkt. No. 4) and denies defendants' motion for judgment on the pleadings (Dkt. No. 45), motion to strike (Dkt. No. 47) and motion to certify a question to the Kansas Supreme Court (Dkt. No. 65).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE