# IN THE UNITED STATED DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AID FOR WOMEN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 03-1353-JTM |
| | ) |
| NOLA FOULSTON, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion for Protective Order (Doc. 222), seeking to prevent Defendants from questioning Plaintiffs during their upcoming depositions about their policies and practices in the two years immediately preceding the deposition regarding their reporting (or lack of reporting) of sexual activity by adolescents under the age of 16. Plaintiffs claim a Fifth Amendment privilege against disclosure of such information. Plaintiffs also request sanctions for the expenses of bringing this motion.

Defendants responded (Doc. 232), arguing that general disclosures of policies and practices are not incriminating and that Plaintiffs placed such information in issue by filing this lawsuit. Defendants claim that sanctions are not appropriate because the information is discoverable and sought in good faith.

Plaintiffs submitted a reply memorandum (Doc. 241.) The Court has

reviewed all the briefs and is prepared to rule.

## BACKGROUND

Plaintiffs include a medical practice specializing in gynecological services, including abortions, three licensed social workers, three registered nurses, five licensed physicians, and a licensed psychologist. (Doc. 135 ¶¶ 20–32.) Plaintiffs purport to be covered by Kansas' reporting statute and claim to treat sexually active adolescents under the age of 16 as part of their professional practices. (Doc. 135 ¶¶ 33–35.)

Plaintiffs Third Amended Complaint (Doc. 135) names as defendants Nola Foulston, Phill Kline, and a class of all county and district attorneys in Kansas, and seeks a preliminary[1] and permanent injunction barring all defendants from enforcing the reporting statute in accordance with an opinion issued by Phill Kline as Kansas Attorney General. Kansas Att'y Gen. Op. No. 2003-17 (June 18, 2003) ("Kline opinion"). The Kline Opinion interprets Kansas' reporting statute, K.S.A. 38-1521 *et seq*. (2000) (requiring healthcare professionals and counselors to report to the State when they have reason to believe that a child has been injured as a result of sexual "abuse" as defined in the statute) to require Plaintiffs and similar

---

[1] The Court entered a preliminary injunction on July 26, 2004 (Doc. 71) and an interlocutory appeal has been taken. (Doc. 74.)

professionals to report their adolescent patients under the age of sixteen to the state whenever Plaintiffs suspect that those patients have engaged in sexual activity, even if such activity is consensual and with a similar age mate. Plaintiffs also seek an order declaring that the reporting statute is unconstitutional as applied by Defendants. (Doc. 135 at 14-15.)

Plaintiffs assert four claims that the reporting statute, as interpreted in the Kline opinion, violates the Fourteenth Amendment, including: (1) that the reporting statute violates the rights of adolescents under the age of sixteen to maintain private information regarding sexual behavior and medical and psychological treatment; (2) that the reporting statute fails to give Plaintiffs fair notice of when the reporting is required and encourages arbitrary and discriminatory enforcement; (3) the reporting statute violates the privacy rights of adolescents under the age of sixteen regarding reproductive decisions; and (4) the reporting statute violates the Equal Protection Clause of the Fourteenth Amendment, creating impermissible classifications. (Doc. 135 at ¶¶ 59–66.)

Defendants have inquired about Plaintiffs' policies and practices regarding the reporting of under age sexual activity on two prior occasions during the pendency of this action. On both occasions Plaintiffs have asserted Fifth Amendment privileges when faced with such questions. On the first occasion, one

Plaintiff asserted her Fifth Amendment privilege in response to a question by defense counsel during the preliminary injunction hearing as to whether the Plaintiff had complied with the Kline opinion. The Court upheld the privilege. (Tr. 11/25/03, Doc. 68 at 30.) Later, in their responses to interrogatories from Defendants, Plaintiffs asserted their Fifth Amendment privileges in response to questions regarding Plaintiffs' reporting policies and practices. *See* Doc. 223 at 5.

Defendants have stated that they intend to inquire about Plaintiffs' reporting policies and practices during Plaintiffs' upcoming depositions. Plaintiffs attempt to preempt any such questioning by filing this motion.[2] Plaintiffs claim information of Plaintiffs' policies and practices is irrelevant and protected by the Fifth Amendment protection against self-incrimination. Plaintiffs further argue that Defendants waived any right to challenge Plaintiffs assertions of their Fifth Amendment privileges by failing to challenge the objections contained in Plaintiffs responses to Defendants interrogatories, and that the Court's ruling at the

---

[2] The parties, in an attempt to resolve this issue without the Court's intervention, agreed that Defendants would not (1) utilize any information about the failure of any Plaintiff to comply with the reporting statute <u>more than two years ago</u> as evidence in any prosecution of that Plaintiff for violation of the reporting statute or (2) question Plaintiffs about any <u>particular instance</u> of reporting or non-reporting under the reporting statute within the last two years. *See* Doc. 232, Ex. A. Thus, the only issue before the Court is whether Defendants can question Plaintiffs about general practices and procedures for complying with the reporting statute within the two-year period preceding the depositions.

preliminary injunction hearing upholding one Plaintiff's assertion of her Fifth Amendment privilege against self-incrimination is the law of the case and binding upon the Court.

The Court GRANTS Plaintiffs' motion for the reasons set out more fully below.

## DISCUSSION

### A.   RELEVANCE

The Court has "broad discretion regarding its control of discovery." **Gaines v. Ski Apache**, 8 F.3d 726, 730 (10th Cir. 1993). Such discretion is only abused when denial of discovery precludes a fair trial. *Id*.

"Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." **Audiotext Comm. Network, Inc., v. US Telecom, Inc.,** No. 94-2395, 1995 WL 625962, at *3 (D. Kan Oct. 5, 1995) (emphasis added) (citing **Smith v. MCI Telecomm. Corp.**, 137 F.R.D. 25, 27 (D. Kan. 1991)). "When the discovery sought appears relevant on its face, the party resisting the discovery bears the burden to establish the lack of relevance.

On the other hand, "When 'relevancy is not apparent, it is the burden of the

party seeking discovery to show the relevancy of the discovery request.'" **Dean**, 2002 WL 1377729, at *2 (citing ***Steil v. Humana Kansas City, Inc.***, 197 F.R.D. 442, 445 (D. Kan. 2000)).

Here, the relevance of Plaintiffs' past compliance with the reporting statute, or lack thereof, is not apparent. The Court cannot fathom how information regarding Plaintiffs actual compliance or failure to comply with the Kline opinion in the past would be relevant to the issues before the Court, *i.e.,* the constitutionality of the reporting statute as interpreted by the Kline opinion.

Furthermore, the information is not apparently relevant to the issue of Plaintiffs' standing to sue because Plaintiffs have based their standing, not on noncompliance with the statute, but upon the claim that (1) they are subject, by virtue of their professions, to the reporting statute, (2) they sometimes become aware that their adolescent patients under the age of sixteen are sexually active, and (3) they would subject themselves to possible prosecution <u>if</u> they do not automatically report all such sexually active adolescents. (Doc. 135 ¶¶ 33–35.) To be sure, Plaintiffs do not base their standing upon the fact that they <u>have</u> violated the reporting statute as interpreted by the Kline opinion, but rather they base standing upon the fact that they <u>may</u> violate their patients' constitutional rights if they complied with reporting statute as interpreted by the Kline opinion.

6

Because the relevance of the requested information sought by Defendants is not apparent, Defendants bear the burden to prove that the information sought is relevant or is calculated to lead to the discovery of relevant evidence. Defendants, however, make only the conclusory statement that "Plaintiffs have placed in controversy the allegations raised in their complaint and the Defendants should be able to inquire as to the substance of those allegations in depositions." (Doc. 232 at 3.) Defendants fail to specify where in the Complaint Plaintiffs place their past compliance with the statute in issue, and the Court's own search revealed nothing that leads it to believe that Plaintiffs did so. The Defendant has wholly failed to meet its burden, and the protective order can be granted on this basis alone.

B.   WAIVER

Plaintiffs also argue that Defendants have waived their right to pursue questions about Plaintiffs' past reporting practices at the upcoming depositions because Defendants failed to file a motion to compel the answers to similar questions that Defendant previously posed by interrogatory. Plaintiffs refused to answer those interrogatories claiming a Fifth Amendment privilege. It is undisputed that Defendants did not file such a motion to compel and that the time

for doing so under D. Kan. Rule 37.1(b) has passed.[3]

Neither side presents any authority which addresses "waiver" under the specific factual situation presented in this case. Defendants cite no cases whatsoever, but merely argue that Plaintiffs' reasoning is "illogical and highly prejudicial to the Defendants." (Doc. 232 at 3.) Plaintiffs cite two cases to support their waiver argument, but neither of those cases is factually identical to the present case.

In *Pitter v. American Express Co.,* 1984 WL 1272 at ** 3-6 (S.D.N.Y. 1984), the judge quashed a trial subpoena *duces tecum* issued during the middle of trial by plaintiff seeking voluminous documents which had been the subject of prior document requests and objections, but where plaintiff had never followed up and filed a motion to compel production of those documents. There, as here, the Court had issued a scheduling order that required timely filing of motions to compel discovery. Here, unlike *Pitter*, the time for discovery has not expired, the requested depositions are not likely to have the potential of delaying trial, and the questions which Defendants seek to ask are not voluminous or burdensome in nature as was the scope of the requested documents in *Pitter.* Therefore, while the

---

[3] The 30 day period for filing motions to compel is also set out in the Scheduling Order in this case. *See* Doc. 87 at ¶ III(d).

principles of waiver announced by the court in *Pitter* are sound, this is not a case where "shotgun" production demands in a trial subpoena are an attempted substitute for failure to do pretrial discovery.

In *English v. Crowell,* 117 F.R.D. 132, 135 (C.D.Ill., 1986), the court struck requests for admission which sought the same financial information that had previously been denied by the magistrate judge in an earlier motion to compel. Here there has been no prior motion to compel the answers to the questions which Defendants intend to ask at the depositions. Obviously, if the court rules on a motion to compel and denies discovery of a particular topic or subject, the requesting party should not be entitled to seek that same information by means of another method of discovery.

The Court is not prepared to find a waiver under D. Kan. Rule 37.1 or the language of the standard scheduling order in all cases where a party attempts discovery by one method, meets objections, fails to file a motion to compel, and then tries to obtain the same or similar information by another authorized means of discovery, <u>where all of this activity occurs prior to the discovery cutoff set by the court.</u>  The federal rules contemplate that the various methods of discovery can be used in any sequence.  Fed. R. Civ. P. 26(d) and 26(a)(5).  Read carefully, the "waiver" language of both the local rule and standard scheduling order only

provides that the specific objection to previous discovery has been waived. This is to prevent a requesting party from waiting until the end of discovery to raise a question about the validity of an objection by the responding party which, if granted, could likely result in additional discovery at or after the discovery cutoff and/or requests to extend the discovery cutoff. However, the "waiver" is a waiver of any contest to the specific objections raised to the specific discovery request; it is not a waiver of any other timely discovery directed at the same general topics.

The court has the authority to control discovery that is directly and obviously intended to circumvent the timetable set in the rule and scheduling order. For example, if a party submits interrogatories which are objected to and then fails to file a motion to compel answers to those interrogatories within the required time limits, there is a strong reason to find that the party cannot avoid the deadlines in the scheduling order by simply submitting the same discovery *i.e.,* another set of interrogatories, with the same questions, thereby "restarting the clock" on the time to file a motion to compel. The failure to file a motion to compel, however, should not automatically bar the attempted use of other proper discovery methods to discover similar information so long as that discovery is timely pursued <u>within</u> the

discovery deadlines set in the scheduling order.[4]

While the court does not find a waiver under the circumstances of this case, it notes that Defendants' recent change of mind in seeking to depose <u>all</u> Plaintiffs, rather than only the ones identified on the preliminary witness list, suggests that this change of heart resulted from Defendants' recognition that they were out of time to seek to compel that same or similar information by a motion to compel answers to the prior interrogatories. The topic of Plaintiffs' reporting procedure and whether each Plaintiff had, or had not, reported cases of sexual abuse was not just a passing issue in the interrogatories since there were several (four) interrogatories on these matters. If answers to these topics were as important to Defendants as they now argue, there is no reason why they could not have filed a motion to compel answers to the interrogatories by December, 2004. This would have allowed an earlier resolution of the issue rather than proceeding with last-minute depositions where a reasonable attorney could clearly anticipate that

---

[4] For example, claims of waiver are clearly justified in connection with requests for production of documents where a requesting party fails to seek the discovery of specific documents within the required discovery time (or fails to file a motion to compel production of those documents if the responding party has lodged an objection), and then attempts to by-pass the <u>discovery deadlines</u> by seeking voluminous documents *via* a trial subpoena <u>after</u> the discovery cutoff has passed. *See e.g.,* ***Pitter v. American Express Co.,*** 1984 WL 1272 at \*\* 3-6 (S.D.N.Y. 1984)

arguments about the Fifth Amendment privilege would inevitably be raised which could possibly delay completion of the depositions on the eve of the discovery cutoff. While it would have been better practice to resolve this issue early by a motion to compel answers to the prior interrogatories, under the circumstances of this case the court will not find that Defendants have waived the right to pursue the same topic by deposition where the depositions are taken within the scheduled discovery deadline.

C.   LAW OF THE CASE

The parties disagree about the scope of the "law of the case" doctrine. Defendants urge that the doctrine "requires every court to follow the decisions of courts that are higher in the judicial hierarchy, citing ***Guidry v. Sheet Metal Workers Int'l Assoc., Local No. 9,*** 10 F.3d 700, 705 (10th Cir. 1993). (Doc. 232 at 4-5.) Plaintiffs counter that the doctrine "generally requires the court to adhere to [its prior legal rulings]" absent new evidence, new authority or clear error, citing ***Major v. Benton,*** 647 F.2d 110, 112 (10th Cir. 1981). The Tenth Circuit recently discussed the law of the case doctrine and its application in ***Prairie Band Potawatomi Nation v. Wagnon,*** 402 F.3d 1015, 1018 (10th Cir. 2005):

> The law of the case doctrine sets forth the fairly straightforward legal and pragmatic principle of certainty throughout the proceedings of a case: "[W]hen a court

> decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). However, courts are quick to recognize the flexibility of the rule and are permitted to overturn erroneous rulings as the underlying policy of the rule is one of efficiency, Major v. Benton, 647 F.2d 110, 112 (10th Cir. 1981) (citations omitted), not restraint of judicial power, Messinger v. Anderson, 225 U.S. 436, 444 (1912). Indeed, the presence of new evidence or subsequent contradictory precedent or a determination that the previous ruling was clearly erroneous are legitimate bases for not applying the law of the case doctrine. Major, 647 F.2d at 112.

Here, Defendants have not convinced the Court that Judge Marten's prior evidentiary ruling during the preliminary injunction hearing can be disregarded for any of the reasons identified in ***Prairie Band Potawatomi Nation***. There is no showing that the prior ruling was erroneous, nor that any new evidence or subsequent contradictory precedent would now make that ruling clearly erroneous.

Furthermore, Judge Marten was quite specific in his Fifth Amendment ruling during the preliminary injunction hearing:

> MR. MAXWELL: Your honor, at this time – she's asking for a declaratory judgment, as I understand it, and she has to come to this Court with clean hands, and if she doesn't have clean hands, then she can't proceed as a plaintiff in this equitable action.
>
> THE COURT:     No, you're wrong about that. She can proceed, and if there is the potential for criminal prosecution, she's entitled to assert the Fifth. Do we

>    need to have a hearing on that issue?
>
>    MR. MAXWELL: Okay.

(Tr. 11/25/03, Doc. 68 at 30.) Where the district judge who will try this case has made a clear and definite ruling on the Fifth Amendment issue, that ruling should continue to govern the same issue during subsequent stages of the same case.[5] If Defendants believe that the trial court's prior ruling on the Fifth Amendment issue is in error, or that new evidence requires relief from the law of the case doctrine, they can seek a review of this protective order by the trial judge.[6]

D.   SANCTIONS

Plaintiffs seek reasonable expenses incurred in bringing this motion pursuant to Fed. R. Civ. P. 26(c), which incorporates Fed. R. Civ. P. 37(a)(4). Rule 37(a)(4)

---

[5] The Court has considered Kline's argument that he should not be bound by the evidentiary ruling made during the preliminary injunction hearing since he was not a party to the case at that time. Kline cites no authority to support his argument. (Doc. 232 at 5.) The Court has considered the cases cited by Plaintiffs for the proposition that the law of the case doctrine governs newly joined parties, *see* Doc. 241 at 3, and finds them persuasive.

[6] The court recognizes that the trial judge made his ruling on the Fifth Amendment issue during trial and without the benefit of briefing by the parties. However, nothing in the parties' briefs suggests that the ruling was erroneous. In addition, because of the Court's conclusion that the intended questions on Plaintiffs' past reporting practices are not relevant, not calculated to lead to the discovery of relevant evidence, and precluded by the law of the case doctrine, there is no need for the Court to address all of the remaining Fifth Amendment issues discussed by the parties in their briefs.

provides:

> If the motion is granted . . . the court shall . . . require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds . . . that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

"Whether or not to impose sanctions addresses the discretion of the court." ***Nat'l Hockey League v. Metropolitan Hockey Club, Inc.***, 427 U.S. 639, 642, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976). The Court must consider on a case-by-case basis whether the party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate. ***Starlight Int'l, Inc. v. Herlihy***, 186 F.R.D. 626, 646 (D. Kan. 1999).

The Court declines to award sanctions in this case because it finds that the circumstances of this case make the imposition of sanctions inappropriate. Although the Court granted Plaintiffs' motion, the legal issues presented were not so clear from the available legal authority that the Court could find that Defendants did not act in good faith. Relevance is construed very broadly at the discovery stage, and Defendants appear to have held a good faith belief that the information they sought was relevant and discoverable.

## CONCLUSION

For the reasons set out above, and pursuant to Fed. R. Civ. P. 26(c)(4), the Court GRANTS Plaintiffs' motion for a protective order, precluding Defendants from asking Plaintiffs any questions about their policies and practices for reporting (or failing to report) consensual sexual activity by their adolescent patients under the age of sixteen during the two years preceding the depositions.

The Court DENIES Plaintiffs' request for sanctions, finding that the circumstances of this case make the imposition of sanctions inappropriate.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Protective Order (Doc. 222) is GRANTED IN PART and DENIED IN PART, consistent with this Order.

Dated at Wichita, Kansas, this 6th day of May, 2005.

                                        s/ Donald W. Bostwick
                                        DONALD W. BOSTWICK
                                        United States Magistrate Judge