# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

AID FOR WOMEN, on its own behalf;
TERI AUGUSTUS, L.M.S.W.;
MARGOT BRECKBILL, R.N.; TRACY
COWLES, M.D.; WILLOW EBY, R.N.;
VICKI EPP, L.B.S.W.; MARGARET
ESTRIN, M.D.; HERBERT HODES,
M.D.; TRACI NAUSER, M.D.;
COLLEEN O'DONNEL, R.N.C.;
STACI MORGAN, D.O.; BETH
MCGILLEY, Ph.D.; TRINA WHEELER,
L.M.S.W.; SHERMAN ZAREMSKI,
M.D., on behalf of themselves and their
adolescent patients and clients under the
age of sixteen and as representatives of a
class of similarly situated individuals,

      Plaintiffs - Appellees,

  v.

NOLA FOULSTON, in her official
capacity as District Attorney, 18th Judicial
District of Kansas, and as representative
of a class of all county and district
attorneys in the state of Kansas; PHILL
KLINE, acting in his official capacity as
Attorney General of the State of Kansas,

      Defendants - Appellants.

--------------------------

AMERICAN ACADEMY OF FAMILY
PHYSICIANS, AMERICAN MEDICAL
ASSOCIATION, AMERICAN
MEDICAL WOMEN'S ASSOCIATION,
AMERICAN NURSES ASSOCIATION,
AMERICAN PSYCHIATRIC
ASSOCIATION, AMERICAN SOCIETY

**FILED**

MAR 2 7 2006

RALPH L. DeLOACH, CLERK
By _____ Deputy

No. 04-3310
(D.C. No. 03-CV-1353-JTM)

A true copy

Teste

Elisabeth A. Shumaker
Clerk, U.S. Court of
Appeals, Tenth Circuit

By _____ Fabrizio
Deputy Clerk

FOR ADOLESCENT PSYCHIATRY,
KANSAS CHAPTER OF THE
AMERICAN ACADEMY OF
PEDIATRICS, KANSAS MEDICAL
SOCIETY, KANSAS PSYCHIATRIC
SOCIETY, KANSAS PUBLIC HEALTH
ASSOCIATION, KANSAS SECTION
OF DISTRICT VII OF THE AMERICAN
COLLEGE OF OBSTETRICIANS AND
GYNECOLOGISTS, KANSAS STATE
NURSES ASSOCIATION, NATIONAL
ASSOCIATION OF SOCIAL
WORKERS AND ITS KANSAS
CHAPTER, SOCIETY FOR
ADOLESCENT MEDICINE,

  Amici Curiae.

---

## JUDGMENT

Filed March 20, 2006

---

Before **EBEl** and **PORFILIO**, Circuit Judges, and **HERRERA***, District Judge.

---

This case originated in the District of Kansas and was argued by counsel.

The judgment of that court is vacated.  The case is remanded to the United States District Court for the District of Kansas for further proceedings in accordance with the opinion of this court.

       Entered for the Court
       ELISABETH A. SHUMAKER, Clerk

       by:
       Deputy Clerk

---

* The Honorable Judith C. Herrera, District Court Judge, District of New Mexico, sitting by designation.

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

AID FOR WOMEN, on its own behalf,
TERI AUGUSTUS, L.M.S.W.,
MARGOT BRECKBILL, R.N.,
TRACY COWLES, M.D., WILLOW
EBY, R.N., VICKI EPP, L.B.S.W.,
MARGARET ESTRIN, M.D.,
HERBERT HODES, M.D., TRACI
NAUSER, M.D., COLLEEN
O'DONNEL, R.N-C., STACI
MORGAN, D.O., BETH MCGILLEY,
Ph.D., TRINA WHEELER, L.M.S.W.,
and SHERMAN ZAREMSKI, M.D.,
on behalf of themselves and their
adolescent patients and clients under
the age of sixteen, and as
representatives of a class of similarly
situated individuals,

      Plaintiffs-Appellees,

v.

NOLA FOULSTON, in her official
capacity as District Attorney, 18th
Judicial District of Kansas, and as
representative of a class of all county
and district attorneys in the state of
Kansas, and PHILL KLINE, acting in
his official capacity as Attorney
General of the State of Kansas,

      Defendants-Appellants.

-------------------------

AMERICAN ACADEMY OF

No. 04-3310

FAMILY PHYSICIANS, AMERICAN
MEDICAL ASSOCIATION,
AMERICAN MEDICAL WOMEN'S
ASSOCIATION, AMERICAN
NURSES ASSOCIATION,
AMERICAN PSYCHIATRIC
ASSOCIATION, AMERICAN
SOCIETY FOR ADOLESCENT
PSYCHIATRY, KANSAS CHAPTER
OF THE AMERICAN ACADEMY OF
PEDIATRICS, KANSAS MEDICAL
SOCIETY, KANSAS PSYCHIATRIC
SOCIETY, KANSAS PUBLIC
HEALTH ASSOCIATION, KANSAS
SECTION OF DISTRICT VII OF THE
AMERICAN COLLEGE OF
OBSTETRICIANS AND
GYNECOLOGISTS, KANSAS
STATE NURSES ASSOCIATION,
NATIONAL ASSOCIATION OF
SOCIAL WORKERS AND ITS
KANSAS CHAPTER, SOCIETY FOR
ADOLESCENT MEDICINE,

　　　　Amici Curiae.

---

**ORDER**
Filed March 16, 2006

---

Before **EBEL** and **PORIFLIO**, Circuit Judges, and **HERRERA**,* District Judge.

---

The Court, on its own motion, has amended the Order and Judgment filed

January 27, 2006, nunc pro tunc to that date. In addition, we direct publication.

---

* The Honorable Judith C. Herrera, District Court Judge, District of New
Mexico, sitting by designation.

The amended opinion is attached to this order.

The petition for rehearing is denied.

The petition for rehearing en banc was transmitted to all of the judges of the court who are in regular active service. As no judge in regular active service on the court requested that the court be polled on the en banc request, that petition is also denied.

Entered for the Court
Elisabeth A. Shumaker, Clerk

By: *Amy Frazier*
Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

**PUBLISH**

**January 27, 2006**

**UNITED STATES COURT OF APPEALS**

Elisabeth A. Shumaker
**Clerk of Court**

**TENTH CIRCUIT**

---

AID FOR WOMEN, on its own behalf,
TERI AUGUSTUS, L.M.S.W.,
MARGOT BRECKBILL, R.N.,
TRACY COWLES, M.D., WILLOW
EBY, R.N., VICKI EPP, L.B.S.W.,
MARGARET ESTRIN, M.D.,
HERBERT HODES, M.D., TRACI
NAUSER, M.D., COLLEEN
O'DONNEL, R.N-C., STACI
MORGAN, D.O., BETH MCGILLEY,
Ph.D., TRINA WHEELER, L.M.S.W.,
and SHERMAN ZAREMSKI, M.D.,
on behalf of themselves and their
adolescent patients and clients under
the age of sixteen, and as
representatives of a class of similarly
situated individuals,

Plaintiffs-Appellees,

v.

NOLA FOULSTON, in her official
capacity as District Attorney, 18th
Judicial District of Kansas, and as
representative of a class of all county
and district attorneys in the state of
Kansas, and PHILL KLINE, acting in
his official capacity as Attorney
General of the State of Kansas,

Defendants-Appellants.

------------------------

No. 04-3310

AMERICAN ACADEMY OF
FAMILY PHYSICIANS, AMERICAN
MEDICAL ASSOCIATION,
AMERICAN MEDICAL WOMEN'S
ASSOCIATION, AMERICAN
NURSES ASSOCIATION,
AMERICAN PSYCHIATRIC
ASSOCIATION, AMERICAN
SOCIETY FOR ADOLESCENT
PSYCHIATRY, KANSAS CHAPTER
OF THE AMERICAN ACADEMY OF
PEDIATRICS, KANSAS MEDICAL
SOCIETY, KANSAS PSYCHIATRIC
SOCIETY, KANSAS PUBLIC
HEALTH ASSOCIATION, KANSAS
SECTION OF DISTRICT VII OF THE
AMERICAN COLLEGE OF
OBSTETRICIANS AND
GYNECOLOGISTS, KANSAS
STATE NURSES ASSOCIATION,
NATIONAL ASSOCIATION OF
SOCIAL WORKERS AND ITS
KANSAS CHAPTER, SOCIETY FOR
ADOLESCENT MEDICINE,

     Amici Curiae.

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 03-01353-JTM)**

---

Stephen O. Phillips, Assistant Attorney General, (Phill Kline, Attorney General, with him on the briefs), Topeka, Kansas, for Defendants-Appellants.

Laura B. Shaneyfelt, Hulnick Law Offices, Wichita, Kansas, and Bonnie Scott Jones and Simon Heller, Center for Reproductive Rights, New York, New York, for Plaintiffs-Appellees.

Margaret A. Dale, Proskauer Rose LLP, New York, New York, filed an amicus brief on behalf of the American Academy of Family Physicians, et al., in support of Plaintiffs-Appellees.

_____

Before **EBEL** and **PORFILIO**, Circuit Judges, and **HERRERA**, District Judge.*

_____

**EBEL**, Circuit Judge.

_____

A Kansas statute requires doctors, teachers, and other individuals to notify the state government whenever they have "reason to suspect" injury to a minor resulting from, *inter alia*, sexual abuse. Failure to report is a misdemeanor. In 2003, the Kansas Attorney General issued an opinion stating that any sexual activity by a minor younger than sixteen is inherently injurious and that the reporting statute therefore requires the persons listed in the statute to file a report whenever they have reason to suspect that a minor has been involved in sexual activity. Various professionals subject to the statute thereafter brought this suit, claiming that mandatory reporting of minors' voluntary sexual activity with persons of similar ages violates the minors' constitutional privacy rights. The district court below issued a preliminary injunction against enforcement of the reporting statute in the context of voluntary sexual activity between adolescents

_____

*The Honorable Judith C. Herrera, District Court Judge, District of New Mexico, sitting by designation.

- 3 -

:

•
:

of similar age. Defendants-Appellants appeal that decision, and we vacate the

preliminary injunction and remand.[1]

# I. BACKGROUND

## A. The Reporting Statute

Kansas law declares that

[i]t is the policy of this state to provide for the protection of children who have been subject to physical, mental or emotional abuse or neglect or sexual abuse by encouraging the reporting of suspected child abuse and neglect [and by] insuring the thorough and prompt investigation of these reports.

Kan. Stat. Ann. § 38-1521. Kansas therefore requires that whenever certain

specified professionals have "reason to suspect that a child has been injured as a

result of physical, mental or emotional abuse or neglect or sexual abuse," they

shall "report the matter promptly" to the state government. Id. § 38-1522 (the

"reporting statute"). Those who are required to make such reports include

[p]ersons licensed to practice the healing arts or dentistry; . . . licensed psychologists; . . . licensed clinical psychotherapists; licensed professional or practical nurses examining, attending or treating a child under the age of 18; teachers, school administrators or other employees of a school which the child is attending; . . . licensed professional counselors; licensed clinical professional counselors; . . . licensed social workers; . . . juvenile intake and assessment workers; and law enforcement officers.

---

[1]Due to the impending trial in the district court on the merits, our decision in this appeal was originally issued as an unpublished Order and Judgment on January 27, 2006. On the court's own motion, the Order and Judgment is amended *nunc pro tunc* and is being re-issued as this published opinion.

-4-

Id. § 38-1522(a). "Willful and knowing failure to make a report required by this section" is a misdemeanor. Id. § 38-1522(f).

"Sexual abuse," as used in the reporting statute, is defined in relevant part as "any act committed with a child which is described in article 35, chapter 21 of the Kansas Statutes Annotated." Id. § 38-1502(c). The referenced article 35 criminalizes a wide range of sexual activity, including voluntary sexual activity.[2] Thus, all sexual activity described in article 35—whether voluntary or involuntary—that involves participants younger than 16 years old constitutes "sexual abuse" under Kansas law.

---

[2]For example, article 35 criminalizes, *inter alia*, "sexual intercourse with a child who is under 14 years of age," Kan. Stat. Ann. § 21-3502(a)(2);

engaging in any of the following acts with a child who is 14 or more years of age but less than 16 years of age: (1) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both; or (2) soliciting the child to engage in any lewd fondling or touching of the person of another with the intent to arouse or satisfy the sexual desires of the child, the offender or another,

id. § 21-3503(a); "[s]exual intercourse with a child who is 14 or more years of age but less than 16 years of age," id. § 21-3504(a)(1); and

engaging in voluntary: (1) Sexual intercourse; (2) sodomy; or (3) lewd fondling or touching with a child who is 14 years of age but less than 16 years of age and the offender is less than 19 years of age and less than four years of age older than the child and the child and the offender are the only parties involved,

id. § 21-3522.

## B.  Reporting Policies

The reports required by the reporting statute usually must be made to the Kansas Department of Social and Rehabilitation Services ("SRS").  Id. § 38-1522(c).[3]  The SRS's Policy and Procedure Manual states that it is the SRS's policy to "screen out," or not accept for investigation and assessment, those reports that do not require further investigation.  Specifically, section 1361 of the Manual states that a report of abuse or neglect should be screened out where the "[r]eport concerns 'lifestyle' issues that do not directly harm a child or place a child in likelihood of harm."  In a "Practice Note" to section 1361, the Manual lists several situations where the "[i]nformation indicates . . . lifestyle issues which do not directly harm children or place them in imminent danger of harm," and which therefore should be screened out.  One of the listed situations is "[m]utual sexual exploration of age-mates (no force, power differential, or incest issues)."[4]  Thus, when a report of suspected sexual abuse required by the reporting statute provides evidence only of "mutual sexual exploration by age-mates"—and where there is no evidence of force, a power differential, or

_____

[3]There are several exceptions, such as when the SRS is not open for business or when the alleged abuse was perpetrated by an employee of the SRS. See Kan. Stat. Ann. § 38-1522(c), (e).

[4]At oral argument, Plaintiffs advanced the definition of "age-mates" as persons separated by three years of age or less.

incest—as a matter of internal SRS policy the report "will not be accepted for investigation and assessment."[5]

## C. Attorney General Opinions

Two relevant Kansas Attorney General opinions have analyzed the reporting statute.[6]  In 1992, Attorney General Stephan issued an opinion noting that "when an unmarried child under 16 years of age is pregnant, sexual abuse (as statutorily defined) has occurred, absent artificial insemination." Kan. Att'y Gen. Op. 92-48.  However, he noted that the reporting statute "does not require reporting of all suspected child abuse; it requires reporting in situations where there is 'reason to suspect the child has been injured' as a result of abuse." Id. Attorney General Stephan then opined that although a "pregnant, unmarried minor may very likely display signs of emotional, physical or mental injuries which should be reported[,] . . . we do not believe that pregnancy of an unmarried minor

---

[5]It is clear from the district court's findings, however, that SRS may use this reported information for investigation or follow-up if it reveals patterns of abuse. Aid For Women v. Foulston, 327 F. Supp. 2d 1273, 1287 (D. Kan. 2004) ("[T]he 'screening out' decision involves some preliminary investigation and the use of the SRS database[,] . . . allow[ing] the SRS to check for any prior abuse reports made about a minor and look for patterns necessitating more investigation and additional follow-up."). So, the dissent is incorrect in assuming that the SRS has no governmental use for screened-out information.

[6]"[I]t is the well-settled position of this court that attorney general opinions are not binding law in Kansas, but are merely persuasive authority." Willis v. Kan. Highway Patrol, 41 P.3d 824, 829 (Kan. 2002).  Thus, county and district attorneys are not bound by opinions of the Attorney General.

necessarily constitutes injury." Id. Thus, Attorney General Stephan concluded

that

> [w]hether a particular minor in a particular case has been injured as a
> result of sexual intercourse and a resulting pregnancy must be
> determined on a case-by-case basis. The fact of pregnancy certainly
> puts one on notice that sexual abuse (as statutorily defined) has
> probably occurred, and requires persons listed in [the reporting statute]
> to investigate further whether the child has suffered injury, physical or
> emotional, as a result of such activity. If there is reason to suspect that
> the child has been injured, that person is then required to report such
> suspicions and the reasons therefore.

Id.

In 2003, Attorney General Kline issued a conflicting opinion. Although he

acknowledged the 1992 opinion, he concluded that it was in error: "by focusing

on the pregnancy of an unmarried girl under 16 years of age, the office [in 1992]

failed to look at the State's clearly articulated position that the act of rape,

whether forcible or 'statutory,' is an act that is inherently injurious and harmful."

Kan. Att'y Gen. Op. 03–17. Thus, after reaffirming that any sexual intercourse

with a minor is sexual abuse as a matter of law, Attorney General Kline opined

that "*injury* as a result of sexual abuse should be inferred as a matter of law

whenever sexual intercourse, whether voluntary or involuntary, has occurred with

a child under the age of 16." Id. (emphasis added). Attorney General Kline

recognized the broad reach of his opinion:

> [In addition to where] a doctor [is] called upon to perform an abortion
> for a girl under the age of 16 years[,] . . . [o]ther situations that might
> trigger a mandated reporter's obligation, because sexual activity of a

- 8 -

> minor becomes known, include a teenage girl or boy who seeks medical attention for a sexually transmitted disease, a teenage girl who seeks medical attention for a pregnancy, or a teenage girl seeking birth control who discloses she has already been sexually active.

Id.

## D. Procedural Background

Less than four months after Attorney General Kline issued his opinion, Plaintiffs, a group of "licensed professionals, including physicians, nurses, social workers, a psychologist, and a sexuality educator," brought a class action lawsuit under 42 U.S.C. § 1983 against a defendant class composed of "all county and district attorneys in Kansas"[7] and against the Attorney General of Kansas. The complaint sought "declaratory and injunctive relief . . . against application of the reporting statute to incidents of consensual sexual activity between . . . a minor under 16 and a person of similar age [where Plaintiffs] conclude in their professional judgment that the sexual activity has not caused the minor injury." Plaintiffs asserted several grounds why the reporting statute is unconstitutional as applied in that context. First, Plaintiffs alleged that such application "violates the rights of adolescents under 16 to maintain the confidentiality of private information about their sexual behavior and medical and psychological health care, including the fact that they have sought reproductive or mental health care or counseling, without serving any legitimate, important or compelling state

---

[7]The district court granted the motion for class certification on January 7, 2004.

interest." Second, "it fails to give the plaintiffs fair notice of when reporting is required and encourages arbitrary and discriminatory enforcement." Finally,

> it violates the rights of adolescents under 16 to privacy in their reproductive decisions by: (1) inhibiting their ability to obtain contraception and other reproductive health services without serving any significant state interest; [and] (2) preventing them from being able to confidentially obtain an abortion even if they are mature and even if an abortion without parental notice is in their best interests.

Plaintiffs also sought a preliminary injunction against enforcement of the statute in the challenged context. On July 26, 2004, the district court issued an order granting the preliminary injunction based solely on the first of Plaintiffs' claims. Aid For Women, 327 F. Supp. 2d at 1288. The district court held at the outset that Plaintiffs had standing to assert both their own constitutional rights and the rights of their patients and clients, and that those patients and clients "possess a right to informational privacy concerning personal sexual matters that might be revealed through mandatory reporting." Id. at 1280–86. The court then concluded that mandatory reporting as required by the reporting statute violates the minor patients' and clients' privacy rights without serving a significant state interest. Id. at 1285–88. Defendants timely filed a notice of interlocutory appeal. See 28 U.S.C. § 1292(a)(1); Fed. R. App. P. 4(a)(1)(A).

## II. DISCUSSION

This case presents two main issues: whether Plaintiffs have standing to challenge the reporting statute and whether the district court abused its discretion

in entering the preliminary injunction against enforcement of the statute in the context of minors' voluntary sexual activity with age-mates. Although we conclude that Plaintiffs do have standing, we also conclude that the district court abused its discretion in granting the preliminary injunction.

## A. Standing

Defendants first appeal the district court's conclusion that Plaintiffs have standing to challenge the reporting statute. See Aid for Women, 327 F. Supp. 2d at 1281. Although Defendants mainly contest Plaintiffs' ability to raise their patients' and clients' constitutional rights ("third-party standing"), we must also examine whether the district court properly concluded that Plaintiffs have satisfied constitutional standing requirements. See Rector v. City & County of Denver, 348 F.3d 935, 942 (10th Cir. 2003) ("Standing . . . raises jurisdictional questions and we are required to consider the issue *sua sponte* to ensure that there is an Article III case or controversy before us.") (quotations omitted). We review the district court's standing decision *de novo*, Utah v. Babbitt, 137 F.3d 1193, 1203 (10th Cir. 1998), and conclude both that Plaintiffs have standing to challenge the reporting statute and that they can assert their minor patients' and clients' constitutional rights.

### 1. Constitutional Requirements

The constitutional requirements for standing to challenge a state statute in federal court are threefold: "(1) an injury in fact, (2) a causal connection between

the injury and the challenged act, and (3) a likelihood that the injury will be redressed by a favorable decision." Roe No. 2 v. Ogden, 253 F.3d 1225, 1228–29 (10th Cir. 2001). Plaintiffs, as the parties asserting jurisdiction, bear the burden of establishing that they have satisfied these three elements. Babbitt, 137 F.3d at 1202. "Standing is determined as of the time the action is brought." Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005).

### a. Injury in fact

We conclude that Plaintiffs have met the injury prong. The amended complaint asserts that the reporting statute violates Plaintiffs' due process rights because it "fails to give the plaintiffs fair notice of when reporting is required." As support for this claim, Plaintiffs point to the two conflicting Attorney General opinions and allege that "some Kansas county and district attorneys . . . have endorsed and adopted Kline's interpretation" such that each plaintiff "will subject himself or herself to possible prosecution if he or she does not automatically report all sexually active adolescents under the age of 16 to SRS." Plaintiffs also cite to newspaper quotes by other district attorneys expressing confusion about the scope of the reporting statute.

"To comply with the Due Process Clause of the Fourteenth Amendment, it is requisite that a penal statute give fair notice to ordinary people of what conduct is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement." United States v. Agnew, 931 F.2d 1397, 1403 (10th Cir. 1991).

We conclude that the conflicting interpretations of the reporting statute and the

uncertainty as to what conduct will lead to prosecution did potentially deprive

Plaintiffs of this "fair notice."[8] However, lack of fair notice is not itself a

sufficient injury-in-fact for standing purposes. One who does not engage or

intend to engage in any of the activity potentially covered by a statute does not

suffer a "concrete and particularized" injury from an unclear statute. Nova Health

Sys., 416 F.3d at 1154. Here, however, Plaintiffs have alleged that they are

among those covered by the reporting statute and that "[e]ach of the individual

Plaintiffs has patients or clients under the age of sixteen who are sexually active."

In light of the risk that Plaintiffs will be prosecuted under the reporting statute

should they fail to report that sexual activity, they have sufficiently alleged a

concrete injury-in-fact. Although Defendants point out that none of the Plaintiffs

"have been prosecuted or even threatened with prosecution" for failing to report

sexual activity by minors with age-mates, Defendants concede that some Kansas

prosecutors have endorsed Attorney General Kline's interpretation of the

reporting statute. And, as the district court correctly pointed out, "defendants

offer no assurances plaintiffs will not be prosecuted, if they continue not

---

[8]The district court determined that Plaintiffs are not likely to succeed on the merits of their due process claim. Aid for Women, 327 F. Supp. 2d at 1283. Plaintiffs do not appeal that decision here. However, we conclude that because the district court's decision was preliminary and because Plaintiffs could still potentially prevail on their lack-of-fair-notice claim at trial, the district court's decision is insufficient to moot Plaintiffs' claim of a case or controversy.

- 13 -

automatically reporting all sexually active patients or clients." <u>Aid for Women</u>,

327 F. Supp. 2d at 1281.[9]  Therefore, because failing to follow Attorney General

Kline's interpretation could realistically lead to prosecution, Plaintiffs' due

process rights are implicated and they have satisfied the injury prong of

standing.[10]

### b. Causation and redressibility

Plaintiffs have also satisfied the causation and redressibility prongs of

standing.  The causation prong asks whether the alleged injury is "fairly traceable

---

[9]<u>See also</u> <u>Doe v. Bolton</u>, 410 U.S. 179, 188 (1973) ("Georgia-licensed
doctors consulted by pregnant women . . . have standing [to challenge Georgia's
criminal abortion statutes] despite the fact that the record does not disclose that
any one of them has been prosecuted, or threatened with prosecution, for violation
of the State's abortion statutes.  The physician is the one against whom these
criminal statutes directly operate . . . . The physician-appellants, therefore, assert
a sufficiently direct threat of personal detriment. They should not be required to
await and undergo a criminal prosecution as the sole means of seeking relief.").

[10]Additionally, Plaintiffs allege several other forms of injury that could
satisfy the injury prong of the constitutional standing test.  They assert an "if . . .
then" approach to injury (*i.e.*, if we don't follow the Kline interpretation, then we
face prosecution, but if we do follow it, then we will harm our patients' and
clients' constitutional rights).  It seems that the "if . . . then" approach would be
sufficient for standing if Plaintiffs would be injured whether they follow the Kline
interpretation or not.  Plaintiffs allege that if they do not follow the Kline
interpretation, they face prosecution under the reporting statute.  Plaintiffs also
allege that following the Kline interpretation will harm Plaintiffs' "professional
relationships with [their] adolescent patients."  Additionally, standing injury
might be found for the physician Plaintiffs because "physicians face real and
immediate injury by complying with the notification regulation since they may
thereby violate an ethical and legal duty to maintain confidentiality."  <u>New York
v. Heckler</u>, 719 F.2d 1191, 1195 (1st Cir. 1983).  Thus, at least at this stage of the
proceedings, Plaintiffs have alleged injury whether they follow the Kline
interpretation or not.

to the challenged action of the defendant." Nova Health Sys., 416 F.3d at 1156
(quotation omitted). Here, Plaintiffs' due process injury is a result of both the
Attorney General's interpretation of the reporting statute and the prosecutors'
potential enforcement of the statute against Plaintiffs. See also Wilson v.
Stocker, 819 F.2d 943, 947 (10th Cir. 1987) ("[A] plaintiff challenging the
constitutionality of a state statute has a sufficiently adverse legal interest to a
state enforcement officer sued in his representative capacity to create a substantial
controversy when, as here, the plaintiff shows an appreciable threat of injury
flowing directly from the statute."). As for redressibility, an injunction against
enforcing the reporting statute in the challenged context would redress Plaintiffs'
injury because it would no longer be uncertain whether Plaintiffs could be
prosecuted for failing to report sexual activity by minor age-mates where, in their
opinion, there is no harm to the minors. They would thus no longer lack "fair
notice" as to the scope of the reporting statute. Therefore, Plaintiffs have
satisfactorily demonstrated standing to challenge the reporting statute.

## 2. Third-party or "Jus Tertii" Standing

Even though they can satisfy the constitutional requirements for standing,
Plaintiffs face a potential prudential restriction on their ability to assert the
constitutional rights of their minor patients and clients. The Supreme Court has
held that "even when the plaintiff has alleged injury sufficient to meet the 'case
or controversy' requirement, . . . the plaintiff generally must assert his own legal

- 15 -

rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975); see also Flast v. Cohen, 392 U.S. 83, 99 n.20 (1968) ("[A] general standing limitation imposed by federal courts is that a litigant will ordinarily not be permitted to assert the rights of absent third parties.").

This rule, however, is not absolute. Under the doctrine of "third-party" or "*jus tertii*" standing, Plaintiffs may assert the rights of others not before the court if they can "make two additional showings." Kowalski v. Tesmer, 543 U.S. 125, 130 (2004). First, Plaintiffs must show that "the party asserting the right has a 'close' relationship with the person who possesses the right." Id. Second, Plaintiffs must show that "there is a 'hindrance' to the possessor's ability to protect his own interests." Id.; see also Terrell v. INS, 157 F.3d 806, 809 (10th Cir. 1998) ("Third-party standing requires not only an injury in fact and a close relation to the third party, but also a hindrance or inability of the third party to pursue his or her own claims.").

The Supreme Court has also recently noted that "[w]e have been quite forgiving with these criteria in certain circumstances. . . . [For example,] '[i]n several cases, this Court has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights.'" Kowalski, 543 U.S. at 130

- 16 -

(quoting Warth, 422 U.S. at 510 (emphasis added)).[11] That is the case here, since

enforcement of the reporting statute against Plaintiffs (in the context of voluntary

minor age-mate sex) would allegedly violate the minor patients' and clients'

rights. We therefore apply the third-party standing test in a deferential manner

and conclude that the physician Plaintiffs may assert the rights of their minor

patients.[12]

### a. Close relationship

The physician Plaintiffs satisfy the first requirement of third-party

standing, a close relationship.[13] Many courts have found the physician-patient

---

[11]See also Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1287
(10th Cir. 2002) ("A well-established exception to the bar against third-party
standing is when the exercise of rights by the third party is intertwined with the
litigant's activities.").

[12]Because we conclude that the physician Plaintiffs qualify for third-party
standing, we need not evaluate whether the non-physician Plaintiffs qualify. See
Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 299 n.11 (1979).

[13]Plaintiffs mistakenly assert that this case is controlled by Singleton v.
Wulff, 428 U.S. 106 (1976), which they contend "held that a physician could
'assert the rights of women patients as against governmental interference with the
abortion decision.'" (quoting Singleton, 428 U.S. at 118). However, Singleton's
discussion of third-party standing was joined only by a four-member plurality.
See id. at 108; see also Am. Immigration Lawyers Ass'n v. Reno, 199 F.3d 1352,
1360 & n.10 (D.C. Cir. 2000). A fifth Justice voted for standing solely on the
grounds that "(1) the plaintiff-physicians have a financial stake in the outcome of
the litigation, and (2) they claim that the statute impairs their own constitutional
rights." 428 U.S. at 121 (Stevens, J., concurring). Many cases nonetheless speak
of the court in Singleton as having "held" that the physician had third-party
standing. E.g., Volunteer Med. Clinic, Inc. v. Operation Rescue, 948 F.2d 218,
223 (6th Cir. 1991).

- 17 -

relationship to be sufficiently close for third-party standing. For example, the

Second Circuit has concluded that physicians may "assert the interests of the[ir]

unemancipated minor [patients]" in having access to confidential contraception.

Heckler, 719 F.2d at 1195. Physicians have also been allowed to assert their

patients' constitutional right to an abortion. See Planned Parenthood Of N. New

Eng. v. Heed, 390 F.3d 53, 56 n.2 (1st Cir. 2004) ("Because of their close

relationship to the abortion decision, and the rights involved, [abortion] providers

routinely have *jus tertii* standing to assert the rights of women whose access to

abortion is restricted."), vacated on other grounds, Ayotte v. Planned Parenthood

of N. New Eng., 126 S. Ct. 961 (2006); Planned Parenthood of Idaho, Inc. v.

Wasden, 376 F.3d 908, 916–18 (9th Cir. 2004) ("[P]hysicians and clinics

performing abortions are routinely recognized as having standing to bring broad

facial challenges to abortion statutes."), cert. denied, 125 S. Ct. 1694 (2005).

Finally, courts and commentators have recognized more generally that the

physician-patient relationship typically meets the "close relationship"

requirement. See Nasir v. Morgan, 350 F.3d 366, 376 (3d Cir. 2003) (noting that

"courts have recognized a reasonable number of relationships that give rise to

third-party standing," including "doctor/patient"); Penn. Psychiatric Soc. v. Green

Spring Health Servs., Inc., 280 F.3d 278, 289 n.12 (3d Cir. 2002) ("Courts have

generally recognized physicians' authority to pursue the claims of their

patients."); id. at 289–90 (finding, based on the "inherent closeness of the

- 18 -

doctor-patient relationship," that the psychiatrist-patient relationship suffices for third-party standing); see also 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.9 & n.64 (2d ed. 1984 & Supp. 2003) (listing the physician-patient relationship as a constitutionally adequate close relationship).

In addition to the weight of these authorities, we conclude that the policy behind third-party standing is served by finding that the physician Plaintiffs in this case have a sufficiently close relationship to assert their patients' rights. The concern behind the "close relationship" element is whether "the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." Sec'y of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 956 (1984); see also Nasir, 350 F.3d at 376 ("A 'close' relationship for third-party standing must allow the third-party plaintiff to operate 'fully, or very nearly, as effective a proponent,' of the potential plaintiff's rights as would the plaintiff himself.  Such a situation arises, as described above, in professional contexts, where the rights of the potential plaintiff and third-party plaintiff neatly align.") (citation omitted).  Here, we conclude that the physician Plaintiffs' interests align with those of their minor patients, such that they can provide proper representation of those rights.  They therefore satisfy the "close relationship" element.

- 19 -

### b. Genuine obstacle

Plaintiffs also meet the second requirement for third-party standing: "a

hindrance or inability of the third party to pursue his or her own claims." Terrell,

157 F.3d at 809; see also S & S Pawn Shop Inc. v. City of Del City, 947 F.2d 432,

438 n.5 (10th Cir. 1991) ("One of the requirements for third party standing . . . is

a genuine obstacle that prevents the third party from asserting his or her rights.").

Although we have not addressed in detail what qualifies as a "hindrance" or

"genuine obstacle," other courts have shed some light on this subject. For

example, a plurality in Singleton concluded that, as to a woman's assertion of her

own right to an abortion,

> there are several obstacles. For one thing, she may be chilled from such
> assertion by a desire to protect the very privacy of her decision from the
> publicity of a court suit. A second obstacle is the imminent mootness,
> at least in the technical sense, of any individual woman's claim. Only
> a few months, at the most, after the maturing of the decision to undergo
> an abortion, her right thereto will have been irrevocably lost.

428 U.S. at 117.

The Third Circuit has also discussed this element, in the context of whether

psychiatrists have third-party standing to raise the claims of their mental patients.

See Penn. Psychiatric Society, 280 F.3d at 289–90. In considering whether those

patients were "hindered" from bringing suit, the court noted that according to one

treatise,

> [t]his criterion does not require an absolute bar from suit . . . . In other
> words, a party need not face insurmountable hurdles to warrant

third-party standing. . . . One treatise insists that "cases do not demand an absolute impossibility of suit in order to fall within the [impediment] exception. At the other end of the spectrum, a practical disincentive to sue may suffice, although a mere disincentive is less persuasive than a concrete impediment."

Id. at 290 & n.14 (quoting 15 James Wm. Moore et al., Moore's Federal Practice § 101.51 [3][c]). The court concluded that "[t]he stigma associated with receiving mental health services presents a considerable deterrent to litigation" and that "mental health patients' . . . impaired condition may prevent them from being able to assert their claims." Id. at 290. The court concluded that "the patients' fear of stigmatization, coupled with their potential incapacity to pursue legal remedies" was a sufficient hindrance. Id.

In Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205 (4th Cir. 2002), however, the Fourth Circuit concluded that a doctor did not have third-party standing to bring a claim on behalf of her dialysis patients. Id. at 215. The court held that "we cannot simply assume that every disabled or chronically ill person is incapable of asserting his or her own claims. In fact, such persons are typical and frequent plaintiffs under both the ADA and RA." Id.

Taking these cases as guidance, we conclude that Plaintiffs' patients do indeed face a "genuine obstacle" to asserting their own claims. The alleged rights that Plaintiffs assert on behalf of their patients are privacy rights — the patients' desire to keep information about their sexual activities private. Therefore, as Plaintiffs argue, "adolescents seeking health care related to sexuality or mental

health care counseling 'may be chilled from [asserting their own rights] by a desire to protect the very privacy of [the care they seek] from the publicity of a court suit.'" (quoting Singleton, 428 U.S. at 117).

Additionally, the fact that those patients are minors is an additional obstacle—minors are generally not legally sophisticated and are often unable even to maintain suits without a representative or guardian. See Kan. Stat. Ann. § 38-101 ("The period of minority extends in all persons to the age of eighteen (18) years, except that every person sixteen (16) years of age or over who is or has been married shall be considered of the age of majority in all matters relating to . . . the capacity to sue and be sued."). Furthermore, minors may be hindered by the fear of reprisal from parents should information about their sexual activity be disclosed. For these reasons, we conclude that Plaintiffs' patients are sufficiently hindered from bringing suit for this second criterion to be met.[14]

---

[14]We also reject Defendants' claim that Tileston v. Ullman, 318 U.S. 44 (1943), requires that we find that Plaintiffs lack third-party standing. In Tileston, a physician argued that a statute preventing him from giving contraceptives to patients whose lives would be threatened by pregnancy violated his patients' right to life. Id. at 45. The Supreme Court held that "there is no basis on which we can say that [the physician] has standing to secure an adjudication of his patients' constitutional right to life, which they do not assert in their own behalf." Id. at 46. In contrast, a physician in the later Supreme Court case of Griswold v. Connecticut, 381 U.S. 479 (1965), was allowed to assert the rights of his patients in appealing his conviction for providing contraceptive advice. Id. at 480. The Supreme Court distinguished Tileston:

> Tileston v. Ullman . . . is different, for there the plaintiff seeking to represent others asked for a declaratory judgment. In that situation we thought that the requirements of standing should be strict, lest the
> (continued...)

## B. Preliminary Injunction

We next address whether the district court improperly granted Plaintiffs'

request for a preliminary injunction. "This court reviews the grant of a

preliminary injunction for abuse of discretion." Dominion Video Satellite, Inc. v.

EchoStar Satellite Corp., 269 F.3d 1149, 1153 (10th Cir. 2001). "A district court

abuses its discretion where it commits a legal error or relies on clearly erroneous

factual findings, or where there is no rational basis in the evidence for its ruling."

Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir. 2002) (citations omitted).

Generally, to obtain a preliminary injunction, a plaintiff must establish: (1) a

substantial likelihood of success on the merits, (2) that the plaintiff will suffer

irreparable injury if the preliminary injunction is denied, (3) that the threatened

injury to the plaintiff outweighs the injury to the defendant(s) caused by the

---

[14](...continued)

standards of 'case or controversy' in Article III of the Constitution
become blurred. Here those doubts are removed by reason of a criminal
conviction for serving married couples in violation of an
aiding-and-abetting statute.

Id. at 481. Defendants argue that because Plaintiffs have not been criminally
convicted and because they seek a declaratory judgment, they therefore lack
standing to assert their minor patients' claims.

However, Tileston has been described as a case where "[t]he patients were
fully able to bring their own action," Eisenstadt v. Baird, 405 U.S. 438, 443 n.4
(1972), and where the physician "did not allege any infringement of his own
rights, nor even any inconvenience to himself," Alexander M. Bickel, The
Supreme Court 1960 Foreword: The Passive Virtues, 75 Harv. L. Rev. 40, 58
(1961). Given the obstacles Plaintiffs' minor patients face in asserting their own
rights, and given that Plaintiffs assert infringement of their own due process
rights as well as the rights of their patients, Tileston does not control in this case.

preliminary injunction, and (4) that an injunction is not adverse to the public interest. Dominion Video Satellite, 269 F.3d at 1154. Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005) (quotation omitted); see also United States *ex rel.* Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc., 883 F.2d 886, 888–89 (10th Cir. 1989) ("Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established.").

Here, as in the district court, Plaintiffs argue that the less rigorous standard we announced in Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc., 994 F.2d 1476, 1487 (10th Cir. 1993), should apply. The "liberal definition" we applied in Autoskill lessens the need for showing a substantial likelihood of success on the merits: "when the other three requirements for a preliminary injunction are satisfied, it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." Id. at 1487 (quotations, citations, alterations omitted). However, in Heideman v. S. Salt Lake City, 348 F.3d 1182 (10th Cir. 2003), we held that "[w]here . . . a preliminary injunction seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the less rigorous fair-ground-for-litigation

- 24 -

standard should not be applied." Id. at 1189 (quoting Sweeney v. Bane, 996 F.2d 1384, 1388 (2d Cir. 1993)) (further quotations omitted) (citations omitted).  We therefore decline to apply the "liberal definition" of Autoskill.[15]

### 1. Substantial Likelihood of Success

The district court determined that Plaintiffs are substantially likely to succeed on their claim that mandatory reporting of minors' voluntary sexual activity with age-mates violates the informational privacy rights of Plaintiffs' minor patients and clients.  Aid for Women, 327 F. Supp. 2d at 1288.  We conclude that the district court abused its discretion in making this determination.

We discuss our reasoning in more detail below.  However, to avoid confusion it is helpful here at the outset to specify exactly what we are, and what we are not, addressing.  The following list will emphasize how narrow our ruling is:

First, for purposes of this interlocutory appeal, Plaintiffs are not asserting any constitutional rights of their own.  They are asserting only the rights of their patients and clients.

Second, for purposes of this interlocutory appeal, the Plaintiffs are not challenging the validity of the Kansas statutes criminalizing sexual conduct with a

---

[15]Plaintiffs argue that the Heideman rule is inapplicable because "the action of requiring automatic reporting is not 'in the public interest.'"  However, we presume that all governmental action pursuant to a statutory scheme is "taken in the public interest."

minor under the age of 16 even where that sexual activity is voluntary and among age-mates.

Third, for purposes of this interlocutory appeal, the Plaintiffs are not asserting that their minor patients and clients have been or will be forced or coerced into disclosing information about their illegal behavior to the Plaintiffs. Plaintiffs have and will come into possession of this information by lawful means.

Finally, we are not confronted here with a claim under the Fourth Amendment or the Fifth Amendment.

Having clarified the scope of our inquiry, we now address whether Plaintiffs have met their burden of showing a substantial likelihood of success on the merits of their claim.

### a. Informational privacy rights

We agree with the district court's initial determination that minors do possess a right to informational privacy. See Aid For Women, 327 F. Supp. 2d at 1285. That is, the fact that they are minors does not foreclose them from constitutional privacy protection.

"While the Constitution does not explicitly establish a right of privacy, the Supreme Court has recognized for nearly 100 years that a right of personal privacy does exist." Eastwood v. Dep't of Corr. of Okla., 846 F.2d 627, 630 (10th Cir. 1988). This right protects "two kinds of privacy interests: the individual's interest in avoiding disclosure of personal matters and the interest in

being independent when making certain kinds of personal decisions." Id. at 630–31; see also Whalen v. Roe, 429 U.S. 589, 599–600 (1977) ("The cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.") (footnotes omitted). The first interest, which is often termed "informational privacy," "protects the individual from governmental inquiry into matters in which it does not have a legitimate and proper interest." Eastwood, 846 F.2d at 631. An individual is thus protected from disclosure of information where the individual "has a 'legitimate expectation . . . that it will remain confidential.'" Sheets v. Salt Lake County, 45 F.3d 1383, 1387 (10th Cir. 1995) (quoting Mangels v. Pena, 789 F.2d 836, 839 (10th Cir. 1986)).

This circuit has not yet determined whether the right of informational privacy extends to minors; we now conclude that it does. In Carey v. Population Services, International, a plurality of the Supreme Court opined that "the right to privacy in connection with decisions affecting procreation extends to minors as well as adults." 431 U.S. 678, 693 (1977).[16] Other circuits have also recognized that minors possess privacy rights. See Planned Parenthood of S. Az. v. Lawall,

---

[16]Although the district court stated that this was "held" by the Supreme Court, a footnote encompassing the quoted Supreme Court language clarifies that "this part of the opinion expresses the views of Justices BRENNAN, STEWART, MARSHALL and BLACKMUN." Carey, 431 U.S. at 691 n.12.

307 F.3d 783, 789 (9th Cir. 2002) (recognizing "a young woman's privacy interest in avoiding disclosure of sensitive personal information."); Doe v. Irwin, 615 F.2d 1162, 1166 (6th Cir. 1980) ("Though the state has somewhat broader authority to regulate the conduct of children than that of adults, minors do possess a constitutionally protected right of privacy."); Wynn v. Carey, 582 F.2d 1375, 1384 (7th Cir. 1978) ("[A] minor possesses the right of privacy, defined as the right of the individual . . . to be free of unwarranted governmental intrusion into . . . the decision whether to bear or beget a child, [but] that right is not unqualified.") (internal citations omitted) (alterations in original); see also Planned Parenthood of Cent. Mo. v. Danforth, 428 U.S. 52, 74 (1976) ("Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority."). We agree with our sister circuits and conclude that minors do have a right to informational privacy.[17]

### b. The reporting statute and privacy rights

We next address whether the Plaintiffs have met their burden of showing a substantial likelihood of prevailing on their claim that the reporting statute violates their minor patients' and clients' informational privacy rights. In making this determination, we only address the narrow question of whether the Plaintiffs

---

[17]We do not need to determine the precise parameters of this right in the context of minors, but it is undoubtedly true that "the state has somewhat broader authority to regulate the conduct of children than that of adults." Irwin, 615 F.2d at 1166; see also Wynn, 582 F.2d at 1384 (describing the privacy right of minors as "not unqualified").

have met their burden of proof and shown that their "right to relief . . . [is] clear and unequivocal." Schrier, 427 F.3d at 1258. We conclude that they have not met their burden of showing a substantial likelihood of success, for two reasons.

First, there is Tenth Circuit precedent that indicates that minors may not have any privacy rights in their concededly criminal sexual conduct. Our cases have held that "a validly enacted law places citizens on notice that violations thereof do not fall within the realm of privacy. Criminal activity is . . . not protected by the right to privacy." Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir. 1995) (citation omitted); Stidham v. Peace Officer Stds. & Training, 265 F.3d 1144, 1155 (10th Cir. 2001) (same); see also Mangels, 789 F.2d at 839 ("Validly enacted drug laws put citizens on notice that this realm is not a private one. Accurate information concerning such unlawful activity is not encompassed by any right of confidentiality . . . ."). In Nilson, the plaintiff filed a § 1983 action claiming that his privacy rights were violated when a police officer disclosed to a news reporter information about the plaintiff's prior conviction for sexual abuse. 45 F.3d at 370–71. We rejected the plaintiff's claim, in part because "[l]aws proscribing sexual abuse place Mr. Nilson on notice that violations thereof do not fall within the constitutionally protected privacy realm." Id. at 372.[18] Similarly, in Stidham, a peace officer claimed that his employer violated his right to privacy

---

[18]As described above, any sexual activity involving a minor younger than 16 is "sexual abuse" under Kansas law. See supra part I.A.

by spreading (allegedly false) allegations that he had raped a young woman. 265

F.3d at 1149. We noted that the information in the allegations "is sensitive in

nature and considerably stigmatizes Appellant." Id. at 1155. However, we again

concluded that no privacy rights were implicated because "a validly enacted law

[in Stidham, the law against rape] places citizens on notice that violations thereof

do not fall into the realm of privacy." Id. (quoting Nilson, 45 F.3d at 372); see

also Wimberly v. City of Clovis, 2004 WL 3426118, at *3 (D.N.M. 2004) ("It is

undisputed that the information at issue concerned illegal activity. And although

that information may be sensitive in nature and may stigmatize [the plaintiff], it is

not constitutionally protected."); Trade Waste Mgmt. Assoc., Inc. v. Hughey, 780

F.2d 221, 234 (3d Cir. 1986) ("While it may be that when conduct resulting in

[criminal] convictions or charges was engaged in the person who engaged in it

expected that such participation would remain secret, that expectation was never

reinforced by law.").[19]

---

[19]It is clear that this rule can only apply where the validity of the criminal
law is not challenged. That is, if a law making a certain activity a crime is
challenged as violative of a constitutional privacy right, the government cannot
defend the law by arguing that because the activity is illegal, there is no privacy
right in that activity. See, e.g., Griswold, 381 U.S. at 479. Here, however,
Plaintiffs expressly "do not challenge the constitutionality of the Kansas statute
making any sexual activity with an adolescent under 16 a crime." Cf. Fleisher v.
City of Signal Hill, 829 F.2d 1491, 1498 (9th Cir. 1987) ("The illegality of [the
plaintiff's] behavior creates a substantial barrier to his successfully asserting a
privacy claim. [The plaintiff] has not challenged the constitutionality of
California's statutory rape law or of the Department's regulations, and yet he
would have us hold that acts amounting to statutory rape are protected by the
right of privacy.").

- 30 -

As described above, Kansas laws criminalizes all sexual conduct with minors, see supra part I.A, and Plaintiffs do not challenge those laws. Thus, applying the rationale from Nilson and Stidham to this case would lead to a conclusion that Plaintiffs' minor patients and clients have no right to privacy in their illegal sexual activity—even though information about that activity is "sensitive in nature" and may stigmatize those minors if disclosed.[20] The dissent argues that the above-cited cases are distinguishable and suggests several grounds for distinguishing them. It is certainly possible that the cases ultimately will be distinguished; however, no Tenth Circuit or Supreme Court case has yet done so, and we feel that the dissent's grounds for distinguishing the cases are grounds on which those cases did not rely. In any event, because this line of cases potentially applies to exclude information about all illegal sexual activity by minors from the "realm of privacy," we cannot agree that the Plaintiffs have met their burden of showing a substantial likelihood of success on the merits of their informational privacy claims.

Our second reason for concluding that Plaintiffs have not met their burden of showing a substantial likelihood of success on the merits is that even if the

---

[20]Of course, there are other constitutional protections limiting how the government can *obtain* information about illegal conduct, even if that conduct "do[es] not fall within the constitutionally protected privacy realm." Nilson, 45 F.3d at 372. As Plaintiffs point out, "the power to obtain evidence and information *about* conduct is severely circumscribed by the Bill of Rights, primarily the Fourth, Fifth and Sixth amendments." However, no such claims are presented to us in this interlocutory appeal.

rationale from <u>Nilson</u> and <u>Stidham</u> does not apply, Plaintiffs have not "clear[ly] and unequivocal[ly]" shown that the balance between their privacy rights and the government's interests in requiring reporting is substantially likely to weigh in their favor.

Typically, "[i]f an individual has a legitimate expectation of confidentiality, then '[d]isclosure of such information must advance a compelling state interest which, in addition, must be accomplished in the least intrusive manner.'" <u>Sheets</u>, 45 F.3d at 1387 (quoting <u>Mangels</u>, 789 F.2d at 839). However, we agree with the district court that this is not the test where the privacy rights at issue are those of minors. <u>Aid for Women</u>, 327 F. Supp. 2d at 1286. Rather, the question is whether the reporting statute "serve[s] 'any significant state interest . . . that is not present in the case of an adult.'" <u>Carey</u>, 431 U.S. at 693 (plurality opinion) (quoting <u>Danforth</u>, 428 U.S. at 74); <u>see also</u> <u>Schleifer *ex rel.* Schleifer v. City of Charlottesville</u>, 159 F.3d 843, 847 (4th Cir. 1998); <u>Johnson v. City of Opelousas</u>, 658 F.2d 1065, 1073 (5th Cir. 1981); <u>Wynn</u>, 582 F.2d at 1384. Answering that question requires balancing the minors' privacy rights at issue with the countervailing state interests.

In conducting this balancing test, the district court overlooked three important factors that accentuate and strengthen the government's interest in this balance. First, the government has a strong interest generally in the enforcement of its criminal laws. <u>Grand Jury Proceedings of John Doe v. United States</u>, 842

- 32 -

F.2d 244, 248 (10th Cir. 1988) (holding that a claimed First Amendment privilege is "outweighed by the government's interest in investigating crimes and enforcing the criminal laws"); United States v. Jorn, 400 U.S. 470, 479 (1971) (noting the government's "very vital interest in enforcement of criminal laws"). Cf. New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1351 (1977) (Rehnquist, J., as Circuit Justice) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). The reporting statute implicates this interest.

Second, the state has a strong *parens patriae* interest in protecting the best interests of minors. Davis v. Reynolds, 890 F.2d 1105, 1110 (10th Cir. 1989) ("[S]afeguarding the physical and psychological well-being of a minor . . . is a compelling [interest].") (quoting Globe Newspaper Co. v. Super. Ct. for Norfolk County, 457 U.S. 596, 607 (1982)); Palmore v. Sidoti, 466 U.S. 429, 433 (1984) ("The State, of course, has a duty of the highest order to protect the interests of minor children, particularly those of tender years."); Pesce v. J. Sterling Morton High Sch., Dist. 201, Cook County, Ill., 830 F.2d 789, 797–98 (7th Cir. 1987) (concluding that a minor's informational privacy rights were outweighed by the state's "compelling interest in protecting abused children" and noting that "[t]he Supreme Court has recognized the substantial interest of a state in protecting all children"); see also Hodgson v. Minnesota, 497 U.S. 417, 449 n.35 (1990) (referring to a state's "legitimate interest in protecting minor women from their

- 33 -

own immaturity"). The reporting statute enables the government to gain information about sexual abuse and violations of the criminal law that allow it to promote the best interests of minors.

Third, the government has an interest in promoting public health, particularly the health of minors. Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir. 1999) (noting "the government's strong interest in public health"); Buchwald v. Univ. of N.M. Sch. of Med., 159 F.3d 487, 498 (10th Cir. 1998) ("[P]ublic health is a compelling government interest . . . ."); Hollingsworth v. Hill, 110 F.3d 733, 739 (10th Cir. 1997) ("[T]he state's interest in the health and welfare of its children constrains a parent's liberty interest in the custody, care, and management of her children."); Garramone v. Romo, 94 F.3d 1446, 1451 (10th Cir. 1996) (same). Reporting instances of illegal sexual abuse enables the state of Kansas to protect the health of its citizens, especially children.

There are also two factors that diminish the privacy rights of the Plaintiffs' minor patients and clients in this balance. First and foremost, the underlying sexual activity is concededly criminal. Even if our precedent is not read generally to exclude information about criminal activity from the realm of enforceable privacy rights, the criminality of the activity nonetheless must at least diminish the minors' privacy interest in such activity. Second, the fact that the privacy rights asserted are the rights of minors diminishes the strength of those rights somewhat. As we noted earlier, it is undoubtedly true that "the state has

- 37 -

somewhat broader authority to regulate the conduct of children than that of adults." Irwin, 615 F.2d at 1166. Minors' privacy rights in personal sexual activity are not as strong as adults' rights would be. Thus, the privacy interests in this case are diminished.

Although we note the above factors, we need not conclude definitively how this balance would ultimately be decided. Rather, we simply conclude now that even if a balancing test applies, then given the above factors, Plaintiffs have not met their burden of showing that it is substantially likely that the balance would weigh in their favor. Therefore, the district court abused its discretion in concluding that Plaintiffs have shown a substantial likelihood of success on the merits.

### 2. Other Preliminary Injunction Factors

In addition, we conclude that the district court abused its discretion as to the other elements of a preliminary injunction. The court apparently did not even evaluate those elements.[21] See Aid for Women, 327 F. Supp. 2d at 1288 ("[T]he court finds plaintiffs are likely to succeed on their informational privacy claim. Thus, the court grants plaintiffs' motion for a preliminary injunction on this basis."). Most obviously, the court did not even evaluate whether there would be

---

[21]Cf. Kiowa Indian Tribe of Okla. v. Hoover, 150 F.3d 1163, 1172 (10th Cir. 1998) ("[T]he district court relied only on the issue of irreparable harm and did not address the other three conditions required for issuance of a preliminary injunction. Accordingly, we reverse the district court's denial of a preliminary injunction . . . .").

irreparable injury in the absence of this preliminary injunction.[22]  See Dominion

Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1266 (10th Cir.

2004) (reversing the grant of a preliminary injunction because the parties'

stipulation was insufficient and "[b]ecause the district court articulated no other

ground to substantiate a finding of irreparable harm").  As to the remaining

preliminary injunction factors, the district court's analysis was at the very least

inadequate.  We note, for example, that as for the third factor—whether the

threatened injury to the plaintiff outweighs the injury to the defendant(s) caused

by the preliminary injunction—the district court did not even identify any

possible harm to the Defendants from the injunction.  And, as to Plaintiffs, the

court merely stated that "even a limited breach of confidentiality concerning such

unique and intimate information could have large implications for the well-being

of minors."  Aid for Women, 327 F. Supp. 2d at 1288.  Of course, "large

----

[22]Plaintiffs assert that there will be irreparable injury because automatic
reporting "will deter adolescents from obtaining needed health care," "will
specifically deter adolescents from being open and candid with their health care
providers," and because "the harm to the constitutional rights of plaintiffs and
their patients is per se irreparable injury."  Because our cases require a showing
of "irreparable injury to the movant," Valley Cmty. Pres. Comm'n v. Mineta, 373
F.3d 1078, 1083 (10th Cir. 2004) (quotation omitted), injury to Plaintiffs' minor
patients may be insufficient to satisfy the requirement for a preliminary
injunction.  Because of our earlier ruling on likelihood of success on the merits,
we do not here definitively need to decide whether, in a case of third-party
standing, a movant can rely on irreparable injury to the third parties whose
interests are being asserted.  In any event, as to the alleged "harm to the
constitutional rights of plaintiffs," we note that the district court concluded that
the statute does not violate Plaintiffs' due process right to fair notice.

implications" is not equivalent to harm, and such vague language does not indicate the sort of analysis properly involved in evaluating this factor.

As to the final preliminary injunction factor, the district court said only that "[i]t is persuasive that the parties operated under the 1992 advisory opinion for a substantial period of time without discernible problems." Id. This may mean that the preliminary injunction would not discernibly harm the public interest because under the old Attorney General opinion there were no "discernible problems." However, we conclude that failure to engage in a more explicit analysis of the public interest is an abuse of discretion.

Therefore, because the district court failed to adequately analyze the last three preliminary injunction factors, we conclude that it abused its discretion on that basis as well.

### III. CONCLUSION

For the foregoing reasons, we agree with the district court that Plaintiffs have standing to bring this suit and to raise the privacy rights of their minor patients. We conclude, however, that the district court abused its discretion in determining that Plaintiffs have a substantial likelihood of success on the merits. In addition, the district court abused its discretion by failing to adequately analyze the additional three preliminary injunction factors. We therefore VACATE the preliminary injunction issued by the district court and REMAND for further proceedings in connection with that decision.

04-3310, *Aid for Women v. Foulston*

**HERRERA**, District Court Judge, concurring in part and dissenting in part.[1]

I concur with the majority's decisions that Plaintiffs have standing to challenge the reporting statute, Majority Op., *supra*, § II.A, that minors possess informational privacy rights, *id.* § II.B.1.a, and that the district court abused its discretion with respect to the irreparable injury, balancing of injury, and public interest elements of the preliminary injunction analysis, *id.* § II.B.2. I dissent from the majority's decision that Plaintiffs have not demonstrated a likelihood of success on the merits of their claim that the reporting statute violates minors' privacy rights in information regarding their voluntary sexual conduct with adolescents of a similar age ("agemates"). *Id.* § II.B.1.b.

The district court issued a preliminary injunction against enforcement of the reporting statute to the extent it requires reporting of voluntary sexual activity between agemates.[2] The parties do not dispute the constitutionality of the

---

[1] The majority opinion and dissent initially were filed on January 27, 2006, as a non-binding order and judgment. *Aid for Women v. Foulston*, No. 04-3310, 2006 U.S. App. LEXIS 2366 (10th Cir. Jan. 27, 2006). As a result of time constraints arising from the impending January 30, 2006, trial in the district court, the dissent was filed without revisions to address certain aspects of the majority opinion. Because those time constraints no longer are applicable, the dissent has been revised in accordance with the majority opinion and therefore differs from the dissent to the order and judgment.

[2] Voluntary sexual activity includes more than sexual intercourse. It also includes, among other things, "fondling or touching." *See, e.g.*, Kan. Stat. Ann. § 21-3522.

reporting and disclosure requirements where evidence of force, a power differential, incest, or similar sexually abusive conduct ("actual sexual abuse") is present. Thus, the issue presented here is not whether the reporting of actual sexual abuse between minors violates minors' informational privacy rights, but rather whether mandatory reporting of voluntary sexual conduct between adolescent agemates violates their rights.

Significant to this analysis is the fact that SRS "screens out" and does not refer to law enforcement reports concerning "lifestyle" issues that do not directly harm a child. As noted by the majority, SRS does not investigate mutual sexual exploration by agemates where there is no evidence of force, a power differential, or incest. *See id.* § I.B. Also significant is the fact that reporting is required as to the minor victims of the alleged crimes--not just the perpetrators of the crimes-- and that information pertaining to voluntary sexual conduct and confidential medical matters is not public but rather private information to which Kansas would not have access but for the fact that it compels disclosure from minors.

The majority holds that because Kansas has criminalized all sexual activity with adolescents under sixteen years of age, adolescents may not have a constitutional right to informational privacy that would prohibit mandatory reporting or disclosure of information regarding voluntary sexual acts with their agemates. *Id.* § II.B.1.b (voluntary sexual activity does "'not fall within the realm of privacy'" because "'[c]riminal activity is . . . not protected by the right

-2-

to privacy'") (quoting *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) and citing *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1155 (10th Cir. 2001)). The majority therefore concludes that Plaintiffs have not demonstrated a "'clear and unequivocal'" right to relief on the merits of their claim that mandatory reporting and subsequent disclosure of information concerning minors' voluntary sexual conduct violates their right to informational privacy, and that the district court abused its discretion in finding otherwise. *Id.* (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Because I believe that Plaintiffs have demonstrated by clear proof that they are likely to succeed on the merits of their informational privacy claim, I dissent.[3]

The fact that Kansas criminalizes certain conduct does not, by itself, determine the existence of a federal right to privacy. If federal courts adopted a *per se* rule providing that an individual has no federal privacy right in information concerning conduct that a state has criminalized, a state would have the power to eliminate federal privacy rights simply by declaring the conduct to be criminal.

---

[3] To satisfy their burden of proof and obtain a preliminary injunction, Plaintiffs need only show "by clear proof" that they "probably [will] prevail when the merits are tried." *Penn v. San Juan Hosp.*, 528 F.2d 1181, 1185 (10th Cir. 1975). The requirement that a movant demonstrate that it has met its burden by "clear and unequivocal" proof, *Schrier*, 427 F.3d at 1258, does not alter the preliminary injunction requirement that a movant need only demonstrate a "substantial likelihood of success on the merits," *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001), and not "clear and unequivocal" success on the merits.

-3-

Such a result not only inverts the normal primacy of federal law over state law,[4] it also appears to contradict Supreme Court precedent that specifically has upheld federal privacy rights despite a state's efforts to criminalize the conduct. *See Griswold v. Connecticut*, 381 U.S. 479, 485-86 (1965) (invalidating a state law prohibiting the dispensing or use of birth control devices to or by married couples because the law violated the right to privacy); *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (overruling *Bowers v. Hardwick* and invalidating a Texas statute making it a crime for two persons of the same sex to engage in consensual intimate relations because the law violated private liberty interests); *compare Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001) (acknowledging that patients have a right to privacy in information regarding their positive urine drug test results even though the act of ingesting illegal drugs violated state law, and holding that the reporting of positive urine drug tests to police resulted in unreasonable searches absent patient consent); *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 617 (1989) (urinalysis test for illegal drugs is a search for Fourth Amendment purposes because it "intrudes upon expectations of privacy that society has long recognized as reasonable"); *see also Nat'l Treasury Employees Union v. United States Dep't of Treasury*, 838 F. Supp. 631, 636-37

---

[4] *See, e.g., McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 425 (1819) ("This great principle is, that the constitution and the laws made in pursuance thereof are supreme; that they control the constitution and the laws of the respective states, and cannot be controlled by them.").

(D.D.C. 1993) (holding that plaintiffs were likely to succeed on claim that
employee questionnaire, which included questions about past drug use and prior
arrests, solicited information protected by the right to informational privacy).[5]

As this court has recognized, the right to informational privacy is founded
"not upon state provisions but upon deeply rooted notions of fundamental
personal interests derived from the Constitution." *Mangels v. Pena*, 789 F.2d
836, 839 (10th Cir. 1986) (citation omitted). "While state statutes and regulations
may inform our judgement regarding the scope of constitutional rights," *Nilson*,
45 F.3d at 372 (citation omitted), they do not define the right itself, *see id.*
Accordingly, the fact that Kansas has criminalized certain types of voluntary
sexual conduct should not lead to a *per se* conclusion that minors have no privacy
rights concerning that conduct and should not relieve the court from determining,

---

[5] The fact that Plaintiffs do not challenge the constitutionality of the Kansas
statute criminalizing voluntary sexual conduct of minor agemates does not render
untenable their claim that mandatory reporting and disclosure of information
regarding their voluntary sexual acts violates their rights to informational privacy.
*Compare* Majority Op., *supra*, § II.B.1.b at n.18. The Supreme Court has never
grafted such a requirement onto its privacy jurisprudence. Moreover,
constitutional jurisprudence carefully distinguishes between the power to prohibit
conduct, which has been given deference, and the power to compel disclosure of
information about the conduct, which has been severely circumscribed by the
Constitution. For example, in the case of tangible evidence of a crime, the
government typically must meet the Fourth Amendment's warrant and
reasonableness requirements. *See Mapp v. Ohio*, 367 U.S. 643 (1961); *see also*
Appellee's Br. 18-19. In the case of information disclosed to an attorney, the
state is generally prohibited from having access to the information even if the
information concerns illegal activity. *Coplon v. United States*, 191 F.2d 749, 759
(D.C. Cir. 1951); *see also* Appellees Br. 19.

as a question of federal law, whether minors have a legitimate expectation of privacy in information regarding their voluntary sexual conduct and confidential communications with their healthcare providers.

In answering this question under federal law, I conclude that minors have a legitimate expectation of privacy in their intimate sexual and confidential medical information. This court has extended the right to privacy to protect against intrusion into personal sexual matters. In *Eastwood v. Department of Corrections*, the court specifically held that the "constitutionally protected right [to privacy] is implicated when an individual is forced to disclose information regarding personal sexual matters." 846 F.2d 627, 631 (10th Cir. 1988); *see also Livsey v. Salt Lake County*, 275 F.3d 952, 956 (10th Cir. 2001) (recognizing that a legitimate expectation of privacy may exist in "information pertaining . . . to highly personal sexual behavior"); *Nilson*, 45 F.3d at 372 ("[e]xpectations of privacy are legitimate if the information which the state possesses is highly personal or intimate"). "Supreme Court decisions [also] 'make it clear that the right [to privacy] has some extension to activities relating to marriage, procreation, contraception, family relationships, and child rearing and education.'" *Douglas v. Dobbs*, 419 F.3d 1097, 1101-02 (10th Cir. 2005) (citations omitted), *cert. denied*, 74 U.S.L.W. 3308 (U.S. Jan. 17, 2006). This protection extends to intimate choices by unmarried as well as married persons. *See, e.g., Carey v. Population Servs. Int'l*, 431 U.S. 678, 686 (1977); *Eisenstadt*

*v. Baird*, 405 U.S. 438, 453 (1972). The Supreme Court also recognized in *Lawrence v. Texas* that "sexual behavior" is "the most private human conduct," and that the personal nature of that conduct "counsel[s] against attempts by the State, or a court, to define the meaning of the relationship or to set its boundaries absent injury to a person." 539 U.S. at 567. Additionally, in *A.L.A. v. West Valley City*, this Court expressly held that the right to privacy encompasses information provided in the course of seeking healthcare. *A.L.A.*, 26 F.3d 989, 990 (10th Cir. 1994) ("[t]here is no dispute that confidential medical information is entitled to constitutional privacy protection") (citations omitted); *see also Lankford v. City of Hobart*, 27 F.3d 477, 479 (10th Cir. 1994) (there is "'no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection'") (citations omitted).

The information subject to disclosure under the reporting statute concerns highly personal and intimate voluntary sexual and confidential medical matters entitled to protection by the right of privacy. The fact that Kansas has criminalized voluntary sexual conduct between adolescent agemates does not put adolescents "on notice" that they should have no expectation of privacy in information concerning that conduct because voluntary sexual relationships between agemates, and relationships between patients and their healthcare providers, are traditionally private relationships that fall within the

-7-

constitutionally protected zone of intimate relationships.[6]  Accordingly, under *A.L.A.*, *Eastwood*, and Supreme Court precedent granting a right to privacy in highly personal and intimate matters such as voluntary sexual relationships, I conclude that minors have a legitimate expectation of privacy in their voluntary sexual and confidential medical information.

The fact that Kansas criminalizes voluntary sexual conduct does not deprive minors of their pre-existing right to privacy in their voluntary sexual or confidential medical information.  That Kansas criminalizes such conduct may inform the court's judgment regarding the scope of federal constitutional rights, but cannot alone extinguish a federal privacy right.  *See, e.g., Nilson*, 45 F.3d at 372.  Although in *Nilson* and *Stidham* illegality under state law weighed heavily in favor of finding that the plaintiffs did not possess a legitimate expectation of privacy in their own illegal activity, the facts of the instant case are distinguishable from *Nilson* and *Stidham* and analogous to *Eastwood*, *A.L.A.*, and the aforementioned Supreme Court cases.

---

[6] A minor's expectation of privacy in his or her relationship with a healthcare provider is particularly compelling given the multiple state and federal protections for the confidentiality of the relationship.  To whatever extent a statute gives notice of a lack of privacy regarding the conduct it criminalizes, it does not do so with respect to information about such conduct disclosed to healthcare providers.  Thus, for example, an individual has no legitimate expectation that information about illegal drug use gathered in a police investigation would remain private, *see Mangels*, 789 F.2d at 839, but a person consulting with a physician in an effort to seek treatment for drug addiction has a legitimate expectation of privacy as to that information.  Appellees Br. 22-23.

First, *Nilson* and *Stidham* involve rights of privacy in information regarding the plaintiffs' own criminal conduct. In contrast, the reporting statute at issue here requires an infringement of the privacy rights of victims, and not just perpetrators, of criminal conduct. Under Kansas law, a minor under sixteen years of age who engages in sexual activity only breaks the law if he or she engages in the activity with another adolescent under sixteen. Those minors under sixteen, whose partners are sixteen years of age or older, have not engaged in illegal conduct, and therefore fall outside the ambit of the argument that the illegality of conduct voids constitutional protections for information about that conduct. Indeed, these minors with partners sixteen or older are victims of sexual assault under Kansas law. The majority's holding today infringes the privacy rights of these victims, even though victims of sexual crimes have a heightened, and not diminished, right of privacy. *See, e.g.*, *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (noting that a victim's right to privacy in information regarding her sexual assault may outweigh even a defendant's constitutional right to confrontation); *Bloch v. Ribar*, 156 F.3d 673, 685-86 (6th Cir. 1998) (holding that a victim of sexual assault has a right to keep information about the details of the assault private) (relying in part upon this court's decisions in *Eastwood* and *Mangels*).

Second, *Nilson* and *Stidham* involve information that was already in the public sphere and legitimately in the state's possession. In *Nilson*, the information disclosed was an expunged criminal record. This information was

-9-

part of the state's public record, which therefore negated the legitimacy of the

plaintiff's expectation of privacy.[7]  Similarly, in *Stidham*, the allegations of rape

and assault against Mr. Stidham disseminated by a state agency empowered to

regulate the certification of peace officers likewise were already in the public

sphere and legitimately in the state's possession.  Here, however, the information

to be disclosed is not otherwise in the public record or legitimately in the state's

possession.  Instead, it is contained solely in minors' confidential conversations

with their healthcare providers--conversations that are shrouded in multiple state

and federal protections based upon the relationship between healthcare

professionals and their patients.  *See, e.g., A.L.A.*, 26 F.3d at 990; *see also supra*

note 6 and accompanying text.  The fact that the information regarding minors'

voluntary sexual acts is not public, but rather intensely private information to

which Kansas would not have access but for the fact that it compels disclosure of

the information, renders minors' expectations of privacy far greater than the

expectation of privacy possessed by Mr. Nilson or Mr. Stidham.  *Compare*

*Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001) (noting that "the

reasonable expectation of privacy enjoyed by the typical patient undergoing

---

[7] *See Paul v. Davis*, 424 U.S. 693, 713 (1976) (rejecting claim that plaintiff had a right to privacy in "an official act such as an arrest" because the state was not attempting to "restrict his freedom of action in a sphere contended to be 'private'"); *see also Trade Waste Mgmt. Ass'n v. Hughey*, 780 F.2d 221, 234 (3d Cir. 1985) (rejecting plaintiff's claim of a privacy right in records of a criminal conviction and pending criminal charges because such "matters are by definition public"), *cited in* Majority Op., *supra*, § II.B.1.b.

diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent," and holding that, after weighing the individual's interest in privacy against the state's interest in detecting and preventing illegal drug use, the production of the results of such tests constitutes an illegal search in violation of the Fourth Amendment).

Third, in *Nilson* and *Stidham* the information disclosed was obtained by the state through the normal course of the state's operations. Here, Kansas obtains the information not through the normal course of its operations, but rather by compelling the incriminating information from the minors themselves through the mandatory reporting of their confidential communications with their physicians, psychologists, and therapists. A right to privacy is far greater in information that is compelled from an individual whose right the state seeks to infringe than in information that is discovered by the state during the normal course of its business.

This court already held in *Eastwood* and *A.L.A.* that the right to privacy protects against intrusion into personal sexual and medical matters. *Eastwood*, 846 F.2d at 631; *A.L.A.*, 26 F.3d at 990. Moreover, the facts of *Nilson* and *Stidham* are not sufficiently analogous to those of this case to deprive minors of their privacy rights under these cases. I therefore conclude that, even though Kansas has criminalized voluntary sexual activity between agemates, minors have

-11-

a legitimate expectation of privacy in their voluntary sexual and confidential medical information.

The fact that no Tenth Circuit or Supreme Court case has, as yet, distinguished *Nilson* or *Stidham* does not alter this analysis. Courts daily engage in the task of distinguishing and analogizing cases to determine applicable law and regularly grant preliminary injunctions even when no binding case law is directly on point. Moreover, here, the reliance upon *Nilson* and *Stidham* to *per se* eliminate minors' federal privacy rights is inconsistent with Supreme Court and Tenth Circuit precedent providing that federal, and not state, law determines the existence of a federal constitutional right. *See, e.g.*, *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 425 (1819); *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986); *Nilson*, 45 F.3d at 372. Because of the primacy of federal law over state law, and because the facts of *Nilson* and *Stidham* are significantly distinguishable from the facts of this case, Plaintiffs have clearly and unequivocally demonstrated that minors possess a legitimate expectation of privacy.

Once a court determines that a privacy right exists, the court next must determine whether "disclosure serves a compelling state interest" and whether "disclosure can be made in the least intrusive manner." *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 435 (10th Cir. 1981) (citation omitted). The majority notes that where the privacy rights at issue are those of minors, the question is whether the reporting statute "serve[s] 'any significant

-12-

state interest . . . that is not present in the case of an adult.'" Majority Op., *supra*, § II.B.1.b (quoting *Carey v. Population Servs. Int'l*, 431 U.S. 683, 693 (1977) (plurality opinion) (additional citations omitted). Plaintiffs maintain that this diminished standard is "incorrect" because the Supreme Court has applied it only "to the decisional privacy rights of minors, not to the informational privacy rights of minors." Appellees Br. 30 n.24 (citing *Carey*, 431 U.S. at 693 n.15). Regardless of whether the court applies the "compelling" or "significant" state interest test, under the facts of this case, I believe that Kansas's asserted interest in mandatory reporting and disclosure of voluntary sexual conduct is particularly weak and does not meet either test.

The majority, citing various cases, notes that Kansas generally has an interest in enforcement of its criminal laws, an interest *parens patriae* in protecting the best interests of minors, and an interest in promoting the public health of minors. Majority Op., *supra*, § II.B.1.b. Admittedly, in certain instances a government may have such interests. In this case, however, unlike the cases cited by the majority, the interests are neither compelling nor significant because Kansas takes no steps to enforce, protect, or serve the interests in the context of the voluntary sexual conduct of adolescent agemates. *Compare Lawrence v. Texas*, 539 U.S. 558, 570-73 (2003) (noting that states historically and presently have failed to enforce laws criminalizing certain voluntary sexual conduct and finding no legitimate state interest in criminalizing that conduct);

-13-

*Eastwood*, 846 F.2d at 630 (finding a violation of the right to privacy where the intrusion into the plaintiff's private sexual matters had "little correlation" with the defendants' purported interest). As the majority recognizes, once any information regarding voluntary sexual conduct between adolescents of a similar age is reported to SRS, SRS "screens out," or does not investigate, this conduct. *See* Majority Op., *supra*, § I.B. That Kansas does no more than pay lip service to its asserted interests belies the very existence of those interests in the specific context of voluntary sexual activity between agemates. In contrast, in the cases cited by the majority, the states did not simply assert their interests in the abstract, but rather took specific governmental action to enforce, protect, and

serve those interests.[8] Accordingly, the evidence clearly and unequivocally

establishes that Kansas has no compelling or significant interest at work here.

By contrast, a minor's interest in maintaining privacy concerning his or her

voluntary sexual conduct is particularly strong. "'The right to be left alone,' the

---

[8] *See, e.g., Grand Jury Proceedings of John Doe v. United States*, 842 F.2d
244, 248 (10th Cir. 1988) ("government's interest in investigating crimes and
enforcing the criminal laws" protected and served by requiring minor to testify
before grand jury where government presumably sought to obtain indictment
against accused and subsequently conduct criminal prosecution of accused);
*United States v. Jorn*, 400 U.S. 470, 479 (1971) (government's "very vital interest
in enforcement of criminal laws" protected and served by requiring defendants to
stand trial for their crimes where defendants presumably faced subsequent
punishment if found guilty); *Davis v. Reynolds*, 890 F.2d 1105, 1110 (10th Cir.
1989) (government's interest in "'safeguarding the physical and psychological
well-being of a minor'" served by closing a courtroom during the testimony of a
minor victim of a crime where closing of courtroom would protect the minor from
public scrutiny) (quotation omitted); *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984)
(government's "highest" interest in "protect[ing] the interests of minor children"
served by allowing courts to make custody determinations in the best interests of
a child where such determinations presumably are taken into consideration when
awarding custody); *Pesce v. J. Sterling Morton High Sch.*, 830 F.2d 789, 797-98
(7th Cir. 1987) (state's "compelling interest in protecting abused children" served
by requiring mandatory reporting of child abuse where there was no evidence in
the record indicating a failure to investigate reported abuse); *Clark v. City of
Draper*, 168 F.3d 1185, 1187, 1189 (10th Cir. 1999) ("government's strong
interest in public health" protected and served by requiring immediate testing for
rabies of wild animals that bite persons where such testing was in fact
performed); *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 498 (10th Cir.
1998) (compelling government interest in public health protected and served by
the consideration of residency as a "plus" factor in admissions because residents
presumably are more likely to remain in New Mexico and therefore assist in
ensuring the health of New Mexicans); *Hollingsworth v. Hill*, 110 F.3d 733, 739
(10th Cir. 1998) (government's "interest in the health and welfare of its children"
served by allowing for emergency removal of children from their homes where
there was no evidence in the record that the state failed to investigate the
suspected abuse).

Supreme Court has said, is 'the right most valued by civilized men.'" *Eastwood*,

846 F.2d at 631 (quoting *Olmstead v. United States*, 277 U.S. 438, 478 (1928)

(Brandeis, J., dissenting)). Furthermore, information concerning a minor's

voluntary sexual conduct is highly private and intimate, *see id.* (extending the

right to privacy to protect against forced disclosure of information regarding

personal sexual matters), and indeed at the core of the "personal identity which,

under prevailing precedent, is entitled to constitutional protection," *Mangels*, 789

F.2d at 839 (citation omitted). In addition, a minor has a strong interest in

maintaining a confidential relationship with his or her healthcare provider and not

having the threat of disclosure of confidential information impede that

relationship or serve as a deterrent to obtaining healthcare in the first place. *Cf.*

*A.L.A.*, 26 F.3d at 990 (confirming that confidential medical information is

entitled to privacy protection). Moreover, the privacy interest is even greater

when it is viewed from the perspective of minors who are victims, and not

perpetrators, of the criminalized conduct, because victims of criminal activity

have a heightened expectation of privacy. *See, e.g., Michigan v. Lucas*, 500 U.S.

145, 149 (1991); *Bloch v. Ribar*, 156 F.3d 673, 685-86 (6th Cir. 1998). Finally, a

minor's interest is particularly compelling under the facts of this case because

automatic reporting intrudes upon his or her privacy right at the intersection of

two traditionally private relationships, voluntary sexual relationships and

-16-

physician-patient relationships, where individuals enjoy a clear expectation of privacy.

Because Kansas has not established a substantial or compelling government interest in obtaining or disclosing information related to minors' voluntary sexual activities with agemates sufficient to outweigh minors' legitimate expectation of privacy in information concerning that conduct, I conclude that Plaintiffs have demonstrated by clear and unequivocal proof that they are likely to succeed on the merits.[9]  Accordingly, I dissent.

---

[9] Kansas argues that if minors have informational privacy rights in sexual conduct, all states' age of consent laws are unconstitutional.  This argument does not have merit.  If a state can demonstrate that disclosure serves a compelling or significant state interest that is properly tailored to the interest, the fact that minors have a right to informational privacy will not render the reporting laws unconstitutional.  Here, the parties do not dispute, and the dissent does not challenge, the fact that the state has a compelling state interest in mandatory reporting of actual sexual abuse (*i.e.*, sexual activity with evidence of force, a power differential, or incest) or the fact that reporting laws are constitutional to the extent they require reporting of such actual abuse.