IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AID FOR WOMEN, et al.,

Plaintiffs,

vs.                                            Case No. 03-1353-JTM

NOLA FOULSTON, et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on plaintiffs' action for declaratory and injunctive relief.

Plaintiffs seek to prevent enforcement of Kansas Attorney General Phill Kline's application of the state

mandatory reporting statute, through an Attorney General's Opinion,[1] to consensual underage sexual

activity.[2]  Specifically, as filed, this case turns on whether Kan. Stat. Ann. § 38-1522, commonly referred

to as the "Kansas reporting statute," requires reporting of all consensual underage sexual activity as sexual

abuse.

---

[1]Kansas Att'y Gen. Op. No. 2003-17, 2003 WL 21492493 (June 18, 2003), hereinafter "Kline Opinion."  See infra pp.8-9.

[2]As the phrase "consensual underage sexual activity" appears in this opinion, "consensual" means:  1) no coercion was involved; 2) no appreciable power differential existed between partners; and 3) the age difference between partners is no more than three years.  "Underage" means neither of the persons involved is younger than twelve years of age and that at least one of the persons is under the age of sixteen.  "Sexual activity" includes:  penile-vaginal intercourse, oral sex, anal sex, and touching of another's genitalia by either sex.

The court heard approximately seven days of testimony in a bench trial commencing January 30, 2006. For clarity, the court notes that neither side objects to the reporting of: 1) incest; 2) sexual abuse of a child by an adult; and 3) sexual activities involving a child under the age of twelve. Therefore, the only issue presented is whether consensual underage sexual activity must be reported under the Kansas reporting statute. After extensive review of the record, this court holds that the Kansas reporting statute: 1) does not make all underage sexual activity inherently injurious; and 2) requires that the reporter have reason to suspect both injury and that the injury resulted from illegal sexual activity, as defined by Kansas law, before reporting is required. In addition, to require reporting in accordance with Attorney General Kline's opinion would violate a minor's limited right of informational privacy. Thus, this court permanently enjoins enforcement of Kan. Stat. Ann. § 38-1522 in any manner inconsistent with this decision, which includes the Kline Opinion.

## I. FINDINGS OF FACT

### A. Parties to this Action

Plaintiff Aid for Women is a medical practice in Kansas City that provides a range of gynecological services, including abortions and contraception.

Plaintiff Teri Augustus, L.M.S.W., is a Licensed Masters Social Worker who is licensed to practice social work in Kansas. She provides case management and adoption services to children and adolescents at a private child welfare agency in Wichita.

Plaintiff Margot Breckbill, R.N., is a child educator and registered nurse who is licensed to practice nursing in Kansas. She teaches sexuality education at various agencies and at public and private schools

in the Wichita area.  She has also worked with pregnant and parenting teens in the Wichita area for the past eighteen years.

Plaintiff Tracy Cowles, M.D., is a perinatologist who is licensed to practice medicine in Kansas. She is board certified in obstetrics and gynecology, maternal-fetal medicine and medical genetics.  Dr. Cowles provides perinatology services in a private medical practice in Overland Park.          Plaintiff Willow Eby, R.N., is a registered nurse who is licensed to practice nursing in Kansas.  Ms. Eby provides nursing services at a private medical practice in Wichita that provides abortions and other reproductive health services.

Plaintiff Vicki Epp, L.B.S.W., is a Licensed Bachelors Social Worker who is licensed to practice social work in Kansas.  She provides case management and other social services to children and adolescents at a private child welfare organization in Newton.

Plaintiff Margaret Estrin, M.D., is a board-certified obstetrician-gynecologist who is licensed to practice medicine in Kansas.  Dr. Estrin provides a range of obstetrical and gynecological services in a private medical practice in Overland Park.

Plaintiff Herbert Hodes, M.D., is a board-certified obstetrician-gynecologist who is licensed to practice medicine in Kansas.  His daughter, plaintiff Traci Nauser, M.D., is also a board-certified obstetrician-gynecologist licensed to practice medicine in Kansas.  Dr. Hodes and Dr. Nauser provide a range of obstetrical and gynecological services, including abortions, contraceptives, prenatal care, childbirth services, and treatment of sexually transmitted diseases at their private medical practice in Overland Park.

Plaintiff Colleen O'Donnell, R.N.-C, is a registered nurse who is licensed to practice nursing in Kansas.  Ms. O'Donnell is employed by Dr. Hodes' and Dr. Nauser's medical practice, where she provides a range of nursing services within their obstetrical and gynecological practice.

Plaintiff Stacey Morgan, D.O., is a doctor of osteopathy who is licensed to practice medicine in Kansas.  Dr. Morgan is board certified in family practice.  She provides a range of medical services in a private practice in Overland Park.

Plaintiff Beth McGilley, Ph.D., is a clinical psychologist who is licensed to practice psychology in Kansas.  Dr. McGilley provides individual and group counseling services in her private practice in Wichita.

Plaintiff Trina Wheeler, L.M.S.W., is a Licensed Masters Social Worker who is licensed to practice social work in Kansas.  Ms. Wheeler provides a variety of social work services to students of a public high school in Wichita.

Plaintiff Sherman Zaremski, M.D., is a physician who is licensed to practice medicine in Kansas.  He is board certified in internal medicine.  Dr. Zaremksi provides abortions, family planning, and other health care services at Aid for Women.  He also provides abortions and other services at another private medical practice in Wichita.

Defendant Nola Foulston is the District Attorney for the 18th Judicial District of Kansas.  She is being sued in her official capacity as District Attorney and as representative of a class of all county and district attorneys in the state of Kansas.

Defendant Phill Kline is the Attorney General of Kansas.

## B.  The Kansas Reporting Statute

4

Kansas law recognizes the state's interest in reporting abuse of children:

It is the policy of this state to provide for the protection of children who have been subject to physical, mental or emotional abuse or neglect or sexual abuse by encouraging the reporting of suspected child abuse and neglect, insuring the thorough and prompt investigation of these reports and providing preventive and rehabilitative services when appropriate to abused or neglected children and their families so that, if possible, the families can remain together without further threat to the children.

Kan. Stat. Ann. § 38-1521.  See also Clevenger v. Catholic Social Serv. of the Archdiocese of Kansas City, 21 Kan.App.2d 521, 529, 901 P.2d 529, 535 (1995) ("It is apparent that the public policy of this state is to encourage persons with information concerning possible child abuse to report this information to the proper authorities."); Kansas State Bank & Trust Co. v. Specialized Transp. Serv., Inc., 249 Kan. 348, 372 (1991) (purpose of reporting statute is to provide protection for children by encouraging reporting of suspected child abuse and insuring thorough and prompt investigation of such reports); Kennedy v. Kansas Dept. of Social and Rehabilitation Serv., 26 Kan.App.2d 98 (1999) (public policy of state is to encourage reporting of possible child abuse).

As part and parcel of this obligation, Kansas requires reporting to the state government whenever certain persons have "reason to suspect that a child has been injured as a result of . . . sexual abuse." Kan. Stat. Ann. § 38-1522 (emphasis added).  The mandatory reporting requirement extends to various medical and health care providers, school officials, law enforcement, child care service providers, social workers, counselors, and emergency response personnel.  See Kan. Stat. Ann.  § 38-1522(a) (listing the persons who are considered mandatory reporters).  Such persons are required to notify the designated state agency, or, in limited circumstances, law enforcement.  Kan. Stat. Ann. § 38-1522(c), (e).  "Willful and knowing failure to make a report" is a misdemeanor criminal offense.  Kan. Stat. Ann. § 38-1522(f).

5

Kansas law defines "sexual abuse" as "any act committed with a child which is described in article 35, chapter 21 of the Kansas Statutes Annotated." Kan. Stat. Ann. § 38-1502(c). The referenced chapter criminalizes a range of sexual activities involving a minor under the age of sixteen.[3] See, e.g., Kan. Stat. Ann. § 21-3503(a)(1) ("any lewd fondling or touching . . . done or submitted to with the intent to arouse or to satisfy . . . sexual desires"); Kan. Stat. Ann. § 21-3501(2) ("oral contact . . . of the female genitalia or . . . of the male genitalia"); Kan. Stat. Ann. § 21-3501(1) ("any penetration of the female sex organ by a finger, the male sex organ or any object"). Based on the very language of the relevant provisions, sexual activity of minors younger than sixteen is illegal, regardless of whether the activity is voluntary or the sexual activity involves an age-mate.[4] The only exception to this criminal ban is in the case of consensual sexual contact between a person under sixteen and that person's spouse. See, e.g., Kan. Stat. Ann. §§ 21-3503(b); 21-3504(b); 21-2502(b). Kansas has long allowed twelve-year-old females and fourteen-year-old males to marry with parental or judicial consent, although the Kansas legislature is now considering raising these ages. State v. Sedlack, 246 Kan. 305, 307, 787 P.2d 709, 710 (Kan. 1990) (citing State v. Johnson, 216 Kan. 445, 448, 532 P.2d 1325 (1975)). Kansas law requires both parties to be at least eighteen years of age before recognizing a common law marriage as valid. Kan. Stat. Ann. § 23-101(b) (2004).

The reporting statute does not define "injury."

## C. Reporting Policies and Investigation

---

[3] The term "minor" as used throughout this opinion means a person who is under the age of sixteen, i.e., a person who is under the age to legally consent to sexual intercourse.

[4] Kansas Department of Social and Rehabilitation Services officials testified that they consider "age-mates" to be persons within three years of age of each other.

The mandatory reporter notifies the Kansas Department of Social and Rehabilitation Services (hereafter "SRS") in most instances.  Kan. Stat. Ann. § 38-1522(c).  After the mandatory reporter notifies SRS, an intake screener collects information from the mandatory reporter about the minor, including age and social security number, alleged perpetrator and the minor's caretaker.  An SRS social worker then reviews the intake report and determines whether the report should be "screened in" or "screened out" as set forth in SRS's Policy and Procedure Manual (hereafter "SRS Manual").  If a report is "screened in," SRS conducts further investigation and assessment.  If the report is "screened out," SRS does not investigate, provide information to law enforcement or provide any services to a person identified in the report, according to SRS Director Sandra Hazlett.  Further, SRS Regional Director Jean Hogan testified that she was unaware of any case where a criminal investigation or prosecution was initiated for a "screened-out" report.

The SRS policy is to screen out a report when the "[r]eport concerns 'lifestyle' issues that do not directly harm a child or place a child in likelihood of harm."  SRS Manual § 1361.  The Practice Note lists several situations where the "[i]nformation indicates . . . lifestyle issues which do not directly harm children or place them in imminent danger of harm."  One such situation of particular significance in this case is the "[m]utual sexual exploration of age-mates (no force, power differential, or incest issues)."  In other words, SRS screens out intake reports of consensual, voluntary sexual activities of unrelated age-mates.  Cathy Hubbard, SRS Program Administrator for the Protection Unit of Child and Family Services, testified that

one reason such cases are not investigated further is because it is impossible to identify which child is the victim and which is the perpetrator.[5]

SRS has a long-standing policy of screening out consensual underage sexual activity. The parties presented no evidence to indicate that either the legislature or the executive branch (until the Kline Opinion) have attempted to change this policy.

**D. Advisory Opinions**

In 1992, Kansas Attorney General Robert Stephan issued an opinion defining the reporting requirements in cases of unmarried pregnant minors. In pertinent part, the opinion states:

> Whether a particular minor in a particular case has been injured as a result of sexual intercourse and a resulting pregnancy must be determined on a case-by-case basis. The fact of pregnancy certainly puts one on notice that sexual abuse (as statutorily defined) has probably occurred, and requires persons listed in K.S.A. 1991 Supp. 38-1522(a) to investigate further whether the child has suffered injury, physical or emotional, as a result of such activity. If there is reason to suspect that the child has been injured, that person is then required to report such suspicions and the reasons therefore.

Kansas Att'y Gen. Op. No. 92-48, 1992 WL 613410 (April 6, 1992) (hereafter "Stephan Opinion") (emphasis added). The Stephan Opinion did not equate underage pregnancy with "inherent injury," which would automatically trigger reporting. Instead, it placed reporters on notice that the statutory standard of sexual abuse probably had occurred and that the reporter should investigate further to determine if there was injury. Thus, the Stephan Opinion acknowledged the broad statutory scope of the term "sexual abuse," but it left the reporter to determine if there was reason to suspect the child had suffered an injury requiring reporting, which is consistent in every respect with the statutory language.

---

[5] While not investigated, notice of the intake is placed in SRS's information system called Family and Child Tracking System (hereafter "FACTS").

Attorney General Stephan's successor, Carla Stovall, reached a similar conclusion in a letter dated June 3, 1999.  However, on June 18, 2003, Kansas Attorney General Phill Kline issued an opinion seeking to significantly change the standard for reporting.  His opinion, in part, states:

> Kansas law clearly provides that those who fall under the scope of the reporting requirement <u>must report</u> any reasonable suspicion that a child has been injured as a result of sexual abuse, which would be any time a child under the age of 16 has become pregnant. <u>As a matter of law</u> such child has been the victim of rape or one of the other sexual abuse crimes and such crimes are <u>inherently injurious</u>.

Kansas Att'y Gen. Op. No. 2003-17, 2003 WL 21492493 (June 18, 2003) (emphasis added).  In reaching this conclusion, the Attorney General looked beyond the statute's language and beyond the law of the State of Kansas.  His opinion that the minor's pregnancy is "inherently injurious" eliminated the reporter's discretion to determine whether the minor had been "injured."  Further, as the Attorney General's opinion acknowledges, such "inherent injury" reaches beyond a minor's pregnancy:

> We are aware that <u>although this opinion is limited to the question posed, the consequences of the conclusion reach further</u>.  Other situations that might trigger a mandated reporter's obligation, because sexual activity of a minor becomes known, include a teenage girl or boy who seeks medical attention for a sexually transmitted disease, a teenage girl who seeks medical attention for a pregnancy, or a teenage girl seeking birth control who discloses she has already been sexually active.

Kline Opinion, 2003 WL 21492493, at *6 (emphasis added).  Thus, if all illegal sexual activity of a minor is considered sexual abuse and is per se injurious, then pursuant to the Kline Opinion, a mandatory reporter must automatically report any indication that a minor is sexually active.

**E.  Procedural History**

On October 9, 2003, a few months after the Kline Opinion issued, plaintiffs brought suit under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against application of the reporting statute to

incidents of consensual sexual activity between minors under the age of sixteen and persons of similar age when mandatory reporters conclude, in their professional judgment, that the sexual activity did not injure the minor.  Complaint, ¶ 11 (same as Third Amended Complaint, ¶ 11).  The district court certified the plaintiffs as a class largely comprising licensed professionals, including physicians, nurses, social workers, psychologists and sexuality educators.  Dkt. No. 60.  The Complaint named as defendants the Attorney General of Kansas and all county and district attorneys of Kansas.  Complaint, ¶ 46 (identifying all county and district attorneys of Kansas);  Third Amended Complaint, ¶¶ 38, 39 (identifying Attorney General Kline).

The original complaint averred several grounds on which the reporting statute was unconstitutional as applied in the context of the Kline Opinion. First, plaintiffs allege that the application "violates the rights of adolescents under 16 to maintain the confidentiality of private information about their sexual behavior and medical and psychological health care, including the fact that they have sought reproductive or mental health care or counseling, without serving any legitimate, important or compelling state interest." Complaint, ¶ 66.  Second, "it fails to give the plaintiffs fair notice of when reporting is required and encourages arbitrary and discriminatory enforcement." Complaint, ¶ 68.

As relief, the complaint sought: 1) preliminary and permanent injunctions "barring the defendant class from enforcing the reporting statute to require plaintiffs to report consensual sexual activity between an adolescent under the age of 16 and a person of similar age where plaintiffs do not reasonably suspect injury to the adolescent;" and 2) a declaration "that the reporting statute is unconstitutional as applied to consensual sexual activity between an adolescent under the age of 16 and a person of similar age where

the mandatory reporter does not reasonably suspect injury to the adolescent." Complaint, ¶ 70. Since then, plaintiffs have amended the complaint to include other grounds.

On November 26, 2003, this court heard testimony and received evidence regarding the preliminary injunction, which the court granted on July 26, 2004. Aid for Women v. Foulston, 327 F. Supp. 2d 1273 (D. Kan. 2004). The court found the plaintiffs had standing to bring their claim and that plaintiffs had satisfied the standard for a preliminary injunction. Id. at 1280-86. Defendants appealed the ruling to the United States Court of Appeals for the Tenth Circuit. On January 27, 2006, the eve of the district court's bench trial, the Tenth Circuit issued a decision vacating the preliminary injunction and remanding the case for further proceedings. Aid for Women v. Foulston, No. 04-3310 (10th Cir. Jan. 27, 2006) (amended on March 16, 2006). The Tenth Circuit affirmed plaintiffs' standing and minors' right to informational privacy. However, the Circuit found that there was insufficient evidence to sustain a preliminary injunction. Id. After consultation with the parties, the court determined it appropriate to proceed to trial on the merits.

## II. CONCLUSIONS OF LAW

### A. Statutory Interpretation

The interpretation of the Kansas reporting statute is of central importance to this case. That being so, the court considered certification to the Kansas Supreme Court. Because a federal court's determination of state law is not final, the state court's interpretation on this issue would be helpful. See United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400 (1971) (noting that federal courts "lack jurisdiction authoritatively to construe state legislation").

11

However, such certification should be utilized <u>only</u> if the construction of state law is subject to doubt. <u>See</u> <u>Stenberg v. Carhart</u>, 530 U.S. 914, 945 (2000); <u>Houston v. Hill</u>, 482 U.S. 451, 468-471 (1987) (certification should not be used where "there is no uncertain question of state law"); <u>Grant v. Meyer</u>, 828 F.2d 1446, 1448 n. 5 (10th Cir. 1987) (refusing certification "since the statute is unambiguous"). As more fully discussed below, the court finds that the reporting statute is clear and unambiguous; therefore, certification is unnecessary.

As a general rule, if the language of a statute is clear in its application, the court is bound by it. <u>Hubbard v. United States</u>, 514 U.S. 695, 703, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995). "If the statutory language is clear, this will ordinarily end the analysis." <u>See, e.g.</u>, <u>United States v. Morgan</u>, 922 F.2d 1495, 1496 (10th Cir. 1991), <u>cert. denied</u>, 501 U.S. 1207, 111 S.Ct. 2803, 115 L.Ed.2d 976 (1991).

As noted above, the Kansas statute mandates reporting by certain persons who have "<u>reason to suspect</u> that a child has been <u>injured</u> as a result of . . . <u>sexual abuse</u>." Kan. Stat. Ann. § 38-1522(a) (emphasis added). This language has remained unchanged since its enactment in 1982. Senate Bill No. 520, ch. 182 § 19 (1982).

Examining its separate components, the clause recognizes that a mandatory reporter must identify two things: 1) there is reason to suspect that the child has been injured; and 2) the injury resulted from sexual abuse. The meaning of the terms "injured" and "sexual abuse" are important to the court's analysis. As mentioned above, the legislature has defined "sexual abuse" in Article 35, Chapter 21 of the Kansas Statutes. Kan. Stat. Ann. § 38-1502(c). However, it has not defined "injury."

The Stephan Opinion noted that "injury" is not defined in the code for care of children, Kan. Stat. Ann. § 38-1501 <u>et seq.</u>, which includes the reporting statute. Although some statutory provisions recognize

that "injury" includes physical, mental or emotional abuse or neglect, Kan. Stat. Ann. 1991 Supp. § 38-1502(b), past SRS programs did not list pregnancy as a per se injury.  After reviewing the scant legislative history and case law approaches to pregnancy, the Stephan Opinion concluded that ". . . pregnant, unmarried minors may likely display signs of emotional, physical or mental injuries which should be reported.  However, we do not believe that pregnancy of an unmarried minor _necessarily_ constitutes injury even when that term is understood in its broadest sense." (Emphasis added).  Ultimately, the Stephan Opinion held that pregnancy is not itself an injury but a natural condition, so reporting a pregnancy as sexual abuse must be determined on a case-by-case basis.

The Kline Opinion, on the other hand, shifted the focus away from the condition of pregnancy and toward the underlying sexual intercourse, which it claims constitutes an inherently injurious and harmful act. Since the legislative history of the reporting statute is limited, the Kline Opinion examined insurance case law where a federal district court in this district described sexual abuse as inherently harmful.[6]  The Kline Opinion states that the consensus opinion of the courts is that sexual abuse of a minor is inherently harmful. Despite the focus on case law to understand statutory language, the Kline Opinion noted that it is not the function of the courts to write legislation but only to construe statutes.

If "injury" is the equivalent of "sexual abuse," as the Attorney General contends, then the requirement of an "injury" in the reporting statute is rendered meaningless.  The statutory language does not require reporting of all illegal sexual activity of minors; it requires reporting of such sexual activity if there

---

[6] Troy v. Allstate Ins. Co., 789 F. Supp. 1134, 1136 (D. Kan. 1992) (citations omitted) (noting that "[i]t is now a generally accepted conception that harm is inherent in the act of sexually abusing a child").

13

is "reason to suspect injury." Therefore, the statute requires reporting of illegal sexual activity that causes injury, not all illegal sexual activity. See United States. v. American Trucking Ass'ns., 310 U.S. 534, 543, 60 S.Ct. 1059, 1063 (1940) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes.").

The legislature included a very specific phrase in the statute:  "reason to suspect that a child has been injured as a result of . . . sexual abuse . . . ." This phrase vests a degree of discretion in the reporter not only to determine suspected sexual abuse, but also resulting injury. Cortez v. Pawnee Mental Health Serv., Inc., 77 P.3d 1288, 2003 WL 22283159, at *3 (Kan. App. 2003) (noting that the Kan. Stat. Ann. § 38-1522 requires a "reason to suspect" before mandating reporting); Kansas State Bank & Trust Co. v. Specialized Transp. Serv., Inc., 249 Kan. 348, 372, 819 P.2d 587, 604 (1991) ("The decision to report suspected abuse should be based on something more than suspicion."). The legislature acknowledged that not all illegal sexual activity involving a minor necessarily results in "injury;" thus, not all unlawful sexual activity warrants reporting.  The language of the statute recognizes that some illegal sexual conduct, such as consensual, voluntary sexual activity with an age-mate, falls outside the scope of the statute, as it may not cause injury. See BedRoc Ltd., LLC v. U.S., 541 U.S. 176, 183, 124 S.Ct. 1587, 1593 (2004) citing Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' ").

Therefore, the court finds that the legislature's inclusion of the phrase "reason to suspect that a child has been injured" requires reporters to determine if there is a reason to suspect injury resulting from sexual

abuse.  "Injury" and "sexual abuse" are distinct concepts under the statute.  Any attempt to conflate the meaning of these terms is contrary to a plain reading of this statute.

This reading is consistent with the agency policies developed following enactment of the statute, as set out in an earlier part of this opinion.  See American Trucking, 310 U.S. at 544, 60 S.Ct. at 1064 ("A few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to a settled policy, 'excepting as a different purpose is plainly shown.' ") (citations omitted).  SRS policy acknowledges sexual abuse to be coextensive with the statutory definitions,[7] but it does not consider investigation of all illegal sexual activity involving a minor to be necessary or appropriate.  SRS Manual § 1361.  Where a report does not indicate a child "has been harmed or is likely to be harmed" or where the report concerns " 'lifestyle' issues that do not directly harm a child or place a child in a likelihood of harm," SRS screens out the report. SRS Manual § 1361.  SRS does not extend services in cases of consensual, age-mate sexual exploration with no evidence of force, coercion, or significant age disparities.  SRS Manual § 1361, Practice Notes.  SRS's policy interpretation creates a distinction between broad statutory definitions and working definitions on which investigations are actually conducted.

The 1992 Stephan Opinion and the Stovall letter of 1999 both were plain language readings of the reporting statute.  Both Stephan and Stovall gave full meaning to the reporting statute, requiring that the reporter have not only reason to suspect abuse, but also reason to suspect injury resulting from it.  From a reporter's standpoint, as supported by their trial testimony, the reporting statute was clear, and the

---

[7] SRS Manual § 160 defines "sexual abuse" as "any act committed with a child that is described in, [Kan. Stat. Ann. §] 21-3501 et seq. and amendments thereto and the acts described in [Kan. Stat. Ann. §] 21-3602 and [Kan. Stat. Ann. §] 21-3603 and amendments thereto."

reporters were not only authorized, but compelled, to make a case-by-case determination as to whether injury occurred.

The Attorney General is not only allowed to, but also is required to render an opinion on his interpretation of the law under certain circumstances.  See Kan. Stat. Ann. § 75-704 (the Attorney General, when required, provides written opinions " . . . upon all questions of law submitted to him or her by the legislature, or either branch thereof, or by the governor, secretary of state, state treasurer, state board of education, or commissioner of insurance."); Kan. Stat. Ann. § 77-420 (directing Attorney General review of any state agency rule or regulation).  However, true interpretation of law is a judicial function, not an executive or legislative function. Board of Comm'rs v. General Sec. Corp., 138 P.2d 479, 479 (Kan. 1943).  An executive branch official, such as the Attorney General, cannot effectively amend legislation by reinterpreting its language through an "advisory" opinion.  See In re Allen, Gibbs & Houlik, L.C., 29 Kan.App.2d 537, 545, 29 P.3d 431, 439 (Kan. App. 2001) ("[A] statute should not be so read as to add that which is not readily found therein or to read out what as a matter [of] ordinary English language is in it." (citations omitted)).  The legislature has not chosen to delete the "reason to suspect that a child has been injured" language from the reporting statute; the Attorney General cannot amend the statute by an advisory opinion.  See State ex rel. Stephan v. Finney, 251 Kan. 559, 578, 836 P.2d 1169, 1182 (Kan. 1992) ("And in accordance with the general principles of the separation of powers, the executive department cannot generally usurp or exercise judicial or legislative power . . . .").   In view of both the statutory language and the long-standing interpretation of the reporting statute, the Kline Opinion effectively amends the reporting statute by eliminating the discretion the legislature gave mandatory reporters to determine if there had been an injury.  Under the Kline Opinion, the mandatory reporter has no discretion with respect

16

to reporting illegal sexual activity of a minor,[8] in contravention of the plain language of the statute and legislative intent as evidenced in the statute's clear and unambiguous language.  American Trucking, 310 U.S. at 543, 60 S.Ct. at 1063.  The court's interpretation neither reads phantom language into the statute, nor cuts from the statute language the legislature deliberately placed there.

Accordingly, the court holds that the Kline Opinion contradicts the plain meaning of the statute for two related reasons.  First, the Kline Opinion inappropriately strikes the legislature's placement of discretion in the hands of licensed professionals by ignoring the phrase "reason to suspect that a child has been injured" as a result of sexual abuse.  Second, the opinion wrongly redefines the common understanding of both state agencies and mandatory reporters by denoting all sexual activity to be "inherently injurious."

## B.  Injunctive Relief

Plaintiffs present four constitutional claims as a basis for declaratory and injunctive relief against the reporting statute's application to incidents of consensual sexual activity between persons under the age of sixteen and persons of similar age where mandatory reporters conclude in their professional judgment the sexual activity had not caused the minor any injury. Plaintiffs' claims include:  1) informational privacy; 2) decisional privacy; 3) equal protection; and  4) vagueness.  The Tenth Circuit has already recognized that plaintiffs have standing, so the court will not revisit this issue.  Aid for Women, No. 04-3310, (10th Cir. Jan. 26, 2006).  The statute is not vague, does not implicate equal protection concerns, and does not invade decisional privacy.  Thus, the court will only address plaintiffs' informational privacy claim.

---

[8] What must be reported depends on who you ask.  See infra pp. 21-22.

To grant a permanent injunction, a district court must find that four requirements have been satisfied: "1) actual success on the merits; 2) irreparable harm unless the injunction is issued; 3) the threatened injury outweighs the harm that the injunction may cause the opposing part[ies]; and 4) the injunction, if issued, will not adversely affect the public interest." Fisher v. Oklahoma Health Care Auth., 335 F.3d 1175, 1180 (10th Cir. 2003).  Having heard and reviewed the trial testimony and exhibits, the court finds that plaintiffs have met the four requirements and are entitled to permanent injunctive relief on the claim of violation of the right to informational privacy.

**1.  Actual Success on the Merits**

The narrow constitutional issue before this court is whether minor patients have a right to informational privacy concerning consensual sexual activity with an age-mate where there is no evidence of force, coercion, or power differential.  Plaintiffs argue that, as Dr. Robert Blum[9] testified, confidentiality is a cornerstone of treating adolescents and that automatic reporting of all illegal, but non-injurious, sexual activity will deter their minor patients' access to health care.  Defendants argue that the state interest in reporting of sexual abuse trumps a minor's privacy interests.

Although the United States Constitution does not explicitly recognize a right to privacy, the Supreme Court has found certain "zones of privacy" in the amendments to the Constitution.  See Union Pacific R.R. Co. v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891); Roe v. Wade, 410 U.S. 113, 152-153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).  Within the zone of privacy are two types of

---

[9] Dr. Blum is professor and chair of the Department of Population and Family Health Sciences at Johns Hopkins University, Bloomberg School of Public Health, and former consultant for the World Health Organization.

18

privacy interests: 1) the individual interest in avoiding disclosure of personal matters; and 2) the interest in independence in making certain kinds of important decisions.  Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (citations omitted)).  The Tenth Circuit recognizes a right to informational privacy concerning personal sexual matters and confidential medical information.  Livsey v. Salt Lake County, 275 F.3d 952, 956 (10th Cir. 2001) (if information is "highly personal or intimate," an individual's expectation of privacy is legitimate); ALA v. West Valley City, 26 F.3d 989, 990 (10th Cir. 1994) ("There is no dispute that confidential medical information is entitled to constitutional privacy protection.") (citations omitted).

An individual's right to informational privacy may be implicated when the government compels disclosure of that individual's personal sexual or health-related information to the government and/or to other third parties.  Eastwood v. Department of Corrections, 846 F.2d 627, 630-31 (10th Cir. 1988); ALA, 26 F.3d at 990.  Compelled disclosure may violate an individual's right to informational privacy unless the disclosure serves a compelling state interest in the least intrusive manner.  Sheets v. Salt Lake County, 45 F.3d 1383, 1387 (10th Cir. 1995).  To determine whether information is of such a personal nature that it demands constitutional protection, the court considers:  "1) if the party asserting the right has a legitimate expectation of privacy; 2) if disclosure serves a compelling state interest; and 3) if disclosure can be made in the least intrusive manner." Denver Policemen's Protective Ass'n v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981).  A "legitimate expectation of privacy," is based "at least in part, upon the intimate or otherwise personal nature of the material." Mangels v. Pena, 789 F.2d 836, 839 (10th Cir. 1986) (emphasis added).  See also United States v. Westinghouse Electric Corp., 638 F.2d 570, 577 (3d Cir. 1980) (medical records protected).  "It is obviously not easy to define the limits of an individual's right

19

to privacy in the context of intimate personal matters." <u>Livsey</u>, 275 F.3d at 956.  However, the court will uphold legislation enacted under the state's broad police powers, which takes into consideration privacy concerns, and is the product of "orderly and rational legislative decision." <u>Whalen</u>, 429 U.S. at 597.

The Supreme Court and this Circuit have extended to minors the constitutional right to privacy, including the right of informational privacy.  <u>See</u> <u>Application of Gault</u>, 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) ("neither the Fourteenth Amendment nor the Bill of Rights is for adults alone"); <u>Aid for Women v. Foulston</u>, No. 04-3310 (10th Cir. Jan 27, 2006).  However, in a variety of contexts the power of the state to control or regulate the conduct of children has been found to reach beyond the scope of its power over adults.  <u>Carey v. Population Serv. Int'l</u>, 431 U.S. 678, 692 (1977).

For the narrow issue of whether mandatory reporting of consensual sexual activity of minors violates a minor's informational privacy rights, the court begins with a three-prong analysis:  1) is there is a legitimate expectation of privacy; 2) does disclosure serve a compelling state interest; and 3) can disclosure be made in the least intrusive manner?  <u>Lichtenstein</u>, 660 F.2d at 435.  The court finds the Kansas reporting statute encompasses these elements.  First, the statute recognizes an expectation of privacy in conduct when there is no reason to suspect injury as a result of abuse.  Second, the state clearly has a compelling interest in protecting children from abuse, but, as the statute indicates, this interest is limited to circumstances when there is a reason to suspect injury.  Thus, a minor's privacy ends where the state's interest in protecting the minor begins.  Finally, the statute recognizes that privacy should be breached only when injury to the child is reasonably suspected.  By its very terms, the statute recognizes an element of privacy in mandatory reporting of unlawful sexual activity of a minor.

20

**2. Irreparable Harm**

Plaintiffs provided credible evidence of irreparable harm at trial. First, the Kline Opinion places plaintiffs on notice that they may be prosecuted for not reporting illegal sexual activity of minors. While everyone agrees that the Attorney General's Opinion does not bind any of the district or county attorneys in Kansas, it creates an untenable situation for reporters. Although not expressly given concurrent authority with county and district attorneys to commence prosecutions for failure to report under Kan. Stat. Ann. § 38-1522, the Kansas Supreme Court has long held that "[t]he attorney general's powers are as broad as the common law unless restricted or modified by statute." Memorial Hosp. Ass'n, Inc. v. Knutson, 239 Kan. 663, 667 (1986), citing State v. Finch, 128 Kan. 665 (1929). Thus, it appears that even if a county or district attorney chose to interpret the reporting statute in a manner consistent with the plain language of the statute, but inconsistent with the Kline Opinion, the Attorney General has the power to commence a prosecution for failure to report. Several plaintiffs testified that a conviction for failure to report could result in the loss of licensure.

Second, considering the Kline Opinion, plaintiffs do not have fair notice of what is reportable under the statute. For nearly three years, the acts which would give rise to reporting have been in dispute. Although the Kline Opinion was triggered by a limited question concerning pregnant minors, the Opinion equated all illegal sexual activity of a minor with per se injurious sexual abuse. Thus, according to the Kline Opinion, all illegal sexual activity is reportable when a mandatory reporter suspects it has occurred. Attorney General Kline took this position in his deposition, testifying that all illegal sexual activity would be reportable.

At trial, Assistant Attorney General Camille Nohe, representing Attorney General Kline, claimed for the first time the Kline Opinion was narrower than previously suggested. This was particularly noteworthy, as Ms. Nohe is the Kline Opinion's primary author. She divided sexual activities into two categories: 1) significant sexual conduct**,** and 2) less significant sexual conduct. Ms. Nohe went on to assert that the Attorney General sought reporting only of <u>significant</u> sexual conduct, which she limited to oral sex, penile/vaginal intercourse and anal sex. Counsel did not consider "less significant sexual conduct," such as deep kissing and lewd fondling or touching, to be reportable. However, in his trial testimony the Attorney General contradicted his own counsel's position by stating he was uncertain whether oral sex by fifteen-year-olds would have to be reported. Ultimately, the Attorney General testified that "whatever the statute requires" should be reported.

District Attorney Foulston had a view different from any of those taken by the Attorney General's office.[10] First, Ms. Foulston testified that she had always interpreted the reporting statute to cover a broad range of activities. In her view, notwithstanding the position espoused in the Kline Opinion, the fondling of a fifteen-year-old girl's breasts would be reportable under all circumstances. This contradicts Ms. Nohe's statement that such fondling would be considered less significant conduct. So mandatory reporters are left to try to sort out what must be reported and what may remain confidential. The difficulties are obvious.

––––––––––––––––––––––––

[10]Those included: 1) the express language of the Kline Opinion, as well as the Attorney General's deposition testimony; 2) Ms. Nohe's position as expressed at trial; and 3) Attorney General Kline's views as expressed in his trial testimony.

Third, based upon the testimony and other evidence, serious questions arise as to whether minors will continue to seek timely medical care and psychological services if all illegal sexual activity is automatically reported. As the evidence established, a fourteen-year-old female who is pregnant by her long-time fifteen-year-old boyfriend presents a very different scenario to a health care provider than does a fourteen-year-old pregnant female who presents to a doctor with no explanation for her pregnancy and who does not want to discuss her family situation. The legislature recognized the difference by vesting the reporter with discretion in determining whether "injury" had occurred because of sexual or any other kind of abuse. How is the best interest of the child served by not seeking health care in either circumstance? Clearly, it is not.

Since medical and psychological care providers have an obligation to disclose the scope of confidentiality at the onset of treatment, underage minors will be aware of the limits of confidentiality and the potential for state notification of underage sexual activity. Dr. Stanley Henshaw, sociologist and senior fellow at the Alan Guttmacher Institute, presented evidence concerning the effects of state reporting and parental notification on a minor's seeking treatment. At the outset, Dr. Henshaw was clear that a majority of parents are involved in their child's decision to seek contraception. However, there is a substantial decline in seeking medical care when service providers require parental involvement. For example, a Connecticut study found that the requirement of parental involvement in a minor's decision to seek HIV testing decreased the number of young people seeking testing. Without parental involvement, twice as many minors were willing to seek HIV testing. A United Kingdom study found that requiring parental involvement decreased by thirty percent the number of young people seeking contraception. In a survey conducted in Wisconsin and published in the Journal of the American Medical Association, about half of

minors under the age of eighteen reported that they would stop using a clinic if parental involvement was required.  Approximately fifty-seven percent said they would use condoms instead of the pill, twenty-nine percent said they would use the withdrawal method, twenty-nine percent said they would have unprotected sex, and one percent said they would switch to oral sex.[11]

Dr. Henshaw testified that the consequences of reporting all sexual activity to a state agency would be different from the studies on parental notification and involvement in a minor's use of contraceptives or HIV testing.  Mandatory reporting of all sexual activity to a state agency can be more frightening given the potential for criminal liability.  If minors are told that there may be an investigation, they may be more inhibited in seeking care.  Further, minors who otherwise would seek medical care with their parents' involvement may be deterred by the potential to involve their parents in a criminal investigation.

Automatic mandatory reporting of illegal sexual activity involving a minor will change the nature of the relationship between a health care provider and the minor patient to some degree.  Based on studies that evaluated the effects of parental notification, there will be a significant decrease in minors seeking care and treatment related to sexual activity.  In the context of a reporting statute, the effects may be greater since a state agency will be notified of the alleged "sexual abuse."  According to several witnesses, in the long-term, forgoing or delaying medical care leads to risks to minors including the  worsening of existing medical conditions and the spreading of undiagnosed diseases. The Wisconsin study indicates that at a minimum, young persons report that they will engage in riskier behavior if confidential care is not available.

---

[11] The total does not equal 100% because minors could respond with more than one answer.

The cumulative, credible medical evidence presented at trial indicates that minors face irreparable harm in the face of a reporting statute that requires automatic disclosure of all illegal sexual activity.[12]

Finally, beyond the irreparable harm that all minors may be subject to, evidence supports a finding that mandatory reporting of all illegal underage sexual activity will harm those minors who are actual victims of "sexual abuse" as defined by SRS's working definition. SRS Director Sandra Hazlett stated that the Kline Opinion would increase the number of intake reports, increasing the

workload without a corresponding increase in funding. Besides overwhelming state agencies, reporting all sexual activity as sexual abuse tends to trivialize actual sexual abuse, according to Dr. Nancy Kellogg, pediatrician and professor at the University of Texas Health Science Center at San Antonio, Texas.[13]

Dr. Henshaw provided one concrete example of the consequence of applying a zero-tolerance policy in a state. He testified that the California legislature enacted a reporting statute that took an

---

[12]Defendants' expert, Dr. Allen Josephson, professor of psychiatry and associate chair of Child and Adolescent Programs in the Department of Psychiatry and Behavioral Sciences at the University of Louisville, acknowledged that some minors may not seek treatment in light of mandatory reporting. Another of defendants' experts, Dr. Elizabeth Shadigian, a physician specializing in obstetrics and gynecology and clinical associate professor at the University of Michigan Department of Obstetrics and Gynecology, testified that reporting illegal sexual activity might do more harm to a minor than any injury from the sexual activity itself. Both Dr. Josephson's and Dr. Shadigian's testimony are discussed in more detail below.

[13]The court finds Dr. Kellogg's testimony to be particularly insightful and compelling. Her experience extends across the entire spectrum of victims of sexual abuse – she has examined over 8,500 persons in her practice and is widely published in peer-reviewed publications. Even Dr. Josephson testified that if Dr. Kellogg was doing every examination, he might be more comfortable with discretionary reporting. Dr. Kellogg testified, inter alia: 1) not all underage sexual activity, including intercourse, is injurious; 2) appropriate sexual activity, which will vary from person to person, is part of a normal person's development; 3) she takes whatever time she needs in conducting clinical interviews with her patients; and 4) maintaining discretion in reporting to determine if injury has occurred is important, as there are differences in patients and their situations.

approach similar to that espoused in the Kline Opinion.  California's state child protective services agency was so overwhelmed with reports that the legislature had to amend the statute one year later, claiming it was not what the legislature intended.  Over-reporting made it difficult for the state to address legitimate cases of child abuse.  Dr. Henshaw was aware of no other state that has the broad, zero-tolerance approach the Kline Opinion proposes.

For the reasons set forth above, the court finds that mandatory reporters, all minors, minor victims of sexual abuse, and SRS will suffer injury with no adequate means of mitigation if all consensual underage sexual activity must be reported.  Plaintiffs therefore satisfy the irreparable harm requirement.

## 3.  Threatened Injury Outweighs the Harm on Opposing Parties

Does the threatened injury outweigh the harm that the injunction may cause the opposing parties?  The short answer is yes.

As set out in the foregoing section of this opinion, there is clear risk that mandatory reporting will reduce the number of minors seeking care, increase workload on SRS, require reporting of activities that SRS will not investigate, and may even lead to increased health risk to minors because they will delay or forego health care.

Because many licensed professionals play a dual role as both mandatory reporters and care providers, the confidentiality between licensed professionals and patients should be breached only sparingly.  Dr. Robert Blum testified that confidentiality is the "cornerstone" of the doctor-patient relationship.  If doctors have to breach confidentiality when a minor is seeking contraception or inquiring about a sexually transmitted disease ("STD"), the doctor-patient relationship becomes adversarial rather than cooperative.  Under such circumstances, the doctor may be less able to treat the minor or provide

information.  It may lead to the unintended consequence of minors avoiding treatment until later stages of a condition, increasing risk to themselves and others.  Minors may also be less willing to seek general information from health care providers if they fear they will be reported.

Dr. Stanley Henshaw's and Sandra Hazlett's testimony, as set out in the "irreparable injury" section of this opinion, also address the question of threatened harm.

The court finds the testimony of Dr. Blum, Dr. Henshaw, Ms. Hazlett and Dr. Kellogg credible and gives great weight to their testimony.

Defendants' arguments rest on the state's interest in the reporting of sexual abuse. Their experts testified that sexual activity is inherently injurious in a number of ways.  Dr. Allen Josephson testified that adolescents are immature and have difficulty assessing risk of sexual activity, such as STDs and pregnancy. Dr. Josephson stated that sexually active minors are at risk for depression, and there is a strong association with many possible contributing factors, one of which is sexual activity. When confronted with SRS's policy of screening out instances of consensual sexual activity, Dr. Josephson responded that this approach has a high risk of missing children that need to be protected and have resources offered to them.

Yet, while claiming to believe all underage sexual activity is inherently injurious, Dr. Josephson personally does not report all such activity.  He uses his clinical judgment in determining whether certain types of penetrative and non-penetrative acts should be reported.  In fact, he testified that he could not recall having reported consensual sexual activity between underage persons other than intercourse.

He also testified, quoting from his deposition as presented at trial, that reporting all such activity "would almost certainly involve parents and other systems in ways that . . . kids would be uncomfortable with."  He subsequently asserted that while reporting sexual activity among underage adolescents might

27

cause some of them to reassess their behavior, that "many of them would be ambivalent about [seeking health care knowing their activities would be reported]" and that "[s]ome might decide not to see the doctor."

In further apparent contradiction to at least part of his trial testimony, Dr. Josephson does not support mandatory reporting of all underage consensual genital fondling or digital penetration, both of which are illegal and must be reported under the Kline Opinion.  Instead, he believes it is important to retain clinical judgment in those areas.  He would limit mandatory reporting of consensual underage sexual activities to sexual intercourse, including oral sex.

Dr. Josephson also was of the view that persons under age sixteen should not be able to obtain prenatal care or contraception, including condoms, without parental consent.  In fact, he testified that he would refuse prenatal care to a female under the age of sixteen if he felt she would follow through and obtain care elsewhere, but he would provide such care if he felt she likely would not follow through with another physician.

Finally, Dr. Josephson testified that over the course of considering becoming involved in this case, he had gone through "an interesting kind of journey" with Dr. Vincent Rue.[14]  After visiting with Dr. Rue and reviewing materials, Dr. Josephson changed his position from viewing such reporting as an intrusion on the patient's privacy to a means of involving the family in these matters.  At that point, he agreed to become involved in this case.

---

[14] Dr. Rue was hired by the Attorney General's office to work in some manner on this case, although the exact nature of his involvement was not fully explained.  From the testimony, it is clear that Dr. Rue was involved significantly in assembling the team of defendants' experts, although he himself did not testify.

The court finds Dr. Josephson's testimony to be inconsistent and therefore unreliable.  In fact, his own practice and opinion as to what should be reported is not as broad as the reporting requirements of the Kline Opinion.

Defendants' expert Dr. Kirk Johnson, senior policy analyst at the Heritage Foundation and adjunct professor in the School of Public Policy at George Mason University, presented evidence of a correlation between injury and early sexual debut.  However, Dr. Johnson's statistical analysis did not include multivariant controls, and his work has not been published in peer-reviewed journals.  He based his conclusions on incomplete data, and he avoided answering basic questions on cross-examination.  Thus, the court did not find his testimony, research and analysis to be helpful.

Dr. Elizabeth Shadigian also asserted that sexual activity is inherently injurious to minors in both physical and psychological ways. With respect to persons under the age of sixteen, Dr. Shadigian argued that age alone gives rise to a suspicion of psychological injury.   She also claimed on direct examination that minors have a greater chance of becoming pregnant than adults, but admitted on cross-examination that minors have the same chance if they use contraception correctly.

Dr. Shadigian spent some time describing what she called her "world view."  For example, she testified that there is always a power differential between a man and a woman, and she indicated it was more pronounced among young persons.  Her testimony inferred that women, particularly young women, cannot consent to sex; they can only submit to it.  Thus, she claims that consensual sexual activity is a factual impossibility for an underage female.  She also testified the harms of underage sex outweighed the benefits; this testimony was surprising only because no other witness had suggested any benefits at all to

29

underage sex.  When asked about the "benefits," Dr. Shadigian suggested that "spontaneous orgasm" was one benefit.

Dr. Shadigian also testified that she does not report all illegal sexual activity of her underage patients, all of whom are female.  She notes that one reason she does not report all such activity is because her reporting statute is different from the Kansas statute.  As a second reason, she expressed concerns that the legal system might do more harm to a patient than the injury her patient suffered, whatever that may be.

Dr. Shadigian's testimony is contradictory and overly general.  With respect to all persons under the age of sixteen, her position on the male-female power differential does not allow for any kind of consensual sexual activity involving a female in the first instance, a position unsupported by any other witness.  Further, she would not permit others to allow for differences in emotional development among such persons, yet she does so in her own practice.  Thus, the court rejects her testimony as inconsistent and not credible.

As noted in the preceding paragraphs, despite defendants' experts' testimony that sexual activity of minors is inherently injurious, both Dr. Shadigian and Dr. Josephson testified that they personally do not report all cases of underage sexual activity.[15]  These experts rested their assertion in part on the fact that their states do not require as broad reporting as Kansas, though none claimed to be experts on what

---

[15] Dr. Stephen Lazoritz, a pediatrician currently serving as vice chair of Children's Hospital in Omaha, Nebraska, and clinical professor in the Departments of Pediatrics and Psychiatry at Creighton University School of Medicine (also in Omaha) indicated that he is currently in an administrative position and does not normally encounter reporting questions.  Dr. Lazoritz also testified on behalf of defendants.

Kansas or their home state law requires.[16]  To provide sweeping generalizations on what constitutes an injury and then testify that they do not apply a similar standard in their own clinical practices undermines these doctors' credibility, particularly when the doctors claim early sexual debut has considerable dire consequences.

Defendants' expert analyses lead to the following question: if early sexual activity is inherently injurious, then why does SRS screen out any reports of early sexual activity? If young people are per se "injured" by sexual activity, state-provided services should be essential, yet this is not SRS's practice.  SRS officials testified that when the sexual activity with an age-mate is consensual, they screen out the reports and provide no services to the minor because they do not perceive a harm, i.e., an injury.   As discussed above, SRS has created a distinction between the broad statutory requirements as opposed to the narrower working definition, only the latter warranting state intervention.  It is a distinction that the legislature has not attempted to amend since the enactment of the mandatory reporting statute and the development of SRS policy. And, as noted, the defendants' experts apply the distinction in their own practices.

_____

[16] The court examined the reporting statutes of Michigan and Kentucky, respectively.  Michigan Compiled Laws Annotated § 722.623 (West 2002) provides that a reporter "who has reasonable cause to suspect child abuse or neglect shall make immediately, by telephone or otherwise, an oral report, or cause an oral report to be made, of the suspected child abuse or neglect to the department." Under Michigan law, "the pregnancy of a child less than 12 years of age or the presence of a venereal disease in a child who is over 1 month of age but less than 12 years of age is reasonable cause to suspect child abuse and neglect have occurred."  Mich. Comp. Laws Ann. § 722.623, Sec. 3 (8).

Kentucky Revised Statutes Annotated § 620.030 (1) (West 2005) provides, in pertinent part: "Any person who knows or has reasonable cause to believe that a child is dependent, neglected or abused shall immediately cause an oral or written report to be made to a local law enforcement agency . . . ."  Subsection (2) sets out the reporters, together with the standard, of "[a person] who knows or has reasonable cause to believe that a child is dependent, neglected or abused . . . ."

If underage sexual activity is in fact, inherently injurious, as the defendants and these witnesses claim, the Michigan and Kentucky statutes would appear to require reporting such activity as abuse.

The court also notes that both plaintiffs' and defendants' experts indicated that they tended to over-report suspected sexual abuse. Dr. Lazoritz argued that there was "rampant" under-reporting but then testified that in his experience he tends to over-report. Attorney General Kline testified that he he believed sexual abuse was under-reported in Kansas, but knew of only two clinics in the state that are even suspected of under-reporting. He declined to testify further since this investigation is under seal.

With limited or no evidence that the state's interest will be affected, the court finds the threatened injury outweighs the harm imposed on the opposing parties. The state may continue to enforce its laws as they are written.

## 4. Injunction Will Not Adversely Affect the Public Interest

This injunction action is limited in its scope to a determination of whether consensual sexual activity of underage minors is reportable based on a number of constitutional challenges. The state unquestionably has an interest in enforcing its criminal law, in protecting minors, and in promoting the health and welfare of the citizens of this state. As part of this obligation, the state enacted its mandatory reporting statute in 1982 to assist in capturing sexual perpetrators, protecting minors from sexual abuse, and preventing a public health crisis through intervention in instances of sexual abuse. For the reasons already mentioned in prior sections, the court finds that this injunction will not adversely affect the public interest.

First, there is no indication that under-reporting is or has been a problem under the Kansas statute. As set out above, Attorney General Kline testified he believed sexual abuse was under-reported, but suspected only two clinics of violations. Other witnesses for the defendants also claimed to believe sexual abuse was under-reported, but had not a shred of supporting evidence. On the other hand, each person

32

who addressed the issue of over-reporting vs. under-reporting indicated that when in question, one should report.  And each witness claimed to do so.

The evidence as to prosecutions is also enlightening.  The Sedgwick County District Attorney, who has held office for approximately seventeen years, testified that she had never prosecuted anyone for not reporting abuse.  In fact, she has reviewed only one non-reporting incident for consideration of prosecution during that time; she declined to pursue it.  Additionally, Kansas Assistant Attorney General Kevin Graham, who is in charge of prosecuting non-reporting of sexual abuse in the Kansas prison system, has yet to bring a case.[17]  Thus, if under-reporting has been a problem in Kansas, it is not reflected in the number of cases in which prosecution was considered.

Second, as the court has already noted, there is no indication that the legislature has perceived under-reporting as a problem since there has been no change to the reporting statute since its enactment. Even during Attorney General Kline's eight-year tenure in the state legislature, he did not address perceived problems with under-reporting.  Neither has the legislature has made any effort to amend or modify SRS's intake and screening policy.

The state has a strong interest in protecting minors and promoting public health.  But this interest is at its ebb in the present action, where the Attorney General's Opinion goes beyond the scope of the reporting statute, potentially criminalizing the decisions health care providers make in utmost good faith, and solely with the physical and emotional health of their patients in mind.  The Attorney General's over-

---

[17]Assistant AG Graham did testify that he has been made aware of sexual abuse in the prison system, and he is dissatisfied with the level of prison reporting.

expansive interpretation of the reporting statute not only fails to serve the public interest, it actually serves to undermine it by causing minors to avoid seeking medical services and potentially overburdening SRS.

The court's interpretation of the reporting statute promotes the public interest; injunctive relief advances the interests of society in general. The core of the reporting statute – providing for the detection and protection of children suffering from incest or abusive sexual activity – is unaffected by this opinion. Such acts were and will remain subject to mandatory reporting. But the statute was not intended to cover consensual sexual activity between age-mates that do not result in injury. Injunctive relief barring the Attorney General from instituting a per se rule that all illegal sexual activity involving a minor is injurious advances the public interest in protecting children by allowing reporting, administrative investigation, and law enforcement efforts to be concentrated on the legislature's real target – true sexual abuse. Injunctive relief also will prevent dissipation of scarce public resources on clear cases of consensual, same-age sexual relations, and it will avoid creating a government storage house of reported consensual sexual activity between age-mates.

Based on the court's reading of the reporting statute and the evidence presented at trial, the court finds that plaintiffs face irreparable harm, the threatened injury outweighs the harm the injunction may cause the opposing party, and this injunction will not hurt the public interest. By granting the injunction, the court maintains the statute's plain meaning as well as the historical interpretation given it by health care providers and SRS. The court finds that plaintiffs succeed on the merits of this case.

## III.  CONSIDERATIONS BASED ON CIRCUIT REVIEW

The Tenth Circuit identified a number of concerns in its prior review of this case. First, the Tenth Circuit indicated that a minor "may not have any privacy rights in their concededly criminal sexual conduct."

Aid for Women v. Foulston, No. 04-3310 (10th Cir. Jan. 27, 2006) (emphasis added).  The court noted that a validly-enacted law places citizens on notice that violations do not fall within the realm of privacy. Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir. 1995) (citation omitted); Stidham v. Peace Officer Stds. & Training, 265 F.3d 1144, 1155 (10th Cir. 2001) (same).  See also Mangels v. Pena, 789 F.2d 836, 839 (10th Cir. 1986)  ("Validly enacted drug laws put citizens on notice that this realm is not a private one.  Accurate information concerning such unlawful activity is not encompassed by any right of confidentiality . . . .").

Second, the Circuit noted that even if the rationale of Nilson and Stidham did not apply, it is not clear and unequivocal that the balance between plaintiffs' privacy rights and the government's interest in requiring reporting is substantially likely to weigh in plaintiffs' favor.  The Tenth Circuit applied an intermediate standard asking whether the reporting statute "serve[s] 'any significant state interest . . . that is not present in the case of an adult.'" Carey, 431 U.S. at 693 (plurality opinion) (quoting Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 74, 96 S.Ct. 2831 (1976)).  The Circuit found that the state's strong interest in enforcing its criminal law, protecting the best interest of minors, and promoting public health, particularly those of minors, weighed in favor of the state.  Additionally, the Circuit found plaintiffs' claim was undermined since the underlying sexual activity is criminal and minors have diminished privacy interest in such activity.

Finally, the Circuit found that this court did not adequately consider the factors for issuing the preliminary injunction.

The court has addressed many of the Circuit's concerns in the body of this opinion. However, for thoroughness, the court will speak to the Tenth Circuit's specific concerns here. The first issue is the

criminality of the underlying conduct.  In using the word "may," the Tenth Circuit clearly left open the possibility that some sexual activity falls within the zone of privacy.  Minors have a legitimate expectation of privacy in their intimate sexual and confidential medical information.  Eastwood, 846 F.2d at 631 ("constitutionally protected right [to privacy] is implicated when an individual is forced to disclose information regarding personal sexual matters.").  Livsey, 275 F.3d at 956 (which recognizes that a legitimate expectation of privacy may exist in "information pertaining . . . to highly personal sexual behavior"); Nilson, 45 F.3d at 372 ("[e]xpectations of privacy are legitimate if the information which the state possesses is highly personal or intimate").

The line of cases the Tenth Circuit cites is clearly distinguishable.  First, this court agrees that although consensual, sexual activity of minor age-mates may be unlawful.  However, it is not the equivalent of the criminal activity identified in Nilson, Stidham and Mangels.  In these three cases, there was a clearly identified perpetrator (i.e., there was both a "perpetrator" and a "victim," unlike the types of cases this court has concerned itself with in this matter), the information concerning the criminal activity was already in the public sphere or in state possession, and the state had ready access to the information through the normal course of its operations.  Nilson, 45 F.3d at 369 (noting that a former teacher had no constitutional right of privacy to an officer's disclosure of expunged prior sexual abuse conviction); Stidham, 265 F.3d at 1144 (noting that an officer had no constitutional right of privacy in allegations of rape and assault because there is no right of privacy in criminal activity); Mangels, 789 F.2d at 836 (noting no right of privacy in possession of contraband drugs).

Here, the Kansas mandatory reporting statute gives the state access to information about certain unlawful activity when there is reason to suspect a child has been injured. The suspicion of injury triggers

36

reporting and the breach of a minor's confidentiality, not the unlawfulness of the consensual sexual activity.

On its face, the reporting statute recognizes a minor's reasonable expectation of privacy in certain types of sexual activity, such as consensual sexual activity where there is no reason to suspect injury. As applied, the reporting statute also recognizes a minor's right to keep his or her sexual activity private. When instances of consensual sexual activity of minor age-mates are reported, SRS screens out these reports and conducts no further investigation. As mentioned previously, there is no criminal investigation in part because it is impossible to identify which minor participant in the sexual activity is the victim and which is the perpetrator. Information contained in an intake report never reaches the public sphere. Outside of a mandatory reporter's suspicion that a child has been injured as a result of sexual abuse, the state does not normally have access to confidential medical information of a minor or information concerning the minor's sexual activity.

A state cannot extinguish federal privacy rights through the enactment of state criminal laws. Mangels, 789 F.2d at 839 (citation omitted) (noting that the right of informational privacy is founded "not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution."). The court has already noted a federal right of informational privacy. ALA, 26 F.3d at 990 ("[t]here is no dispute that confidential medical information is entitled to constitutional privacy protection") (citations omitted). See also Lankford v. City of Hobart, 27 F.3d 477, 479 (10th Cir. 1994) (there is "'no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection.'"). Here, the state legislature has also recognized a minor's limited right of privacy by the plain language in its mandatory reporting statute. The state limits disclosure of information obtained in confidential relationships, such as from a minor's health

care provider, to instances where there is injury as a result of sexual abuse. By its very terms, the statute clearly acknowledges that not all sexual activity involving minors need be disclosed to the state. This court is reluctant to extinguish this right of privacy that the Circuit recognizes and that the Kansas reporting statute inherently acknowledges. The underlying criminality of the sexual activity does not change this result. Coplon v. United States, 191 F.2d 749, 759 (D.C. Cir. 1951) (noting in the context of information disclosed to an attorney that the state is generally prohibited from having access to the information even if the information concerns illegal activity).

With a more complete understanding of the mandatory reporting statute and its application, the remaining issue of balancing the minors' interest and the state's interest becomes clearer. Much of this analysis has been developed in issuing the permanent injunction. The trial testimony establishes that giving effect to the plain meaning of the statute promotes public health and protects the best interest of minors. The state's interest in enforcing its criminal law and recognizing a diminished privacy interest in minors is preserved with the very language of the reporting statute as mandatory reporters continue to report suspected injury resulting from abuse of any kind. "Criminality" as defined in Nilson, Stidham and Mangels is noticeably absent in the case of minors engaging in consensual sexual activity with an age-mate.

## IV.  CONCLUSION

This opinion does not change in any respect the law or policy as it has been applied in Kansas since 1982; indeed, it upholds both. In every case in which a reporter has a reasonable suspicion of injury caused by abuse of any kind, the reporter must continue to notify SRS. So this case is not about whether adult sexual predators will escape detection. The reporting statute, as enacted by the Kansas legislature, concerns identifying true victims of abuse so they can obtain assistance and protection. Contrary to

38

defendants' claims, a prosecutor is not in a better position to make an initial determination of "injury," as required by statute, than is a health care professional.

This case certainly is not about promoting sexual promiscuity among underage persons. Each and every witness testified that underage sex should be discouraged. No witness suggested that sexual intercourse under the age of twelve should not be reported. At the same time, a plain language interpretation of the reporting statute acknowledges the importance of the health care professional's ability to obtain and maintain a young patient's confidence in order to treat the patient appropriately. It recognizes that sexual activity among underage persons occurs, and that any such activity that injures the minor will be reported.

The court holds that a plain reading of the statute vests mandatory reporters, such as health care providers, with discretion to determine when there is "reason to suspect a child has been injured" as a result of sexual abuse. The Attorney General would impose a "zero tolerance" reporting rule for a broad but as yet undetermined range of underage sexual activity, eliminating all discretion on the part of the reporter. Where the legislature has unquestionably placed such discretion in reporters, to require reporting in every instance would be as contrary to the law of Kansas as not reporting at all.

IT IS ACCORDINGLY ORDERED this 18th day of April 2006, that the court grants plaintiffs a permanent injunction as prayed for in their Amended Complaint.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

39